UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

---

| | |
|---|---|
| THOMAS MATTSON and EDWARD J. DOSTAL, | Case No. |
| Plaintiffs, | |
| v. | |
| BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE, | |
| Defendants. | |

---

## COMPLAINT

---

## Table of Contents

I. Introduction and Overview (¶¶1-6)                    3-5

II. Jurisdiction and Venue (¶¶7-18)                    5-10

III. Procedural History (¶¶19-23)                                    10-11

IV. Parties (¶¶24-28)                                                12-13

V. Factual Allegations (¶¶29-38)                                     13-18

- False Avoided Cost Rates and Fraudulent Concealment               15
(¶33)

- Rejection of Valid Power Purchase Agreements (¶34)                15-16

- Wisconsin Ruling and Judicial Confirmation (¶35)                  16

- Regulatory Compliance and Legally Enforceable Obligations         16-17
(¶36)

- Interconnection Denials and Transmission Access (¶37)             17-18

- Ongoing Harm and Tolling (¶38)                                    18

VI. No Procedural Bars (¶¶39-51)                                    19-26

VII. Claims for Relief (Counts 1-11) (¶¶52-62)                      26-37

VIII. Prayer for Relief (Items a-j)                                 38-39

## I. INTRODUCTION AND OVERVIEW

1.  Plaintiffs Thomas Mattson and Edward J. Dostal, proceeding pro se and entitled to leniency in procedural matters under *Haines v. Kerner*, 404 U.S. 519 (1972), *Stone v. Harry*, 364 F.3d 912 (8th Cir. 2004), and *Davis v. Hall*, 992 F.2d 151 (8th Cir. 1993), sue Defendants Basin Electric Power Cooperative (Basin), Rosebud Electric Cooperative, Inc. (Rosebud), Grand Electric Cooperative, Inc. (Grand), and Moreau-Grand Electric Cooperative (Moreau-Grand) (collectively, "Defendants") for over a decade of unlawful conduct in violation of the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 824a-3; the Federal Power Act, 16 U.S.C. § 791a et seq.; FERC's implementing PURPA regulations at 18 C.F.R. §§ 292.101-292.602; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); the Sherman Act, 15 U.S.C. §§ 1-2; and state and federal prohibitions on fraudulent concealment, fraud, and misrepresentation.

2.  Defendants engaged in a coordinated scheme to block Plaintiffs' Qualifying Facilities (QFs) in Tripp, Perkins, Gregory, and Dewey Counties, South Dakota, by concealing avoided cost rates, rejecting valid power purchase agreements (PPAs), obstructing guaranteed interconnection, and enforcing anti-wind contract provisions in direct conflict with federal law. These actions violated PURPA's purchase and interconnection mandates, including the requirement that utilities pay the "highest incremental cost" for QF power under 18 C.F.R. § 292.304(b)(2). Defendants also violated FERC Order No. 888, which mandates open access to

transmission systems, and Order No. 2023, which requires timely, transparent interconnection procedures.

3. After the Federal Energy Regulatory Commission declined to initiate enforcement proceedings on April 4, 2024 (Exhibit A), and denied Plaintiff's motion for reconsideration on July 10, 2024 (Exhibit KK; 188 FERC 61,028) Plaintiffs filed suit in the Eastern District of Wisconsin (Case No. 24-cv-00991) on August 6, 2024. That action was dismissed for lack of personal jurisdiction on April 8, 2025 (Exhibit U). This Court has jurisdiction under PURPA, 16 U.S.C. § 824a-3(h)(2)(B), following FERC's declination, and Plaintiffs now seek damages, reinstatement of their lost QFs, and enforcement of their federal rights.

4. Plaintiffs also previously filed suit in South Dakota Circuit Court, which dismissed the case on jurisdictional grounds, holding that jurisdiction over avoided cost data and related PURPA enforcement issues belonged to the Federal Energy Regulatory Commission (FERC) (Exhibit N, page 42,43). This position was advanced by Defendants themselves (Exhibit N, page 20 line 15 to page 21 line 12) who inconsistently argued across forums to evade merits-based review. The Circuit Court's ruling adopted Defendants' view, declining to address Plaintiffs' claims on the merits, and thus should have been dismissed outright, rendering its summary judgment moot due to lack of jurisdiction, as required by *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Similarly, the Eastern District of Wisconsin dismissed Plaintiffs' 2024 action for lack of personal jurisdiction on April 8, 2025, explicitly stating it could not rule on the merits (Exhibit U), further confirming that prior judicial determinations, including the South Dakota ruling,

lack preclusive effect due to jurisdictional defects (*Poe v. John Deere Co.*, 695 F.2d 1103, 1107 (8th Cir. 1982)). The South Dakota proceeding was further compromised by Defendants' attorneys' perjury, as they falsely swore in 2019 that Plaintiffs never requested avoided cost, which proven false by Exhibit N, p. 20), despite clear evidence of such requests (Exhibit D, E, G), tainting the court's ruling and supporting equitable tolling (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)). Procedural errors by Plaintiffs' former attorneys—including the failure to file a separate statement of undisputed material facts in opposition to Defendants' motion for summary judgment—resulted in a judgment based solely on that default, which never should have occurred given the court's lack of jurisdiction and Defendants' fraudulent misrepresentations. These jurisdictional dismissals, coupled with Defendants' perjury and forum manipulation, preclude res judicata and justify equitable tolling of all claims.

5. Despite years of requests, Defendants have failed to produce their own interconnection application—resulting in the potential loss of 12 wind farms and corresponding damages (Exhibit MM). These obstructions caused, as well as broader harm to the public interest, including lost renewable energy generation, rural jobs, annual local tax revenue, compounded by Basin's $115\%$ rate increases burdening poor communities (Exhibit V). Plaintiffs fully complied with all QF certification and requirements, yet were systematically blocked.

6. Defendants' conduct caused irreparable harm to Plaintiffs' renewable energy business and substantial financial losses to Edward J. Dostal, including lost

development income, property option payments, and destroyed investment potential in PURPA-protected QFs. Their fraudulent concealment—including falsified avoided cost disclosures and concealed interconnection obstruction—spanned multiple years and delayed discovery of key violations, tolling the statute of limitations and compounding the harm (Exhibits D, E, F, G, H, I, N, O, T, U, Y, HH).

## II. JURISDICTION AND VENUE

7. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over PURPA claims (16 U.S.C. § 824a-3(h)(2)(B)), RICO claims (18 U.S.C. § 1962 et seq.), and Sherman Act claims (15 U.S.C. §§ 1-2), with supplemental jurisdiction under 28 U.S.C. § 1337 (commerce regulation). FERC's April 4, 2024, declination—"Prelude may itself bring an enforcement action" (Exhibit A, 187 FERC 61,008; 187 FERC 61,008)—triggers federal enforcement, see *Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.*, 422 F.3d 231, 235 (5th Cir. 2005); *Swecker v. Midland Power Coop.*, 807 F.3d 883, 887 (8th Cir. 2015), as confirmed by *McLain v. Andersen Corp.*, 567 F.3d 956, 965 (8th Cir. 2009) (federal jurisdiction over regulatory law claims).

8. Venue is proper in this Court under 28 U.S.C. § 1391(b), as Defendants' actions occurred in South Dakota, harming Plaintiffs' QFs located in Tripp, Gregory, Perkins, and Dewey Counties.

9. This Court has personal jurisdiction over Basin Electric, which is registered to do business in South Dakota with a registered agent at 319 S. Coteau Street, Pierre, SD, and operates generation facilities and supplies power statewide.

10. This Court has personal jurisdiction over Rosebud Electric, Grand Electric, and Moreau-Grand Electric, South Dakota entities operating exclusively within this state, with additional contacts via documents exchanged with Plaintiffs in Wisconsin (Exhibits E, G, H, K, M, D), as owners of QFs confirmed by FERC on January 13, 2025 (Exhibit FERC Order 2, 190 FERC 61,015, P 39).

11. Defendants are judicially estopped from contesting this Court's jurisdiction due to their repeated and inconsistent forum arguments. In 2014, they circuit court jurisdiction before the South Dakota Public Utilities Commission (SDPUC), which dismissed the case for lack of authority over cooperative rates (Exhibit J: "The Commission finds it lacks jurisdiction over the rates of Basin, a generation and transmission cooperative... "). Defendants then argued before the South Dakota Circuit Court in 2019-2020 that only the Federal Energy Regulatory Commission (FERC) had jurisdiction over PURPA avoided cost data, a position the court adopted in granting summary judgment (Exhibit N: "[T]this Court lacks jurisdiction over avoided cost issues, which are reserved to FERC" at page 42 line 23-25 and page 43 line 1-4) Defendants made this argument (Exhibit N Page 21, Lines 7-14). Yet in 2024-2025, during proceedings in the Eastern District of Wisconsin, Defendants reversed course and asserted the South Dakota Circuit Court's ruling as binding authority (Exhibit PP, Document 28, Page 3, Paragraph 8; Document 29, Pages 5 and 19) after FERC's April 4, 2024, declination (Exhibit A). This jurisdictional flip-flopping, misled Plaintiffs in pursuing their claims, constituting classic forum shopping. Under the doctrine of judicial estoppel, parties cannot "prevail in one phase of a case on an argument and then rely on a contradictory

argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). The Court should reject Defendants' jurisdictional objections accordingly.

12. These contradictory positions across SDPUC, Circuit Court, FERC, and federal courts constitute classic forum shopping. Under the doctrine of judicial estoppel, parties cannot "prevail in one phase of a case on an argument and then rely on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). The Court should reject Defendants' jurisdictional objections accordingly.

13. Defendants violated PURPA by not offering Plaintiffs' Qualifying Facilities (QFs) an avoided cost rate and ppa that followed the SDPUC Oak Tree ruling, Docket EL12-038 (S.D. Pub. Utils. Comm'n, July 9, 2013). The ruling clarified: "A qualifying facility needs a utility's firm commitment, like a power purchase agreement with a set avoided cost rate, to secure financing and develop its project. Without this, Oak Tree Energy cannot obtain funding, permits, or construct its facility, which contradicts PURPA's aim to support qualifying facilities and energy independence." (Exhibit Oak Tree at 12)

14. The PUC in Oak Tree also set avoided cost rates of 5.33 cents a kwh in 2013 and 5.53 cents a kwh in 2014, based on a new natural gas plant, and made clear that a 20-year term was required to secure financing. These avoided costs align with Basin's resource mix. Basin also continues to construct additional natural gas generation facilities. Plaintiffs' 2016 PPAs (Exhibit L), which offered rates within or below that range, fully satisfied these criteria and established a Legally

Enforceable Obligation (LEO) under PURPA. As Oak Tree further held: "A legally enforceable obligation need not have a contract executed by the utility to exist. If it did, utilities could negate the operation of PURPA by simply refusing to sign." (Exhibit Oak Tree at 11).

15. This procedure governs all South Dakota utilities under SDCL § 49-34A-94, which grants the SDPUC "authority to... implement [PURPA]... including... procedures for such purchases." Therefore, Oak Tree remains controlling, and no further agency review was available. Although the SDPUC later ruled that it lacked jurisdiction to set avoided cost rates for electric cooperatives, it referred the matter to South Dakota Circuit Court, which in 2019 confirmed that Rosebud, Grand, and Moreau-Grand's avoided cost is Basin's (Exhibit N Page 42 line 14-22) —specifically, 4.29 cents/kWh. Plaintiffs filed a motion for summary judgment regarding the rate with the Eastern District Court of Wisconsin. (Exhibit Motion for Summary Judgment)

16. Defendants' obligation to purchase power from QFs is a matter of federal law, regardless of state-level rate setting. Under 18 C.F.R. § 292.303(a), "[e]ach electric utility shall purchase... any energy and capacity which is made available from a qualifying facility." This requirement applies equally to cooperatives. Enforcement falls squarely within this Court's jurisdiction after FERC declined enforcement on April 4, 2024 (Exhibit A), and denied Plaintiffs' motion for reconsideration on July 10, 2024 (Exhibit KK; 188 FERC 61,028), closing the administrative record.

17. Plaintiffs filed in the Eastern District of Wisconsin on August 6, 2024, within the 60-day window authorized by PURPA § 210(h)(2)(B) following FERC's final decision on July 10, 2024, denying reconsideration and declining to initiate enforcement (Exhibit A, KK). That filing was timely and preserved Plaintiffs' federal enforcement rights. Independent of that deadline, tolling remains warranted due to Defendants' ongoing concealment of avoided cost data—a pattern beginning in 2008 and continuing past the 2019 South Dakota Circuit Court summary judgment, where the court held that discovery must proceed through FERC, even though the prior judge has required the Defendants to provide theri avoided cost. (Exhibit N page 42 line 23-25 and page 43 line 1-4). As of this filing, Defendants have still not disclosed their highest incremental avoided cost data from 2008-2015, nor provided any updated avoided cost disclosures since 2020. During the Eastern District of Wisconsin hearing Plaintiffs filed a motion to compel after Defendants refused our rule 26(f) confer request, and refusal to answer discovery (Exhibit Y). During the Eastern District of Wisconsin hearing Defendants protested Mattson's QF ownership at FERC, FERC rejected those arguments and a ruling confirming his ownership, January 13, 2025, (Exhibit FERC ORDER 2, 190 FERC 61,015, P 39). Under *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962), this Court has jurisdiction to hear a refiled action, and equitable tolling further supports its timeliness. See also *Tronox Inc. v. Kerr-McGee Corp.*, 549 B.R. 489 (Bankr. S.D.N.Y. 2016).

18. Although Plaintiffs did not request transfer under 28 U.S.C. § 1631—an omission attributable to their pro se status and lack of formal legal training—the timely

filing in the Eastern District of Wisconsin, within the 60-day window following FERC's April 4, 2024 non-enforcement decision (Exhibit A;), and denial of Plaintiff's motion for reconsideration on July 10, 2024 (Exhibit KK; 188 FERC 61,028) preserves this action under equitable tolling principles. See *Goldlawr v. Heiman*, 369 U.S. 463 (1962). The Eastern District's dismissal was based solely on personal jurisdictional grounds, and Plaintiffs acted diligently in promptly refiling in this Court (Exhibit U). Moreover, ongoing violations into 2025 (Exhibit Y) independently warrant continued tolling of any applicable limitations period. See *Bell v. Vacuforce*, 908 F.3d 1075 (8th Cir. 2018). If this Honorable Court determines that it does not have jurisdiction, then please transfer the complaint under 28 U.S.C. § 1631.

19. As pro se litigants, Plaintiffs respectfully invoke the doctrine of liberal construction and leniency afforded under *Haines v. Kerner*, 404 U.S. 519 (1972); *Stone v. Harry*, 364 F.3d 912 (8th Cir. 2004); and *Burgs v. Sissel*, 745 F.2d 526 (8th Cir. 1984). See also *Topchian v. JPMorgan Chase Bank*, 760 F.3d 843 (8th Cir. 2014), and *Jackson v. Nixon*, 747 F.3d 537 (8th Cir. 2014) (holding that courts must construe pro se filings to raise the strongest claims supported by the record).

## III. PROCEDURAL HISTORY

19. On May 5, 2014, Plaintiffs filed with the SDPUC (Docket EL14-042), alleging PURPA rate violations. The SDPUC dismissed the case on July 24, 2014, for lack of jurisdiction (Exhibit J).

20. On July 30, 2015, Plaintiffs filed suit in South Dakota Circuit Court (Case No. 61CIV15-000050). On December 30, 2019, the court ruled that jurisdiction over avoided cost data rested with FERC (Exhibit N page 42 line 23-25 and page 43 line 1-4). Nonetheless, on January 21, 2020, it granted summary judgment for Defendants, relying on their false claim that Plaintiffs "never really asked for" the data (Exhibit N page 20 line 2-9), despite Plaintiffs' history of request (Exhibit D, E, G). Plaintiffs appealed to the South Dakota Supreme Court, which declined to reverse, holding that the denial of a motion for a new trial was not appealable under state law. Plaintiffs then petitioned the United States Supreme Court for certiorari, which was denied. These appellate efforts spanned 2021-2022 and demonstrate Plaintiffs' diligence in exhausting state remedies before seeking federal enforcement under PURPA.

21. In 2023, Plaintiffs requested FERC mediation, which failed. On February 5, 2024, Plaintiffs petitioned FERC (Docket No. EL24-70-000), FERC declined enforcement on April 4, 2024 (Exhibit A). Plaintiffs filed a motion for reconsideration, which FERC denied on July 10, 2024 (Exhibit KK; 188 FERC 61,028), closing the administrative record.

22. Plaintiffs then filed in the Eastern District of Wisconsin on August 6, 2024, and amended the Complaint on October 15, 2024, as a supplement to the initial filing—not a replacement—adding no new claims but expanding upon existing allegations. Defendants protested Plaintiff Mattson's QF ownership status, but FERC confirmed Mattson's ownership on January 13, 2025 (Exhibit FERC Order

2). The Eastern District of Wisconsin case was dismissed on personal jurisdictional grounds without prejudice April 8, 2025 (Exhibit U).

23. This filing, mailed April 26, 2025, is timely under PURPA § 210(h)(2)(B), and independently tolled by Defendants' concealment through at least 2019 (Exhibit D,E,F,G,H,M), with violations persisting into 2025 (Exhibit Y). See *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1083 (8th Cir. 2018) (equitable tolling appropriate where the plaintiff lacked critical information due to the defendant's concealment and misconduct).

## IV. PARTIES

24. Plaintiff Thomas Mattson, residing at 146 Alpine Dr., Green Bay, WI 54302, owns 12 South Dakota Qualifying Facilities (QFs), each under 20 MW, located in Tripp, Perkins, Gregory, Counties, as confirmed by FERC on January 13, 2025 (Exhibit FERC Order 2, 190 FERC 61,015, P 39). Previously owned by Prelude LLC, these QFs and all related claims—including PURPA violations, contract rights, and damages—were assigned to Mattson in Wisconsin, pursuant to a valid agreement (Exhibit Assignment of Complaint), Wisconsin law (Wis. Stat. § 802.01(3); *PNC Bank, N.A. v. Starcom Int'l Optics Corp.*, 2013 WI App 113, 351 Wis. 2d 223, 839 N.W.2d 866), and South Dakota law governing the claims' enforceability (SDCL § 43-42-1; *Setliff v. Akins*, 2000 SD 124, 616 N.W.2d 878). Due to financial depletion from Defendants' actions, including fraudulent avoided cost rates and rejected power purchase agreements, Mattson proceeds pro se, as permitted under *Haines v. Kerner*, 404 U.S. 519 (1972), *United States v.*

*Reeves*, 431 F.2d 1187 (9th Cir. 1970), and *United States v. Fox*, 721 F.2d 32 (2d Cir. 1983).

25. Plaintiff Edward J. Dostal, 29862 338th Ave., Gregory, SD 57533, owns land for wind farm QF14-112-006, losing $252,000 yearly since 2018. Gregory County, the location of Edward Dostals wind farm, has recently created an anti wind conditional use permit resulting in the potential loss of twenty years of option payments totaling $5,040,000, proceeds pro se under the same justification.

26. Defendant Basin, 1717 East Interstate Ave., Bismarck, ND 58503, a FERC-regulated cooperative since 2019, is the purchaser through Rosebud, Grand, and Moreau-Grand, and is the sole Defendant with generation facilities.

27. Defendants Rosebud (512 Rosebud Ave., Gregory, SD 57533) and Grand (801 Coleman Ave., Bison, SD 57620),  are distribution members of Basin in Tripp, Gregory, Dewey and Perkins Counties, where the QF wind farms are located, lacking generation and relying on Basin.

28. Defendant Moreau-Grand Electric Cooperative (405 9th St, Timber Lake, SD 57656) is a distribution member of Basin in Dewey County, where 8 QFs were terminated due to false avoided cost rates, lacking generation, and relying on Basin.

## V. FACTUAL ALLEGATIONS

29. Since 2009, Defendants Basin Electric Power Cooperative, Rosebud Electric Cooperative, Inc., Grand Electric Cooperative, Inc., and Moreau-Grand Electric Cooperative engaged in a coordinated scheme to obstruct Plaintiffs' Qualifying Facilities (QFs) in Gregory, Tripp, Perkins, and Dewey Counties, South Dakota,

violating PURPA, FERC regulations, and related federal and state laws. Through emails and requests from 2009 to 2023 (Exhibits D, G, L S, T), Defendants provided false avoided cost rates (Exhibits D, G, H), rejected valid power purchase agreements (Exhibit M), denied interconnection and transmission access (Exhibits S, T), and concealed critical data. These actions caused the loss of 23 QFs totaling 633 MW nameplate capacity (296.65 MW net capacity), with 16 QFs (450 MW) lost before 2020 and 7 QFs (183 MW) lost after 2020, as detailed in Exhibit GG (Terminated QFs), resulting in significant financial losses (Exhibit MM and affidavit). The 633 MW of lost QFs would have generated 487 jobs (1 job per 1.3 MW).

30. Defendants' coordinated scheme to block Plaintiffs' Qualifying Facilities (QFs) persists into 2025, perpetuating violations of PURPA, RICO, and fraud laws. Beyond the initial obstructions since 2009, including false avoided cost rates (Exhibits E, H), rejected PPAs (Exhibit M), and denied interconnections (Exhibits S, T), Defendants have continued their misconduct as of April 2025 by refusing to provide 2008-2015 avoided cost data and updated disclosures since 2020 (Exhibit Y). FERC's March 20, 2025, finding that Basin's interconnection procedures violate transparency and small generator requirements (Exhibit HH) underscores ongoing PURPA violations, stalling 12 active QFs (Exhibit W). These 2025 violations, combined with Defendants' jurisdictional manipulation toll the statute of limitations under *Bell v. Vacuforce, LLC*, 908 F.3d 1075 (8th Cir. 2018), and distinguish this action from prior dismissals evidencing a continuing scheme.

31. On March 20, 2025, FERC found Basin's interconnection procedures non-compliant with federal transparency and small generator requirements, further delaying Plaintiffs' QFs (Exhibit HH). Despite Plaintiffs' diligent compliance with PURPA and FERC requirements, Defendants' fraudulent concealment of data since 2009 (Exhibit D, E, G, H, O) tolled the statute of limitations, causing hundreds of millions in damages.

False Avoided Cost Rates and Fraudulent Concealment

33. In 2009, Basin's Rob Revenich stated that Basin avoided cost was near 2¢/kWh, reaffirmed in 2011 (Exhibit E). In 2013, Plaintiffs formally requested accurate avoided cost data from Rosebud, Grand, and Basin, which Defendants refused to provide (Exhibit G, D, Pages 5, 9, 17 ). In 2012, Rosebud offered a rate of 2.02¢/kWh (Exhibit D, Page 15), and Moreau-Grand offered 2.7¢/kWh (Exhibit D, Page 20), far below the 4.29¢/kWh judicially confirmed in 2019 (Exhibit N). In 2014, Basin quoted a 2.16¢/kWh rate based solely on its "Highest Incremental" Leland Olds coal plant, concealing higher natural gas costs (Exhibit H). Defendants later falsely claimed under oath in 2019 that no such request was made (Exhibit N Page 18, Line 23 to Page 19, Line 2). Plaintiffs' expert, Dr. Fell, analyzed Defendants' 2016-2019 discovery data, revealing that natural gas avoided costs were approximately double coal costs—simple arithmetic using Defendants' own figures (Exhibit I). Defendants' concealment of these higher rates until 2019 prevented Plaintiffs from securing fair PPAs, violating PURPA's mandate to pay the "highest incremental cost" under 18 C.F.R. § 292.304(b)(2). When the wind farms generate electricity utilities must curtail their generation

source. Logically utilities turn off their highest cost facility before their lowest cost one. (18 C.F.R. § 292.304(b)(2).

Rejection of Valid Power Purchase Agreements

34. In 2016, Plaintiffs submitted 19 signed PPAs for their QFs to Rosebud and Grand, proposing rates of 5 cents a kwh based on Basin's 2016 avoided cost document, which listed Rosebud and Grand's rates above 5 cents a kwh (Exhibit K). The document noted Basin's purchased generation rate of 4.29 cents a kwh. In 2017, Basin rejected all 19 PPAs, stating they did not reflect Basin's avoided cost and were therefore noncompliant with PURPA (Exhibit M). The 2019 South Dakota Circuit Court ruled that Rosebud and Grand's avoided cost was indeed Basin's rate, (Exhibit N 42 line 14-22, page 23 line 16-22). Although the court confirmed the 2016 avoided cost document, which stated the 2019 purchased generation rate was 4.29 cents a kwh, the court did not order Defendants to execute the PPAs at that rate. To this day, Plaintiffs do not understand why—aside from the possibility that their former attorneys' procedural missteps may have prejudiced the outcome. Plaintiffs argue the ruling is moot based upon the lack of jurisdiction.

Wisconsin Ruling and Judicial Confirmation

35. In 2024, during proceedings in the Eastern District of Wisconsin (Case No. 24-cv-00991), Defendants' motion to dismiss (Exhibit PP, PU) acknowledged the South Dakota Circuit Court's determinations, including the 4.29 cents/kWh rate as the judicially established avoided cost based on Basin's 2016 data (Exhibit N,

Page 42, lines 14-22; Exhibit K), by asserting the Circuit Court's ruling as binding authority (Exhibit PP Page 3, and PU Pages 5, 19). Plaintiffs formalized their acceptance of this rate via a summary judgment motion, (Exhibit Motion for Summary Judgment) but the court dismissed the case for lack of personal jurisdiction without reaching the merits (Exhibit U).

Regulatory Compliance and Legally Enforceable Obligations

36. Plaintiffs fully complied with PURPA and FERC regulations, securing property agreements, completing wind feasibility studies, obtaining FAA permits, and conducting microwave and endangered species assessments for their QFs. South Dakota does not have endangered species permits, and Dewey, Tripp, Perkins do not have conditional use permits, (Exhibit Booklet). The 19 PPAs submitted in 2016 satisfied the requirements for a Legally Enforceable Obligation (LEO) under 18 C.F.R. § 292.304(d), as supported by FERC precedent (*In re: Cedar Creek Wind, LLC*, 137 FERC 61,006, P 25 (2011)) and the South Dakota PUC's "Oak Tree" ruling. (Exhibit Oak Tree) These PPAs obligated Defendants to purchase power at either the avoided cost rate when the LEO occurred, or at Plaintiffs' election, at today's rate (18 C.F.R. § 292.304(d)(2).

Interconnection Denials and Transmission Access

37. Defendants obstructed Plaintiffs' Qualifying Facility (QF) interconnections, violating FERC Order No. 2023's mandate for timely, transparent procedures and FERC Order No. 888's requirement for nondiscriminatory transmission access, (Order 888 Section IV.A (FERC Stats. & Regs.    31,036, at 31,635) Plaintiffs

submitted interconnection requests in October and January 2023 to Basin, Rosebud, Grand, and Moreau-Grand. (Exhibit S, T, D Page 19). These delays and denials, part of a decade-long pattern of malfeasance, now jeopardize 12 remaining QFs with up to 175.5 MW net capacity (Exhibits W). FERC's March 20, 2025, finding of Basin's non-compliance confirms this obstruction (Exhibit HH).

Ongoing Harm, Discrimination and Tolling

38. From 2009 to 2015, Defendants Basin Electric, Rosebud Electric, Grand Electric, and Moreau-Grand Electric provided no natural gas avoided cost data for Plaintiffs' Qualifying Facilities (QFs), despite Plaintiffs' 2013 requests (Exhibit G). In 2011 and 2014, Defendants presented Plaintiffs rates near 2 cents a kwh (Exhibits E, H), while Moreau-Grand stated rates at 2.7¢/kWh in 2012 (Exhibit D, Page 20), compared to paying South Dakota Wind Partners, a comparable QF, 4.3 (Exhibit F), demonstrating discriminatory treatment. From 2016 to 2019, Defendants provided rates, such as Basin's 4.29 cents a kwh purchased generation rate, but from 2009 to 2015 concealed higher natural gas rates. The 2019 discovery provided 2016-2019 natural gas rates nearly double the 2009-2013 offered rates (Exhibits D, E,H,I). In 2019, Defendants falsely denied receiving Plaintiffs avoided cost requests under oath (Exhibit N, page 20 line 2-9). The fraudulent concealment prevented Plaintiffs from securing fair power purchase agreements, violating PURPA's mandate to pay the highest incremental cost (18 C.F.R. § 292.304(b)(2)). Despite Plaintiffs' diligent efforts through 2013 requests, 2014 SDPUC filings, and 2024 FERC petitions (Exhibits D, G, J, Z), Defendants' concealment delayed discovery of these violations

(*Holmberg v. Armbrecht*, 327 U.S. 392 (1946)). Defendants' ongoing interconnection denials, confirmed by FERC's March 20, 2025, finding of Basin's non-compliance (Exhibit HH), have stalled 12 QFs with 379.5 MW nameplate.

## VI. NO PROCEDURAL BARS

### A. No Res Judicata Bar

39. From 2009 to 2015, Defendants Basin Electric, Rosebud Electric, Grand Electric, and Moreau-Grand Electric withheld the highest incremental rate, undoubtedly natural gas avoided cost data for Plaintiffs' Qualifying Facilities (QFs), ignoring 2013 requests (Exhibit G). In 2011 and 2014, they offered Plaintiffs rates near 2 cents a kwh (Exhibits E, H), while paying South Dakota Wind Partners, a comparable QF, 4.29 cents a kwh (Exhibit F), evidencing discriminatory prejudice. In 2016 based upon court requirement Defendants provided updated avoided cost rates, such as 4.29 cents kwh for purchased generation by Basin, proving prior rates were fraudulent and below PURPA's highest incremental cost (Exhibits I, K; 18 C.F.R. § 292.304(b)(2). In 2019, Defendants perjured themselves, testifying no avoided cost request was made (Exhibit N, p. 20), contradicted by Plaintiffs' 2013 Letters and numorouse emails (Exhibits D,G). This falsehood, unrefuted due to a procedural error deeming Defendants' undisputed facts admitted, tainted the 2019 South Dakota Circuit Court's judgment, rendering it invalid and precluding res judicata (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944); *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir. 1982)). Despite Plaintiffs' diligent efforts via 2013 requests,

2014 SDPUC filings, and 2024 FERC petitions (Exhibits G, J, Z), Defendants' fraud delayed discovery (*Holmberg v. Armbrecht*, 327 U.S. 392 (1946)). Ongoing interconnection denials, per FERC's March 20, 2025, finding of Basin's non-compliance (Exhibit HH), stall 12 QFs with 379.5 MW nameplate.

40. Defendants' shifting forum arguments further undermine any preclusive effect. In 2014, Defendants' argued the SDPUC lacked jurisdiction and advocated for Circuit Court review (Exhibit J). In 2019, they claimed only FERC had jurisdiction, which the court accepted (Exhibit N page 42 line 23-25 and page 43 line 1-4). In 2024, they reversed again and claimed South Dakota District Court was the proper forum while simultaneously citing the Circuit Court ruling in federal court (Exhibit PP, PU). These contradictory jurisdictional arguments highlight forum manipulation.

41. FERC's April 4, 2024, decision not to enforce PURPA violations (Exhibit A), followed by its denial of reconsideration on July 10, 2024 (Exhibit KK), confirmed that federal judicial review was appropriate but did not address the merits of Plaintiffs' claims.

42. As the Eighth Circuit held in *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir. 1982), fraud and jurisdictional defects preclude res judicata. Likewise, *Costello v. United States*, 365 U.S. 265, 286 (1961), affirms that dismissals without prejudice carry no preclusive weight. Recent FERC proceedings (Initial Decision, EL21-77-000, June 2024) finding Basin's cost allocations improper further support Plaintiffs' allegations of systemic misconduct, bolstering the case for judicial review and foreclosing res judicata.

43. The South Dakota Circuit Court's 2019 summary judgment (Exhibit N) is further moot due to Defendants' contradictory jurisdictional arguments. In 2014, Defendants urged the SDPUC to defer jurisdiction to the Circuit Court (Exhibit J), leading to the SDPUC's dismissal for lack of authority (Exhibit J). Yet, during the 2019 motion for summary judgment, Defendants reversed course, arguing before the Circuit Court that only FERC had jurisdiction (Exhibit N, p. 42), a position the court adopted, dismissing the case without addressing the merits. This contradictory stance misled Plaintiffs into pursuing Circuit Court remedies, only to face a jurisdictional barrier induced by Defendants, delaying discovery of violations and causing prejudice, including the loss of 23 QFs (Exhibit GG). Similarly, the Eastern District of Wisconsin's April 8, 2025, dismissal for lack of personal jurisdiction (Exhibit U) rendered all related filings moot, per *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), further obstructing merits-based review. These jurisdictional tactics, spanning state and federal forums, constitute additional misconduct that tolls the statute of limitations under *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946), and *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1083 (8th Cir. 2018), extending the limitations period through at least 2025, as Plaintiffs diligently pursued relief despite Defendants' obstructions.

B. Equitable Estoppel Against Defenses

44. Defendants are equitably estopped from asserting defenses—such as statute of limitations, jurisdictional bars, or PURPA compliance—due to their misrepresentations and misconduct from 2008 to 2025. Defendants urged the SDPUC to send jurisdiction to the SD Circuit Court. The SDPUC ruled

accordingly (Exhibit J), in 2019 before the circuit court Defendants argued for FERC and federal court jurisdiction in 2019 (Exhibit N, page 21, Lines 7-14), and reverted to state-level defenses during the Eastern District of Wisconsin hearing (Exhibit PP, page 3, para 8; PU pages 5 and 19) after FERC's April 4, 2024, declination (Exhibit A). This jurisdictional flip-flopping, misled Plaintiffs into pursuing Circuit Court remedies, causing prejudice through procedural default and the loss of 23 QFs (Exhibit GG). Such inconsistent positions warrant estoppel, as they induced detrimental reliance, "taking a position inconsistent with one previously asserted when such a shift would result in unfair detriment to the opposing party." *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992). See also *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter... assume a contrary position.").

45. Defendants engaged in a pattern of inconsistent forum arguments and selective disclosure of avoided cost information, inducing reliance and causing prejudice to Plaintiffs. Their misconduct included presenting artificially suppressed avoided cost rates (Exhibits E, H, O), denying valid data requests (Exhibit D, E, G), and submitting materially false sworn statements in court (Exhibit N page 20 line 2-9.) While these facts are detailed further in the fraudulent concealment tolling section below, they also support estoppel because they misled Plaintiffs into pursuing state and federal remedies based on false premises. In 2023, a publicly available version of Basin Electric's proposed 2016 PPA was released, revealing a liquidated damages provision requiring $167,000 per megawatt. This excessive

penalty—confirmed in Basin's prior 2014 correspondence referencing QF guarantees (Exhibit H). It operated as a deterrent to QF participation, directly undermining PURPA's mandate for fair and open access. Under 18 C.F.R. § 292.303(a), each electric utility is required to purchase "any energy and capacity which is made available from a qualifying facility." Courts have held that utilities may not include terms in PPAs that functionally negate this obligation or frustrate PURPA's pro-QF purpose. See *Winding Creek Solar LLC v. Peterman,* 932 F.3d 861, 863 (9th Cir. 2019) (holding that state or utility-imposed contract provisions cannot override federal mandates under PURPA) (Exhibit X). Plaintiffs have requested the PPA agreement for South Dakota Wind Partners (SDWP), who were paid 4.3 cents a kwh (Exhibit F), to determine whether similar penalty provisions were included. As of this filing, Defendants have failed to produce that agreement, further obstructing transparency and reinforcing the appearance of discriminatory treatment. (Exhibit Y). As the Supreme Court held, "[e]quitable estoppel is properly invoked when one party has made misleading representations or conduct that induces another party to detrimentally rely on them." *Heckler v. Cmty. Health Servs.,* 467 U.S. 51, 59 (1984).

46. This prolonged deception, extending beyond 2020, included Defendants' failure to disclose avoided cost data for 2008-2015 and refusal to update post-2020 disclosures (Exhibit Y). FERC's March 20, 2025 ruling (Exhibit HH) confirmed ongoing PURPA violations, underscoring that this conduct was not isolated but systemic. Plaintiffs suffered concrete prejudice, including the loss of 23 Qualifying Facilities totaling 633 MW. The law does not permit Defendants to shift legal

positions, obscure regulatory data, and then invoke jurisdictional or limitations-based defenses. Their conduct meets the equitable estoppel threshold: misleading conduct, reasonable reliance, and resulting harm.

47. Defendants may not now assert jurisdictional or timeliness-based defenses arising from positions they themselves advanced, particularly where such conduct induced reliance and caused irreversible harm. Their repeated misrepresentations, forum shifting, and obstruction form a textbook case for equitable estoppel. See *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653 (8th Cir. 1992); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

## C. Tolling by Fraudulent Concealment

48. As discussed in Section IV, Defendants' concealment of avoided cost data from 2008 through 2019 supports tolling of the statute of limitations under PURPA and federal law. Specifically, Basin's Rob Revenich stated PURPA avoided cost was near 2 cents a kwh rate (Exhibit D) in 2009 and Basin's David Raatz confirmed these rates in 2011, far below market benchmarks (Exhibit E), despite internal records confirming that Defendants were paying 4.3 cents a kwh to South Dakota Wind Partners, and in 2011 Grand filed with the SDPUC a PURPA rate of 4.3 cents (Exhibit F). In 2014, Defendants quoted a misleading "Highest Incremental" 2.16 cents kwh rate based solely on the Leland Olds coal plant, concealing significantly higher natural gas costs (Exhibit H). Plaintiffs formally requested accurate data in 2013 (Exhibit G), but Defendants not only refused to provide it—they later falsely claimed under oath in 2019 that no such requests had been made (Exhibit N page 20 line 2-9). When partial discovery was provided in 2019,

Dr. Fell's analysis of their records revealed that the true avoided costs—based on natural gas—were nearly double the coal-based figures they used to block Plaintiffs' QFs (Exhibits I). Yet in 2019 Grand filed backdated false avoided cost (Exhibit O) under 2 cents a kwh while the previous filing stated 4.3 cents (Exhibit F) This concealment persisted until 2019 and delayed Plaintiffs' discovery of the false 2009-2015 avoided cost rates, directly resulting to the loss of 23 QFs totaling 633 MW nameplate capacity, seven wind farms from the 2016 ppa submissions. (Exhibit GG). Under *Holmberg v. Armbrecht*, 327 U.S. 392 (1946), and *Summerhill v. Terminix, Inc.*, 637 F.3d 877 (8th Cir. 2011), this deliberate concealment tolls the limitations period until discovery, preserving Plaintiffs' PURPA, RICO, fraud, and related claims. FERC's March 20, 2025 finding (Exhibit HH) that Basin Electric remains non-compliant with transparency and small generator interconnection requirements confirms that key violations remain concealed as of the date of this Complaint. These findings corroborate Plaintiffs' allegations of continuing misconduct and fraudulent concealment into 2025. Because Plaintiffs could not reasonably uncover these violations earlier through diligent efforts, the limitations period has not begun to run. This tolling applies to all claims, including PURPA, RICO, fraud, and antitrust. Plaintiffs diligently pursued their rights through administrative petitions, state court actions, federal complaints, and direct data requests (Exhibits D, G, J, N, U, Y). Despite these efforts, critical information remained concealed by Defendants until 2019 and beyond. Accordingly, tolling extends at least through 2025.

49. Defendants' jurisdictional manipulations further support tolling by delaying substantive judicial review of Plaintiffs' claims, compounding the harm from their fraudulent concealment. In 2014, Defendants argued before the SDPUC that the South Dakota Circuit Court had jurisdiction over PURPA issues (Exhibit J), leading to the SDPUC's dismissal (Exhibit J). Yet, in 2019, Defendants reversed course, asserting before the Circuit Court that only FERC had jurisdiction (Exhibit N, p. 42), a position the court adopted, dismissing the case without addressing the merits. This contradictory stance misled Plaintiffs into pursuing Circuit Court remedies, only to face a jurisdictional barrier induced by Defendants, delaying discovery of violations and causing prejudice, including the loss of 23 QFs (Exhibit GG). Similarly, the Eastern District of Wisconsin's April 8, 2025, dismissal for lack of personal jurisdiction (Exhibit U) rendered all related filings moot, per *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), further obstructing merits-based review. These jurisdictional tactics, spanning state and federal forums, constitute additional misconduct that tolls the statute of limitations under *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946), and *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1083 (8th Cir. 2018), extending the limitations period through at least 2025, as Plaintiffs diligently pursued relief despite Defendants' obstructions.

## VII. CLAIMS FOR RELIEF

### Count 1: PURPA Violation - Interconnection Denials

50. Defendants' refusal to process and ongoing delays in facilitating interconnection requests for Plaintiffs' Qualifying Facilities (QFs), as evidenced by Exhibits S, T,

and intensified in 2025, violate PURPA. These actions denied Plaintiffs' QFs their guaranteed transmission grid access, contravening FERC Order No. 888 (FERC Stats. & Regs. 31,036 (1996), at 31,748-49) for nondiscriminatory access, FERC Order No. 2222 (172 FERC 61,247 (2020), at P 97) for market participation, and FERC Order No. 2023 (184 FERC 61,054 (2023), at P 285-287) for timely, transparent procedures. FERC's March 20, 2025, finding of Basin's non-compliance with transparency and small generator requirements (Exhibit HH) confirms persistent violations, obstructing 12 active QFs (Exhibit W) and contributing to the loss of 23 QFs (633 MW). Defendants' 2025 delays perpetuate PURPA's violation, undermining nondiscriminatory interconnection rights and tolling limitations under *Bell v. Vacuforce, LLC*, 908 F.3d 1075 (8th Cir. 2018).

Count 2: PURPA Violation - False Avoided Costs

51. Defendants misrepresented avoided cost data in 2013 by quoting 2.16¢/kWh (Exhibit H), contradicted by their 2016 disclosure of 4.29¢/kWh (Exhibits I, K; 18 C.F.R. § 292.304(b)(2)). In 2019, Defendants perjured themselves, testifying no prior requests were made (Exhibit N, Page 18, Line 23 to Page 19, Line 2), contradicted by Plaintiffs' emails, 2013 Letters (Exhibits D, G). This falsehood, unrefuted due to a procedural error deeming Defendants' facts admitted (Exhibit N Page 10, Lines 17-22, Page 39, Lines 6-11), Despite Plaintiffs' diligent efforts Defendants' fraud and delayed discovery (Exhibit N Page 18, Line 23 to Page 19, Line 2; Page 42, Line 23-25 and Page 43, Line 1-4). (*Holmberg v. Armbrecht*, 327 U.S. 392 (1946)). tainted the 2019 South Dakota Circuit Court's judgment, rendering it invalid and precluding res judicata (*Hazel-Atlas Glass Co. v.*

*Hartford-Empire Co.*, 322 U.S. 238, 245 (1944); *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir. 1982)).

Count 3: PURPA Violation - PPA Rejection

52. In 2017, Defendant Basin Electric Power Cooperative rejected Plaintiffs' 19 signed power purchase agreements (PPAs) for their Qualifying Facilities (QFs), despite full compliance with PURPA, creating a Legally Enforceable Obligation (LEO) formed in 2016 (Exhibit L) (*Murphy Flat Power*, 141 FERC 61,145, P 24 (2012)). Submitted to Rosebud and Grand Electric, these PPAs proposed rates of 5 cents a kwh consistent with Rosebud and Grand's 2016 avoided cost rates exceeding 5 cents a kwh, as supported by Basin's data (Exhibit K). The South Dakota Circuit Court in 2019 determined Basin's purchased generation avoided cost rate was the local distribution cooperatives rate. 4.29 cents a kw, which Defendants acknowledged as PURPA-compliant (Exhibit N page 42 line 14-22). For the courts understanding Rosebud Grand and Moreau-Grand pay over 6.4 cents a Kwh to Basin, which has hurt everyone. (Exhibit V). Basin's rejection, falsely claiming non-compliance (Exhibit M), violated PURPA's mandate to purchase QF power (18 C.F.R. § 292.303(a)) This rejection, compounded by Defendants' concealment of accurate avoided cost data from 2008 to 2015 (Exhibits D, G, H), demonstrates a pattern of discriminatory conduct that denied Plaintiffs fair access to the grid, unlike South Dakota Wind Partners, paid 4.3 cents a kwh for a comparable QF (Exhibit F). This violation prevented grid access for 19 QFs, causing the loss of 7 QFs (183 MW). Plaintiffs seek declaratory relief, enforcement of the 2016 PPAs at 5 cents a kwh (4.29 cents a

kwh and .71 cents for a capacity payment) or based upon our LEO today's higher rate, with an inflation rate of $2.5% and damages for the resulting harm.

Count 4: RICO - Pattern of Racketeering Activity

53. Defendants engaged in a pattern of racketeering activity from 2008 to 2025, orchestrating fraud, perjury, and jurisdictional manipulation to block 23 QFs totaling 633 MW (Exhibit MM). Predicate acts include: (1) fraudulent concealment of avoided cost rates from 2009-2015 (offering 2¢/kWh vs. higher natural gas costs, Exhibits D, H, I, O), (2) discriminatory rate fraud (paying South Dakota Wind Partners 4.3¢/kWh while offering Plaintiffs 2¢/kWh, Exhibits D, F), and (3) perjury in 2019 denying Plaintiffs' numerous emails and 2013 data requests (Exhibits D, G, N Page 18, Line 23 to Page 19, Line 2). Since 2020, Defendants persisted by withholding data through 2025 (Exhibit Y), causing the loss of 7 QFs (183 MW) and obstructing interconnections (Exhibit S, T). Defendants' coordinated obstruction, including withholding interconnection to exclude Plaintiffs' QFs, mirrors the exclusionary conduct condemned in *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973), where a utility's refusal to provide interconnection was held to unlawfully maintain market control, constituting a predicate act of racketeering by furthering the enterprise's scheme. This 17-year pattern, unified by the intent to suppress Plaintiffs' QFs, satisfies RICO's continuity under *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989), and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985). The 2025 violations trigger the separate accrual rule for new injuries (*Sidney Hillman*

*Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922 (7th Cir. 2015)), inflicting hundreds of millions of harm on Plaintiffs' business and millions in losses to Dostal.

Count 5: Fraudulent Concealment

54. Defendants knowingly and intentionally concealed material avoided cost data from 2008 to 2015 (Exhibits D, G, H), including natural gas pricing information critical to establishing the "highest incremental cost" required under PURPA regulations (18 C.F.R. § 292.304(b)(2)). As early as 2009, Plaintiffs requested avoided cost data through emails with Rosebud and Grand Electric, which Defendants ignored (Exhibit D). This concealment delayed Plaintiffs' ability to discover that offered rates, such as 2 cents a kwh, were artificially suppressed and far below the 4.3 cents a kwh paid to similarly situated wind developers like South Dakota Wind Partners (Exhibits D, F, H). Despite further formal requests in 2013 (Exhibit G) and active litigation before state and federal agencies, Defendants perjured themselves in 2019, falsely denying these requests under oath (Exhibit N, page 20,21), further obscuring true avoided costs and obstructing Plaintiffs' federal rights. This fraudulent concealment tolled the statute of limitations under well-settled precedent (*Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946); *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1083 (8th Cir. 2018)). Defendants' deliberate and prolonged concealment caused Plaintiffs' injuries, including the loss of 23 QFs totaling 633 MW—16 QFs (450 MW) before 2020, and 7 QFs (183 MW) after 2020. As such, the statute of limitations on all claims—PURPA, RICO, fraud, and related causes of action—must be tolled through at least 2025.

Count 6: PURPA Violation - Fraudulent Backdating of Avoided Costs

55. Defendants unlawfully backdated avoided cost rates to 1.73 cents a kwh in 2019 (Exhibit O), violating the cost-setting and disclosure obligations under 18 C.F.R. §§ 292.302 and 292.304. This backdating, executed in bad faith, sharply contrasted with Grand Electric's 2011 SDPUC filing of a 4.3 cents a kwh PURPA rate, also paid to South Dakota Wind Partners (Exhibit F). The retroactive recalculation aimed to invalidate prior avoided cost values, and prevent execution of power purchase agreements (PPAs). These actions undermined transparency, violated PURPA's nondiscrimination principles, and rendered Plaintiffs' Qualifying Facilities (QFs) financially infeasible. This deceptive (Exhibit O) backdating fraudulent act contributed to the loss of 23 QFs totaling 633 MW—16 QFs (450 MW) before 2020, and 7 QFs (183 MW) after 2020. Plaintiffs seek declaratory and injunctive relief, and damages for harm caused by Defendants' bad-faith manipulation of avoided cost procedures in violation of PURPA and federal regulations.

Count 7: PURPA Violation - Discriminatory PPA Penalties

56. Defendant Basin Electric Power Cooperative violated the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 824a-3, and its implementing regulations, by imposing excessive and discriminatory penalty provisions in its proposed power purchase agreements (PPAs) for Plaintiffs' Qualifying Facilities (QFs). A full PPA was publicly disclosed in 2023, confirming the $167,000/MW penalty provision (Exhibit X). The provision's public release further evidences that

Basin's discriminatory penalty structure was deliberate and systemic—not isolated or confidential. A 2014 letter from Basin referencing performance guarantees confirms the intent to apply these penalties broadly to QF developers (Exhibit H). Such penalty provisions directly violate 18 C.F.R. § 292.303(a), which mandates that "[e]ach electric utility shall purchase... any energy and capacity which is made available from a qualifying facility." Courts have consistently held that utilities may not use contract provisions to evade their PURPA obligations. As the Ninth Circuit explained in *Winding Creek Solar LLC v. Peterman*, 932 F.3d 861, 863 (9th Cir. 2019), "States may not impose conditions or limitations on QFs that are inconsistent with PURPA or FERC's implementing regulations." Likewise, FERC has stated that "[a] utility may not condition its obligation to purchase on requirements that effectively frustrate QF development." See *JD Wind 1, LLC*, 129 FERC 61,148, P 19 (2009). These penalties were designed to deter independent QFs—like Plaintiffs' wind projects—from entering the market, contrary to the statute's express purpose to "encourage the development of cogeneration and small power production facilities" (16 U.S.C. § 824a-3(a)). Plaintiffs seek a declaratory judgment that such penalty provisions violate PURPA and an injunction prohibiting Basin from enforcing or proposing such discriminatory terms in any future PPA negotiations with QFs.

Count 8: RICO Conspiracy (18 U.S.C. § 1962(d))

57. From 2008 to 2025, Defendants Basin Electric Power Cooperative, Rosebud Electric Cooperative, Inc., Grand Electric Cooperative, Inc., and Moreau-Grand Electric Cooperative knowingly agreed and conspired to conduct the affairs of

their enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). Unlike Count 4, which details the substantive pattern, this Count focuses on the agreement and joint coordination among Defendants to suppress Plaintiffs' Qualifying Facilities (QFs) through fraudulent concealment, obstruction, and exclusionary tactics. The conspiratorial agreement is evidenced by coordinated actions across regulatory and judicial forums. From 2009 onward, all four Defendants jointly advocated false avoided cost rates (Exhibits D, E, F, H), refused data requests (Exhibit D,G), denied valid interconnection applications (Exhibits S, T), and falsely denied the existence of such requests under oath (Exhibit N page 20,21). Basin Electric's 2014 correspondence (Exhibit H) and Rosebud, Grand, and Moreau-Grand's participation in contract rejections and litigation filings confirm a shared objective to block QF market access. In 2016, Basin, Rosebud, and Grand acted in concert to reject 19 signed PPAs submitted by Plaintiffs, (Exhibit M). Their unified opposition continued through 2025, as demonstrated by joint refusal to update avoided cost data (Exhibit Y) and their coordinated positions before FERC and federal courts. FERC's March 20, 2025 ruling (Exhibit HH) found that Basin Electric's procedures still violated PURPA, further implicating the ongoing nature of the conspiracy. This collective conduct meets the definition of a closed-ended RICO conspiracy under *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346 (8th Cir. 2011). Under *Salinas v. United States*, 522 U.S. 52, 63-65 (1997), liability attaches to any party who knowingly agrees to facilitate a scheme—even without committing each predicate act. Each Defendant contributed to the enterprise's unlawful goals: Basin designed the

scheme, while Rosebud, Grand, and Moreau-Grand implemented discriminatory rates and interconnection denials on the ground. While related to the same underlying facts as Count 4, this Count is based on Defendants' agreement and coordination to facilitate racketeering conduct, not on the commission of individual predicate acts. The focus here is on the shared unlawful objective and the means of executing it as a cohesive enterprise. Plaintiffs suffered hundreds of millions in damages as a result of this 17-year conspiracy, including the loss of 23 QFs, and long-term energy revenue (Exhibit MM). Accordingly, all four Defendants are jointly liable under 18 U.S.C. § 1962(d) for conspiring to violate § 1962(c).

Count 9: PURPA Violation - Discriminatory Rate Offers

58. Defendant Basin Electric Power Cooperative violated the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 824a-3(b), and its regulations, 18 C.F.R. § 292.304(a), by offering Plaintiffs discriminatory rates for their Qualifying Facilities (QFs). In 2011, Basin offered rates near 2 cents a kwh (Exhibit D, E), while paying South Dakota Wind Partners LLC 4.3 cents kwh for comparable wind QFs in the same region, as documented in the SDWP agreement and matching Grand Electric's 2011 SDPUC filing (Exhibit F). Despite Plaintiffs' formal request for accurate avoided cost data in 2013 (Exhibit G), Basin persisted, offering a 2.16 cents a kwh in 2014 based solely on its "Highest Incremental" Leland Olds coal plant, concealing its higher natural gas avoided rated (Exhibit H, I ). This disparate treatment, lacking justification under PURPA's mandate for nondiscriminatory purchase rates to encourage QF development (*Swecker v.*

*Midland Power Coop.*, 136 FERC 61,240, P 32 (2011)), prevented Plaintiffs from entering power purchase agreements, rendering their QFs financially infeasible. These discriminatory rates contributed to the loss of 23 QFs totaling 633 MW. (Exhibit MM) Plaintiffs seek: (1) damages for lost opportunities; (2) requiring Basin to sign the 2016 ppa at Basin's 2019 purchased generation rate of 4.29 cents plus .71 cents for capacity, or based upon the LEO today's rate whichever is higher, or Damages for the lost wind farms (Exhibit MM).

Count 10: Sherman Act Violation - Conspiracy to Restrain QF Trade

59. Defendant Basin Electric Power Cooperative violated the Sherman Act, 15 U.S.C. §§ 1–2. by engaging in a conspiracy to restrain trade in the market for Qualifying Facilities (QFs) through discriminatory rates and exclusionary practices. In 2011, Basin offered Plaintiffs rates near 2 cents a kwh (Exhibit D, E) while paying South Dakota Wind Partners LLC 4.3 cents a kwh for comparable wind QFs in the same region, as documented in the SDWP agreement and matching Grand Electric's 2011 SDPUC filing (Exhibit F). Despite Plaintiffs' formal request for accurate avoided cost data in 2013 (Exhibit G), Basin persisted, offering a 2.16 a cents a kwh in 2014 based solely on its "Highest Incremental" Leland Olds coal plant, concealing higher natural gas costs (Exhibit H). This disparate treatment, lacking justification under PURPA's mandate for nondiscriminatory purchase rates to encourage QF development (*Swecker v. Midland Power Coop.*, 136 FERC 61,240, P 32 (2011)), prevented Plaintiffs from entering power purchase agreements, rendering their QFs financially infeasible. These discriminatory rates contributed to the loss of 23 QFs totaling 633 MW.

Plaintiffs seek: (1) damages for lost opportunities; (2) an injunction requiring Basin to offer nondiscriminatory rates; thereby signing the 2016 ppa at Basin's 2019 purchased generation rate of 4.29 cents plus .71 cents for capacity, or at Plaintiff's discretion based upon the LEO today's rate whichever is higher or Damages for the lost QF wind farms (Exhibit MM) (3) declaratory relief affirming the rate disparity's illegality under the Sherman Act.

Count 11: Bad Faith and Litigation Misconduct

60. Defendants have engaged in persistent bad faith conduct and litigation abuse aimed at delaying resolution, evading accountability, and obstructing Plaintiffs' rights to operate Qualifying Facilities (QFs) under PURPA, 16 U.S.C. § 824a-3. Their misconduct includes:

- Knowingly submitting materially false statements to courts, including sworn denials in 2019 of Plaintiffs' 2013 data requests and numerous emails to receive avoided cost since 2009, (Exhibit N page 20; Exhibit D, E, G);

- Shifting jurisdictional positions across administrative and judicial forums, asserting inconsistent claims before the SDPUC in 2014, South Dakota Circuit Court in 2015-2019, FERC in 2020, and federal court. (Exhibit N)

61. Defendants' conduct also violated basic duties of candor and fairness by engineering a procedural trap through forum manipulation. Defendants' jurisdiction shopping and counter jurisdictional arguments dependent on which court they were before obstructed judicial review and frustrated PURPA's enforcement mechanism under 16 U.S.C. § 824a-3(h)(2)(B). Courts do not permit such manipulation. See *New Hampshire v. Maine*, 532 U.S. 742, 749

(2001); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991). Defendants' misuse of court rulings for tactical advantage—after inducing those very rulings—reflects willful bad faith and procedural misconduct warranting sanctions and equitable relief. See also *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019). Plaintiffs seek sanctions, damages for litigation-related harm, and an injunction to prevent future procedural abuse.

VIII. Prayer for Relief

Plaintiffs respectfully request that the Court:

a. Declare that Defendants violated the Public Utility Regulatory Policies Act of 1978 (PURPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), the Sherman Act, and engaged in fraudulent concealment and litigation misconduct;

b. Order Rosebud, Grand, and Moreau-Grand to produce all South Dakota PUC-required interconnection forms and compel Basin Electric to cease obstructing or delaying interconnection of Plaintiffs' Qualifying Facilities (QFs), in accordance with 18 C.F.R. § 292.303;

c. Award damages to Thomas Mattson and Edward J. Dostal for:

- Lost financing opportunities due to obstruction of PTC monetization since 2016, including tax equity and investment losses,

- Supplemental lost QF revenue from 2016-2025, including post-2020 operational losses,

- Devalued land options from 2014-2025 due to QF terminations,
- $252,000 in land lease payments to Edward J. Dostal, representing $12,600 per year over 20 years for Gregory-Burke 1 (Exhibit MM, Section IV),
- Damages for the terminated QFs (Exhibit GG) as detailed in Exhibit MM.
- Litigation-related damages caused by Defendants' bad faith misconduct, including delays from false statements, jurisdictional shifts, data refusal, and discovery violations (2014-2025),
- Plus treble damages where applicable under RICO and Sherman Act statutes (Exhibits MM),

d. Order Defendants to execute the 2016 power purchase agreements (PPAs) at the established 4.29 cents a kwh $4.29 energy-only avoided cost rate (Exhibit K) plus .71 for today's capacity payment, or today's LEO rate if higher under 18 C.F.R. § 292.304(b)(2) for all twelve active QFs.

e. Order full reinstatement of all twenty-three lost QFs (633 MW nameplate capacity) or procurement of equivalent megawatt capacity, (Exhibit GG) at the established at 4.29 cents a kwh energy-only avoided cost rate (Exhibit K) plus .71 for today's capacity payment, or today's LEO rate if higher under 18 C.F.R. § 292.304(b)(2), or order damages to be paid as contained in Exhibit MM.

h. Invalidate exclusivity, anti-wind, or other restrictive clauses in Basin's or its affiliates' contracts that unlawfully inhibit QF development;

i. Enjoin Defendants from making further misrepresentations regarding PURPA obligations, avoided cost rates, QF eligibility, or project rights in any regulatory or judicial forum;

j. Prior to this hearing warn Defendants attorneys not to violate this Honorable Courts standards of conduct, and Sanction Defendants' counsel for knowingly misrepresenting the record, including the false claim that Plaintiffs "never asked" for data (Exhibit N page 20);

Sincerely,

"I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and EDWARD J. DOSTAL Plaintiffs Complaint filed against BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE is true and correct." Executed on 4/24/25

*/s/ Thomas Mattson*
Thomas Mattson
146 Alpine Dr. Green Bay, WI 54302
9203934131
prelude1234@gmail.com

"I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and EDWARD J. DOSTAL Plaintiffs Complaint filed against BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE is true and correct." Executed on 4/24/25

*/s/ Edward J. Dostal*
Edward J. Dostal
29862 338th Ave
Gregory, SD 57533
6058304638
dostaled@yahoo.com


## Defendants

Rosebud Electric Cooperative
512 Rosebud Ave,
Gregory, SD 57533

Grand Electric Cooperative
801 Coleman Ave,
Bison, SD 57620

Basin Electric Power Cooperative
1717 East Interstate Ave.
Bismarck, ND 58503-0564

Moreau-Grand Electric Cooperative
405 9th St,
Timber Lake, SD 57656

• PU Defendants Brief in Support of Defendants' Motion to Dismiss

---

Sincerely,

"I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and

EDWARD J. DOSTAL Plaintiff's Affidavit in support of Plaintiff's Complaint filed against

BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE,

INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC

COOPERATIVE is true and correct." Executed on 4/25/25

/s/

Thomas Mattson
146 Alpine Dr.
Green Bay, WI 54302
9203934131
prelude1234@gmail.com

"I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and

EDWARD J. DOSTAL Plaintiff's Affidavit in support of Plaintiff's Complaint filed against

BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE,

INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC

COOPERATIVE is true and correct." Executed on 4/25/25

/s/

/s/ Edward J. Dostal

Edward J. Dostal

29862 338th Ave

● PU Defendants Brief in Support of Defendants' Motion to Dismiss

---

Sincerely,

"I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and

EDWARD J. DOSTAL Plaintiff's Affidavit in support of Plaintiff's Complaint filed against

BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE,

INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC

COOPERATIVE is true and correct." Executed on 4/25/25


/s/

Thomas Mattson
146 Alpine Dr.
Green Bay, WI 54302
9203934131
prelude1234@gmail.com



"I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and

EDWARD J. DOSTAL Plaintiff's Affidavit in support of Plaintiff's Complaint filed against

BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE,

INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC

COOPERATIVE is true and correct." Executed on 4/25/25


/s/ _Edward Dostal_

/s/ Edward J. Dostal

Edward J. Dostal

29862 338th Ave

Gregory, SD 57533

6058304638

dostaled@yahoo.com

**Defendants**

Rosebud Electric Cooperative

512 Rosebud Ave,

Gregory, SD 57533

Grand Electric Cooperative

801 Coleman Ave,

Bison, SD 57620

Basin Electric Power Cooperative

1717 East Interstate Ave.

Bismarck, ND 58503-0564

Moreau-Grand Electric Cooperative

405 9th St,

Timber Lake, SD 57656

**CIVIL COVER SHEET  Case History Summary:**

Thomas Mattson and Edward J. Dostal vs. Basin Electric Power Cooperative, Rosebud Electric Cooperative, Inc., and Grand Electric Cooperative, Inc.,

# 1. South Dakota Public Utilities Commission (SDPUC) Filing

- **Docket Number**: EL14-042
- **Judge**: Not applicable (administrative proceeding)
- **Details**:
  - **Filed**: May 5, 2014
  - **Allegation**: PURPA rate violations
  - **Outcome**: Dismissed on July 24, 2014, for lack of jurisdiction

# 2. South Dakota Circuit Court

- **Docket Number**: 61CIV15-000050
- **Judge**: Bobby Rank
- **Details**:
  - **Filed**: July 30, 2015
  - **Outcome**: Summary judgment granted to Defendants on January 21, 2020, court did not have jurisdiction.

# 3. South Dakota Supreme Court

- **Docket Number**: 29578
- **Judges**: Steven Jensen, Janine M. Kern, Mark Salter, Patricia J. DeVaney, Scott P. Myren
- **Details**:
  - **Dismissed**: March 16, 2021
  - **Reason**: Motion for a new trial deemed not appealable; and lack of jurisdiction

# 4. United States Supreme Court

- **Docket Number**: 21-6385
- **Judges**: Not specified (certiorari denial, no panel named)
- **Details**:
  - **Petition Filed**: July 20, 2021
  - **Filing Accepted**: November 23, 2021

- ○ **Outcome**: Petition for writ of certiorari denied

# 5. Federal Energy Regulatory Commission (FERC)

- **Docket Number**: EL24-70-000
- **Judge**: Not applicable (administrative proceeding)
- **Details**:
  - ○ **Filed**: February 5, 2024
  - ○ **Outcome**: FERC declined enforcement on April 4, 2024, directing Plaintiffs to file in District Court
  - ○ **Reconsideration Denied**: July 10, 2024

# 6. Eastern District of Wisconsin

- **Docket Number**: 1:2024cv00991
- **Judge**: Byron Conway
- **Details**:
  - ○ **Filed**: August 6, 2024
  - ○ **Outcome**: Dismissed without prejudice on April 8, 2025, for lack of personal jurisdiction

**Civil Cover Sheet**

**Case Court History**

**Plaintiffs Election Regarding Magistrate Judge,**

**Disclosure Statement Civ LR 7.1.1**

**Complaint**

**Affidavit**

**Exhibits: Listed in order of appearance.**

**Exhibit A**: FERC's April 4, 2024, declination to initiate enforcement proceedings (187 FERC 61,008). (First appears on Page 4, ¶ 3)

**Exhibit KK**: FERC's July 10, 2024, denial of Plaintiffs' motion for reconsideration (188 FERC 61,028). (First appears on Page 4, ¶ 3)

**Exhibit U**: Eastern District of Wisconsin's April 8, 2025, dismissal for lack of personal jurisdiction (Case No. 24-cv-00991). (First appears on Page 4, ¶ 3)

**Exhibit N**: South Dakota Circuit Court's 2019 ruling, including Defendants' false claim that Plaintiffs never requested avoided cost data and the court's finding that FERC had jurisdiction (Case No. 61CIV15-000050). (First appears on Page 4, 4)

**Exhibit D**: Evidence of Plaintiffs' requests for avoided cost data, including emails and letters from 2009-2013, and Defendants' responses (e.g., Rosebud's 2.02 ¢/kWh offer, Moreau-Grand's 2.7 ¢/kWh offer). (First appears on Page 5, ¶ 5)

**Exhibit E**: Basin's 2009 and 2011 statements by Rob Revenich and David Raatz, respectively, claiming avoided cost rates near 2 ¢/kWh. (First appears on Page 5, ¶ 5)

**Exhibit G**: Plaintiffs' formal 2013 requests for accurate avoided cost data from Rosebud, Grand, and Basin. (First appears on Page 5, ¶ 5)

**Exhibit MM**: Affidavit and documentation of financial losses, including damages for terminated QFs and Edward J. Dostal's $252,000 annual land lease losses. (First appears on Page 5, ¶ 5)

**Exhibit V**: Evidence of Basin's 115% rate increases impacting poor communities. (First appears on Page 5, ¶ 5)

**Exhibit F**: Documentation of South Dakota Wind Partners being paid 4.3 ¢/kWh, including Grand Electric's 2011 SDPUC filing. (First appears on Page 6, ¶ 6)

**Exhibit H**: Basin's 2014 letter quoting a 2.16 ¢/kWh rate based on the Leland Olds coal plant and referencing performance guarantees with penalty provisions. (First appears on Page 6, ¶ 6)

**Exhibit I**: Dr. Fell's analysis of Defendants' 2016-2019 discovery data, showing natural gas avoided costs nearly double coal-based costs. (First appears on Page 6, ¶ 6)

**Exhibit O**: Grand Electric's 2019 backdated avoided cost rate of 1.73 ¢/kWh. (First appears on Page 6, ¶ 6)

**Exhibit T**: Plaintiffs' January 2023 interconnection requests and Defendants' denials or delays. (First appears on Page 6, ¶ 6)

**Exhibit Y**: Defendants' refusal to provide 2008-2015 avoided cost data and updated disclosures since 2020, including Plaintiffs' motion to compel in the Eastern District of Wisconsin. (First appears on Page 6, ¶ 6)

**Exhibit HH**: FERC's March 20, 2025, finding that Basin's interconnection procedures violate transparency and small generator requirements. (First appears on Page 6, ¶ 6)

**Exhibit FERC Order 2**: FERC's January 13, 2025, confirmation of Thomas Mattson's ownership of 12 QFs (190 FERC 61,015, P 39). (First appears on Page 7, ¶ 10)

**Exhibit J**: SDPUC's July 24, 2014, dismissal for lack of jurisdiction over cooperative rates (Docket EL14-042). (First appears on Page 7, ¶ 11)

**Exhibit PP**: Defendants' motion to dismiss in the Eastern District of Wisconsin, acknowledging the South Dakota Circuit Court's 4.29 ¢/kWh rate as binding (Document 28). (First appears on Page 7, ¶ 11)

**Exhibit Oak Tree**: South Dakota PUC's Oak Tree ruling (Docket EL12-038, July 9, 2013), clarifying PURPA requirements for avoided cost rates and PPAs. (First appears on Page 8, ¶ 13)

**Exhibit L**: Plaintiffs' 2016 signed power purchase agreements (PPAs) submitted to Rosebud and Grand. (First appears on Page 8, ¶ 14)

**Exhibit K**: Basin's 2016 avoided cost document listing Rosebud and Grand's rates above 5 ¢/kWh and purchased generation rate of 4.29 ¢/kWh. (First appears on Page 9, ¶ 15)

**Exhibit Motion for Summary Judgment**: Plaintiffs' motion for summary judgment filed in the Eastern District of Wisconsin regarding the 4.29 ¢/kWh avoided cost rate. (First appears on Page 9, ¶ 15)

**Exhibit PU**: Additional filings in the Eastern District of Wisconsin citing the South Dakota Circuit Court's ruling (Document 29). (First appears on Page 13, ¶ 22)

**Exhibit Assignment of Complaint**: Agreement assigning Prelude LLC's QFs and related claims to Thomas Mattson. (First appears on Page 13, ¶ 24)

**Exhibit GG**: List of terminated QFs, detailing the loss of 23 QFs (633 MW nameplate capacity, 296.65 MW net capacity). (First appears on Page 14, ¶ 29)

**Exhibit S**: Plaintiffs' October 2023 interconnection requests to Basin, Rosebud, Grand, and Moreau-Grand. (First appears on Page 14, ¶ 29)

**Exhibit M**: Basin's 2017 rejection of Plaintiffs' 19 PPAs, claiming non-compliance with PURPA. (First appears on Page 14, ¶ 29)

**Exhibit W**: List of 12 active QFs stalled due to Defendants' interconnection delays. (First appears on Page 15, ¶ 30)

**Exhibit Booklet**: Documentation showing lack of endangered species permits in South Dakota and conditional use permits in Dewey, Tripp, Perkins, and (until recently) Gregory Counties. (First appears on Page 18, ¶ 36)

**Exhibit X**: Publicly disclosed 2023 Basin PPA with a $167,000/MW penalty provision. (First appears on Page 24, ¶ 45)

**Exhibit Booklet will be sent next week.**

**I hope you have nice day, Thomas Mattson**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Eward Dostal and Thomas Mattson

**DEFENDANTS**

Rosebud, Grand and Basin Electric Cooperatives

**(b)** County of Residence of First Listed Plaintiff    Gregory
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Gregory
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

both pro se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | **INTELLECTUAL** | [x] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | [ ] 368 Asbestos Personal Injury Product | | [ ] 830 Patent | [ ] 460 Deportation |
| | [ ] 340 Marine | Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [x] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [x] 890 Other Statutory Actions |
| | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [x] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [x] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
PURPA (16 U.S.C. § 824a-3), RICO (18 U.S.C. § 1962), Sherman Act (15 U.S.C. § 2), with supplemental jurisdiction under § 1337. fraudulent conce

Brief description of cause:
Qualifying Facility wind farm's PURPA avoided cost dispute, Defendants coordinated scheme violated federal mandates under PURPA, FERC

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 500 million

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Bryon Conaway    DOCKET NUMBER   24-CV-991

DATE   4/8/25

SIGNATURE OF ATTORNEY OF RECORD   pro se    *Pro Se*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



MAY 02, 2025

57501    **$31.40**

RDC 07    S2324D500289-19

**PRESS FIRMLY TO SEAL**

# PRIORITY
# MAIL
# EXPRESS®

## FLAT RATE
## ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

 **UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**

EI 971 777 866 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE ( 920-393-4171 )

146 Alpine Dr
Green Bay WI
54302

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
    *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( )

S.D Crt House
Suite 425
225 South Pierre St
Pierre SD

ZIP + 4® (U.S. ADDRESSES ONLY)

57501-___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | | |
|---|---|---|---|
| ☐ 1-Day | ☒ 2-Day | ☐ Military | ☐ DPO |

PO ZIP Code: 54302    Scheduled Delivery Date (MM/DD/YY): 5-5-25    Postage: $ 31.40

Date Accepted (MM/DD/YY): 5-2-25    Scheduled Delivery Time: ☐ 12:00 ☒ 6:00 PM    Insurance Fee: $ X    COD Fee: $ X

Time Accepted: 3.58 ☐AM ☒PM    Return Receipt Fee: $ X    Live Animal Transportation Fee: $ X

Special Handling/Fragile: $ X    Sunday/Holiday Premium Fee: $ X    Total Postage & Fees:

Weight: lbs. ozs. ☒ Flat Rate    Acceptance Employee Initials: GN    $ 31.40

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)    Time    ☐AM ☐PM    Employee Signature

Delivery Attempt (MM/DD/YY)    Time    ☐AM ☐PM    Employee Signature

LABEL 11-B, NOVEMBER 2023    PSN 7690-02-000-9996



◄ **PEEL FROM THIS CORNER**

 PAPER POUCH

   **UNITED STATES POSTAL SERVICE®**

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This carton is not for resale. EP13F © U.S. Postal Service; October 2023. All rights reserved.

Edward & Annie Dostal
29862 338th Ave
Gregory SD 57533-5016

DAKOTA CENT
573 A  1  L
06 MAY 2025



FOREVER

The South Dakota District Court
Pierre Divisional Office
225 South Pierre Street  Suite 425
Pierre . South Dakota  57501