**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH DAKOTA – CENTRAL DIVISION**

---

THOMAS MATTSON and EDWARD J. DOSTAL,

Plaintiffs,

Case No. 3:25-cv-03008-RAL

**v.**

BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE,

Defendants.

---

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE, AND MOTION FOR DE NOVO REVIEW OF 2020 STATE COURT ORDER

---

Table of Contents

Table of Authorities ..................................................... p. 2–27

Defendants' Cited Authorities (Refuted) ...................... p. 4–8

Authorities (Cases, Statutes, Regs., FERC Orders, Other) ..... p. 8–27

¶1. Jurisdiction & Standards ......................................... p. 27

¶2. General Denial ...................................................... p. 27

¶3. Preliminary Statement ........................................... p. 28

¶4. 2016 Avoided-Cost and 2019 Ruling ...................... p. 28-29

¶5. LEO and Requested Relief ..................................... p. 29

¶6. Consumer Protection and Support .......................... p. 29

¶7. Factual Background and State Court Dismissal ..... p. 29

¶8. Noncompliance with Oral Orders ........................... p. 29-30

¶9. Federal Enforcement and Remedies ...................... p. 30

¶10. Standing and Concrete Injuries ........................... p. 30-31

¶11. Efficient-Enforcer Factors .................................... p. 31

¶12. Pro Se Construction ............................................. p. 31

¶13. Response to Defendants' Authorities .................... p. 31-32

¶14. Filed-Rate Doctrine .............................................. p. 32-33

¶15. Rule 12(b)(1) Opposition ...................................... p. 33-34

¶16. Venue and Immunity ............................................. p. 34-35

¶17. Trinko Distinction .................................................. p. 35

¶18. Federal Enforcement and Standing ....................... p. 35

¶20. Timeliness and Preclusion ................................... p. 36

¶20B. Preclusion ........................................................ p. 37

¶21. Rule 12(b)(6) Opposition ...................................... p. 37-38

¶22. Federal Interconnection Obligations ..................... p. 38

¶23. Order 2222 Implementation .................................. p. 38

¶24. Order No. 2023 Transparency ............................... p. 38-39

¶25. PURPA Violations ................................................. p. 39

¶26. Legal Support for Interconnection ......................... p. 39-40

¶27. FERC Authority ..................................................... p. 40

¶28. Financing Impact ................................................... p. 40

¶29. Modern FERC Rules ............................................. p. 40-41

¶30. Financing and Tax Credits .................................... p. 41

¶31. Article III Standing ................................................ p. 42

¶32. Causation .................................................... p. 41

¶33. Bad Faith and Curtailment ................................... p. 41-42

¶34. Bad Faith, Control, and Curtailment Pretext .......... p. 42

¶35. Fraud/Concealment Materiality ............................ p. 42

¶36. Dostal's Standing ............................................... p. 43

¶37. RICO and Antitrust Claims .................................... p. 43-44

¶38. Order 872 and Transparency ................................ p. 44-45

¶39. Judicial Estoppel; Tolling ..................................... p. 45

¶39A. Equitable Tolling ............................................... p. 45

¶40. 2020 Dismissal and Medical Marijuana ................ p. 45-46

¶41. Rule 12(f) Opposition .......................................... p. 46-47

¶42. Assignment Validity and Standing ......................... p. 47-48

¶43. FERC Recognition and Judicial Guidance ............. p. 48

¶44. PPA Adjustment and Enforcement ....................... p. 48-49

¶45. Mootness Rebuttal ................................................ p. 49

¶46. PPA Terms Cannot Override PURPA .................... p. 49-50

¶47. Remedy ................................................................ p. 50

¶48 Removed.

¶49. Defendants' Delays ............................................... p. 49

¶50. Preservation and Discovery .................................. p. 51

¶51. Leave to Amend .................................................... p. 51

¶52. Relief Roadmap & Rule 65(c) ............................... p. 51-52

¶53. Injunction Specificity ............................................. p. 52

¶54. Damages Calculation ............................................ p. 52

¶55. Ongoing Violations ................................................ p. 52

¶56. No Abstention ....................................................... p. 52

¶57. Ripeness .............................................................. p. 52

¶58. Exhaustion .......................................................... p. 52

¶59. Primary Jurisdiction ............................................ p. 52

¶60. RICO Jurisdiction ................................................ p. 53

¶61. Antitrust Jurisdiction ........................................... p. 53

¶62. Conclusion ........................................................... p. 53

¶63. Rule 54(c) Relief .................................................. p. 53

¶64. WHEREFORE ....................................................... p. 53

¶65 n.1. Footnote 1 (Judicial Notice) ............................ p. 54

---

**Allco Renewable Energy Ltd. v. Massachusetts Elec. Co., 875 F.3d 64 (1st Cir. 2017)**

"If FERC declines to act, the QF may itself bring an enforcement action in the appropriate United States district court, which shall have jurisdiction to enforce compliance."

(Refuted in ¶¶ 13, 15, 18, 27).

**Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990)**

"Fraudulent concealment tolls the statute of limitations only until the plaintiff has, or by reasonable diligence should have, discovered the injury."

(Refuted in ¶ 20).

**CED Red Lake Falls Cmty. Hybrid, LLC v. Minn. PUC, 2020 WL 780055 (D. Minn. Feb. 18, 2020)**

"[T]he court concludes that the plaintiffs' PURPA claims amount to an as-applied challenge to rates set by the MPUC."

(Refuted in ¶ 15).

**Commissioner v. Sunnen, 333 U.S. 591 (1948)**

"Res judicata must be confined to situations where the controlling facts and applicable legal rules remain unchanged."

(Refuted in ¶ 20B).

**County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir. 1990)**

"Because the prior judgment was not on the merits, res judicata does not apply."

(Refuted in ¶¶ 9, 20B).

**Cullen v. Margiotta, 811 F.2d 698 (2d Cir. 1987)**

"A judgment obtained by fraud may be collaterally attacked."

(Refuted in ¶ 20B).

**East Ky. Power Coop., Inc. v. Ky. Pub. Serv. Comm'n, No. 3:22-cv-00063-GFVT, 2024 WL 3997810 (E.D. Ky. Aug. 29, 2024)**

"This Court lacks jurisdiction to resolve an as-applied PURPA rate dispute."

(Refuted in ¶ 15).

**FERC v. Mississippi, 456 U.S. 742 (1982)**

"Congress has authority under the Commerce Clause to require the States to follow FERC's rules in carrying out PURPA."

(Refuted in ¶¶ 14, 16, 26, 33, 47).

**Freehold Cogeneration Assocs., L.P. v. Bd. of Regulatory Comm'rs, 44 F.3d 1178 (3d Cir. 1995)**

"Federal courts have jurisdiction to enforce PURPA's requirements following a FERC declination."

(Refuted in ¶¶ 9, 13, 15).

**Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167 (2000)**

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."

(Refuted in ¶ 10, ¶31. ).

**Franchise Tax Bd. v. Alcan Aluminium Ltd., 493 U.S. 331 (1990)**

"To satisfy Article III, the plaintiff must show that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by the relief requested."

(Refuted in ¶ 10).

**Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)**

"Tampering with the administration of justice ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

(Refuted in ¶¶ 9, 20B, 8, 40).

**Holmberg v. Armbrecht, 327 U.S. 392 (1946)**

"This equitable doctrine is read into every federal statute of limitation."

(Refuted in ¶¶ 9, 20, 39A).

**Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n, 36 F.3d 848 (9th Cir. 1994)**

"Federal courts may review only PURPA implementation, not as-applied rate challenges."

(Refuted in ¶¶ 14, 18).

**Keogh v. Chicago & Nw. Ry. Co., 260 U.S. 156 (1922)**

"The rate ... duly filed is made, for all purposes, the legal rate."

(Refuted in ¶¶ 1, 9, 14).

**Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997)**

"We decline to hold that a civil RICO cause of action accrues upon the commission of a predicate act that is part of a pattern."

(Refuted in ¶¶ 20, 37).

**Lawlor v. Nat'l Screen Serv. Co., 349 U.S. 322 (1955)**

"Res judicata does not bar claims based on new acts of wrongdoing occurring after the first judgment."

(Refuted in ¶ 20B).

**Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589 (2020)**

"Claim preclusion does not bar claims predicated on events that postdate the filing of the initial complaint."

(Refuted in ¶ 20B).

**Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246 (1951)**

"The right to a reasonable rate is the right to the rate which the Commission files or fixes."

(Refuted in ¶¶ 1, 14).

**New Orleans Public Serv., Inc. v. Council of New Orleans (NOPSI), 491 U.S. 350 (1989)**

"Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."

(Refuted in ¶ 56).

**Rotella v. Wood, 528 U.S. 549 (2000)**

"Discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."

(Refuted in ¶¶ 20, 37, 39A).

**Southern California Edison Co. v. FERC, 195 F.3d 17 (D.C. Cir. 1999)**

"We are not persuaded that FERC may retroactively modify a filed rate."

(Refuted in ¶¶ 13, 15).

**Tyus v. Schoemehl, 93 F.3d 449 (8th Cir. 1996)**

"Under the continuing violation doctrine, the cause of action accrues … at the time of the last injury."

(Refuted in ¶¶ 20, 37).

**Wheelabrator Lisbon, Inc. v. Conn. Dep't of Pub. Util. Control, 531 F.3d 183 (2d Cir. 2008)**

"Federal courts retain jurisdiction to determine whether a State has implemented PURPA in a manner consistent with federal law."

(Refuted in ¶¶ 9, 18).

---

**Authorities (Cases, Statutes, Regs., FERC Orders, Other)**

**Allco Renewable Energy Ltd. v. Massachusetts Elec. Co., 875 F.3d 64 (1st Cir. 2017)**

"If FERC declines to act, the QF may itself bring an enforcement action in the appropriate United States district court, which shall have jurisdiction to enforce compliance."

(¶¶ 13, 15).

**American Needle, Inc. v. NFL, 560 U.S. 183 (2010)**

"The NFL teams do not possess … immunity from § 1 of the Sherman Act. They are separate economic actors capable of concerted action."

(¶ 37).

**American Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402 (1983)**

"Section 210 requires electric utilities to purchase electric energy from qualifying cogenerators."

(¶¶ 26, 27).

**Amalgamated Transit Union v. Superior Court, 46 Cal.4th 993 (2009)**

"Choses in action arising out of violations of property rights are assignable."

(¶ 42).

**Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)**

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the

plaintiff's injuries."

(¶¶ 32, 36, 37).

**Ashcroft v. Iqbal, 556 U.S. 662 (2009)**

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

(¶ 1).

**Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985)**

"The jury could reasonably find that ... the monopolist was willing to sacrifice short-run benefits and consumer goodwill in exchange for a perceived long-run impact on its smaller rival."

(¶ 17).

**Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983)**

"Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action."

(¶¶ 10, 11).

**Augustus v. Bd. of Pub. Instruction, 306 F.2d 862 (5th Cir. 1962)**

"Motions to strike ... are drastic remedies and are disfavored."

(¶¶ 35, 41).

**Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)**

"Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

(¶ 1).

**BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908 (8th Cir. 2007)**

"Striking a party's pleading ... is an extreme and disfavored measure."

(¶¶ 35, 41).

**Blue Shield of Va. v. McCready, 457 U.S. 465 (1982)**

"Respondent's injury 'flows from that which makes defendants' acts unlawful' ... and falls squarely within the area of congressional concern."

(¶ 37).

**Boyle v. United States, 556 U.S. 938 (2009)**

"An association-in-fact enterprise must have a purpose, relationships among associates, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

(¶ 37).

**Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)**

"A plaintiff asserting a RICO claim need not show that it relied on the defendant's alleged misrepresentations."

(¶ 37).

**Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977)**

"The antitrust laws ... were enacted for the protection of competition, not competitors."

(¶ 37).

**Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972)**

"First Amendment rights may not be used as the means or the pretext for achieving substantive evils which the legislature has the power to control."

(¶ 33).

**Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97 (1980)**

"A challenged restraint must be 'clearly articulated and affirmatively expressed as state policy' and ... 'actively supervised' by the State itself."

(¶ 16).

**Cantor v. Detroit Edison Co., 428 U.S. 579 (1976)**

"A regulated utility's practices may still be subject to antitrust liability where not compelled by the state."

(¶ 34).

**Castille v. Peoples, 489 U.S. 346 (1989)**

"A petition is not fairly presented if it is raised in a procedural context in which its merits will not be considered."

(¶ 20).

**Ciralsky v. CIA, 355 F.3d 661 (D.C. Cir. 2004)**

"Rule 8(a) requires only a short and plain statement of the claim."

(¶ 41).

**Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)**

"A parent and its wholly owned subsidiary are incapable of conspiring with each other for purposes of § 1 of the Sherman Act."

(¶ 37).

**Davis v. Hall, 992 F.2d 151 (8th Cir. 1993)**

"Dismissal of a pro se complaint for technical pleading deficiencies is disfavored."

(¶ 12).

**Duke Power Co. v. Carolina Env't Study Group, Inc., 438 U.S. 59 (1978)**

"Where a party has suffered sufficient injury to themselves, they are a proper party to seek judicial resolution of the controversy."

(¶ 10).

**Ellis v. Salt River Project Agric. Improvement & Power Dist., 24 F.4th 1262 (9th Cir. 2022)**

"Plaintiffs are not precluded from bringing systemic challenges to SRP's PURPA implementation."

(¶ 13).

**Erickson v. Pardus, 551 U.S. 89 (2007)**

"A document filed pro se is to be liberally construed."

(¶ 12).

**Exelon Wind 1, LLC v. Nelson, 766 F.3d 380 (5th Cir. 2014)**

"PURPA imposes a mandatory obligation on electric utilities to purchase power from qualifying facilities."

(¶¶ 26, 44, 46).

**Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)**

"Rooker-Feldman does not bar actions simply because a party attempts to litigate in federal court a matter previously litigated in state court."

(¶¶ 9, 20B).

**Fashion Originators' Guild v. FTC, 312 U.S. 457 (1941)**

"A combination … for the purpose and with the effect of controlling interstate commerce … is illegal per se."

(¶ 37).

**Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 F.3d 790 (8th Cir. 2006)**

"Motions to strike under Rule 12(f) are disfavored and will usually be denied unless the allegations have no possible relation to the controversy."

(¶ 41).

**Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989)**

"The Eleventh Amendment immunity analysis requires consideration of three factors."

(¶ 16).

**Foman v. Davis, 371 U.S. 178 (1962)**

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires.'"

(¶ 51).

**Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351 (2021)**

"Specific jurisdiction exists where the claims arise out of or relate to the defendant's forum contacts."

(¶ 16).

**FTC v. Phoebe Putney Health Sys., Inc., 568 U.S. 216 (2013)**

"State-action immunity does not extend to anticompetitive conduct not actively supervised by the State."

(¶ 16).

**Greensboro Lumber Co. v. Ga. Power Co., 643 F. Supp. 1345 (N.D. Ga. 1986)**

"Federal courts have jurisdiction to enforce PURPA implementation."

(¶ 15).

**Haines v. Kerner, 404 U.S. 519 (1972)**

"We hold pro se complaints to less stringent standards than formal pleadings drafted by lawyers."

(¶ 12).

**H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989)**

"Congress intended a pattern of racketeering activity to be shown by a series of related predicates extending over a substantial period of time."

(¶ 37).

**Johnson v. City of Shelby, 574 U.S. 10 (2014) (per curiam)**

"Federal pleading rules do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."

(¶ 41).

**Joshi v. St. Joseph Mercy Hosp., 441 F.3d 552 (6th Cir. 2006)**

"RICO mail and wire fraud must be pleaded with particularity."

(¶ 37).

**Klor's v. Broadway-Hale, 359 U.S. 207 (1959)**

"Group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be in the forbidden category."

(¶ 37).

**Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)**

"The proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct."

(¶¶ 32, 36).

**Lone Star Indus., Inc. v. Redwine, 757 F.2d 708 (8th Cir. 1985)**

"An assignee stands in the shoes of the assignor and may enforce the assigned right in its own name."

(¶ 42).

**Loper Bright Enters. v. Raimondo, 603 U.S. 160 (2024)**

"Courts must exercise their independent judgment in determining the meaning of statutory provisions."

(¶ 27).

**Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589 (2020)**

"Claim preclusion does not bar claims predicated on events that postdate the filing of the initial complaint."

(¶ 20B).

**Market Street Assocs. v. Frey, 941 F.2d 588 (7th Cir. 1991)**

"Good faith is a compact reference to an implied undertaking … not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting."

(¶ 34).

**McCarty v. First of Ga. Ins. Co., 713 F.2d 609 (10th Cir. 1983)**

"Res judicata does not apply to judgments obtained by fraud."

(¶ 20B).

**Medical Marijuana, Inc. v. Horn, No. 23-365 (U.S. Apr. 2, 2025)**

"We have repeatedly admonished lower courts not to extend abstention doctrines beyond their narrow scope."

(¶ 40).

**Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752 (1984)**

"The antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove … a conscious commitment to a common scheme."

(¶ 37).

**New Hampshire v. Maine, 532 U.S. 742 (2001)**

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

(¶ 39).

**NYNEX Corp. v. Discon, Inc., 525 U.S. 128 (1998)**

"The per se rule of illegality applies to certain group boycotts, but not all concerted refusals to deal."

(¶ 37).

**Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284 (1985)**

"Group boycotts … are not per se unlawful unless they cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete."

(¶ 37).

**Oneok, Inc. v. Learjet, Inc., 575 U.S. 373 (2015)**

"When state antitrust laws are aimed at practices affecting retail rates, they are not preempted by the filed-rate doctrine."

(¶ 14).

**Otter Tail Power Co. v. United States, 410 U.S. 366 (1973)**

"The refusal to deal was solely to perpetuate its monopoly ..."

(¶¶ 17, 22, 26, 33, 34, 37, 53).

**Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993)**

"A lawsuit is unprotected only if it is objectively baseless and the litigant's subjective motivation was to interfere directly with the business of a competitor."

(¶ 16).

**Reiter v. Cooper, 507 U.S. 258 (1993)**

"The filed-rate doctrine does not bar a plaintiff from challenging a rate as unreasonable in a reparations action before the Commission."

(¶ 15).

**Reiter v. Sonotone Corp., 442 U.S. 330 (1979)**

"A consumer who has paid a higher price for goods purchased for personal use as a result of antitrust violations has suffered injury to his property."

(¶ 10, ¶31 ).

**Reves v. Ernst & Young, 507 U.S. 170 (1993)**

"To conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs ... requires some part in directing those affairs."

(¶ 37).

**Rotella v. Wood, 528 U.S. 549 (2000)**

"Discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."

(¶¶ 20, 37, 39A).

**Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)**

"RICO is to be read broadly … to provide new remedies to deter and punish racketeering activity."

(¶ 37).

**Sea Island Co. v. IRI Group, LLC, 2007 WL 2997660 (W.D.N.C. Oct. 11, 2007)**

"A corporation may appear in the federal courts only through licensed counsel; an assignee may not circumvent this rule by proceeding pro se."

(¶ 42).

**SolarCity v. Salt River Project Agric. Improvement & Power Dist., No. CV-15-00374, 2015 WL 6503439 (D. Ariz. Oct. 27, 2015)**

"Plaintiff sufficiently alleged monopolization claims against SRP arising from discriminatory rates and practices."

(¶ 13).

**Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013)**

"Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."

(¶ 15).

**Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269 (2008)**

"An assignee stands in the shoes of the assignor and may pursue claims in its own right."

(¶ 42).

**Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409 (1986)**

"We decline to overrule Keogh."

(¶ 14).

**Stanbury Law Firm v. IRS, 221 F.3d 1059 (8th Cir. 2000)**

"Motions to strike are not favored and are infrequently granted."

(¶¶ 35, 41).

**Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)**

"The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power."

(¶ 15).

**Stone v. Harry, 364 F.3d 912 (8th Cir. 2004)**

"Though pro se complaints are to be construed liberally, they must allege sufficient facts to support the claims advanced."

(¶ 12).

**Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."

(¶ 41).

**Textor v. Bd. of Regents, 711 F.2d 1387 (7th Cir. 1983)**

"The right of access to the courts is one aspect of the right of petition."

(¶ 16).

**Toys "R" Us, Inc. v. FTC, 221 F.3d 928 (7th Cir. 2000)**

"A dominant retailer's effort to orchestrate a horizontal boycott among suppliers can constitute unlawful concerted action."

(¶ 37).

**Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004)**

"The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system."

(¶ 17).

**Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., 549 U.S. 312 (2007)**

"Predatory bidding claims are to be analyzed under the same framework applied to predatory pricing claims."

(¶ 37).

**Windham Solar LLC v. Fairfax Elec. Coop., 78 FERC ¶ 61,293 (1997)**

"A utility may not refuse to interconnect a QF based on the absence of a power purchase agreement."

(¶¶ 25, 44, 46).

**Winter v. NRDC, 555 U.S. 7 (2008)**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm ..."

(¶¶ 15, 45, 52).

**Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969)**

"Antitrust damages must be shown to be attributable to the violation."

(¶ 16).

---

**Statutes**

- **15 U.S.C. § 15**

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages."

(¶¶ 1, 61).

**15 U.S.C. § 26**

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws."

(¶ 16).

**16 U.S.C. § 824a-3(h)(2)(B)**

"If the Commission does not initiate an enforcement action … the qualifying facility may bring an action against such electric utility in the appropriate United States district court."

(¶¶ 1, 9, 15, 20).

**18 U.S.C. § 1964(c)**

"Any person injured in his business or property by reason of a violation of section 1962 … shall recover threefold the damages he sustains."

(¶¶ 1, 15, 61).

**18 U.S.C. § 1965(b), (d)**

(b) "In any action under section 1964 … in any district in which a defendant resides, is found, has an agent, or transacts his affairs."

(d) "All other process … may be served on any person in any judicial district."

(¶ 16).

**28 U.S.C. § 1331**

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

(¶ 1).

**28 U.S.C. § 1337(a)**

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce … including antitrust laws."

(¶ 1).

**28 U.S.C. § 1367(a)**

"The district courts shall have supplemental jurisdiction over all other claims that are so related … that they form part of the same case or controversy."

(¶ 1).

**28 U.S.C. § 1391(b)**

"A civil action may be brought in … (2) a judicial district in which a substantial part of the events … giving rise to the claim occurred."

(¶¶ 1, 16).

**28 U.S.C. § 1391(c)(2)**

"An entity … shall be deemed to reside … in any judicial district in which such defendant is subject to the court's personal jurisdiction."

(¶ 16).

**7 U.S.C. §§ 291–92 (Capper-Volstead Act)**

"Persons engaged in the production of agricultural products … may act together in associations … for the purpose of collectively processing, preparing for market, handling, and marketing …"

(¶ 16).

**Fed. R. Civ. P. 8(d)(2)–(3)**

"A party may set out two or more statements of a claim or defense alternatively … A party may state as many separate claims or defenses as it has, regardless of consistency."

(¶¶ 21, 39).

**Fed. R. Civ. P. 26(d)(1)**

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by court order."

(¶ 50).

**Fed. R. Civ. P. 37(e)**

"If electronically stored information … is lost because a party failed to take reasonable steps to preserve it … the court … may order measures no greater than necessary to cure the prejudice."

(¶ 50).

**Fed. R. Evid. 201(b)(2)**

"The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

(¶ 65 & n.1).

---

**Regulations**

**18 C.F.R. § 35.28**

"Each public utility … shall have on file with the Commission … an open-access transmission tariff containing terms and conditions of service."

(¶ 22).

**18 C.F.R. § 292.303**

"Each electric utility shall purchase … any energy and capacity which is made available from a qualifying facility."

(¶ 27).

**18 C.F.R. § 292.304**

"Rates for purchases shall … be just and reasonable to the electric consumers of the electric utility and in the public interest … and shall not discriminate against qualifying facilities."

(¶¶ 6, 25, 46).

**18 C.F.R. § 292.306**

"Each electric utility shall interconnect with any qualifying facility … on request."

(¶ 27).

---

**FERC Orders / Decisions**

**FERC Order No. 69, 45 Fed. Reg. 12,214 (1980)**

"The Commission's regulations provide QFs with a legally enforceable right to

require utilities to purchase power ..."

(¶¶ 44, 46).

**FERC Order No. 888, 61 Fed. Reg. 21,540 (1996)**

"All public utilities that own, control, or operate transmission facilities ... must file open access non-discriminatory transmission tariffs."

(¶ 22).

**FERC Order No. 2003, 104 FERC ¶ 61,103 (2003)**

"All public utilities that own, control, or operate transmission facilities must offer non-discriminatory interconnection service."

(¶ 26).

**FERC Order No. 2006, 111 FERC ¶ 61,220 (2005)**

"Small generator interconnection procedures are designed to provide non-discriminatory, standardized processes."

(¶ 26).

**FERC Order No. 845, 163 FERC ¶ 61,043 (2018)**

"Transmission providers must improve transparency and efficiency in the generator interconnection process."

(¶¶ 23, 24, 29).

**FERC Order No. 872, 173 FERC ¶ 61,158 (2020)**

"A legally enforceable obligation must be based on the QF's unilateral commitment, not conditioned on the utility's consent."

(¶¶ 29, 38, 44).

**FERC Order No. 872-A, 173 FERC ¶ 61,158 (2021)**

"A utility may not impose additional preconditions on the formation of a legally enforceable obligation; undue barriers are inconsistent with PURPA."

(¶ 27).

**FERC Order No. 2023, 184 FERC ¶ 61,054 (2023)**

"Order No. 2023 reforms generator interconnection procedures … and imposes firm deadlines with penalties."

(¶¶ 24, 29, 52, 53).

**FERC Order No. 2222, 172 FERC ¶ 61,247 (2020)**

"Distributed energy resources are permitted to participate in wholesale markets through aggregators."

(¶ 23).

**FLS Energy, Inc., 157 FERC ¶ 61,211 (2016)**

"A utility may not condition interconnection on the execution of a power purchase agreement."

(¶¶ 25, 27, 44).

**Windham Solar LLC v. Fairfax Elec. Coop., 78 FERC ¶ 61,293 (1997)**

"A utility may not refuse to interconnect a QF based on the absence of a power purchase agreement."

(¶¶ 25, 44, 46).

---

**South Dakota Public Utility Commision**

**Oak Tree Energy LLC v. NorthWestern Energy, PUC Docket No. EL11-006 (S.D. PUC Jan. 2013)**

"The Commission concluded … NWE is obligated to purchase Oak Tree's output because a legally enforceable obligation was created."

(¶¶ 9, 26).

---

**Other Authorities**

**Restatement (Second) of Contracts § 356 (1981)**

"A term fixing unreasonably large liquidated damages is unenforceable on

grounds of public policy as a penalty."

(¶ 47).

**Restatement (Second) of Torts § 870 (1979)**

"One who intentionally causes injury to another is subject to liability if his conduct is generally culpable and not justifiable under the circumstances."

(¶ 34).

**Wright & Miller, Federal Practice & Procedure § 1382 (3d ed.)**

"Motions to strike are disfavored … and will usually be denied unless the allegations have no possible relation to the controversy."

(¶¶ 35, 41).

**Transcript of Telephonic Conference, Prelude LLC v. Basin Electric Power Coop., Case No. 24-CV-991 (E.D. Wis. Oct. 1, 2024)**

– Mr. Mattson: *"I basically … sold the wind farms to myself … and also put the claim into my name … no change except Prelude no longer part of the case."*

– Mr. Ortiz: *"It's a material impact on the complaint, including this whole issue about the assignment."*

– The Court: *"You could allege that you've received an assignment of Prelude's rights … and are bringing your case on that basis."*

(¶¶ 10, 30, 31, 36, 42).

**Transcript of Summary Judgment Hearing, Apr. 10, 2020, Mattson & Dostal v. Basin Elec. Power Coop., No. 20CIV-00123 (S.D. Cir. Ct.)**

– The Court: *"This Court does not have jurisdiction to decide those PURPA issues. That is for FERC."* (p. 39:1–41:15)

– The Court: *"There is no evidentiary or legal support for entitlement under PURPA to rates other than Basin's avoided cost rate."* (p. 41:3–5)

– The Court: *"Other defendants … are non-regulated entities under PURPA with the authority to determine their own avoided cost rates."* (p. 41:11–16)

– The Court: *"Plaintiffs have been provided this information … by letter from counsel for Defendants to counsel for Prelude."* (p. 41:19–22)

(¶¶ 7, 8, 13, 39, 40).

**Transcript of Summary Judgment Hearing, Apr. 10, 2020, pp. 19:15–21:15**

– The Court: *"The fact that they never really asked for it … undercuts the claim that Basin Electric … was not dealing with Plaintiffs in good faith."*

– Mr. Miner: *"Those issues are really for FERC, not for this Court."*

(¶¶ 7, 8, 13).

**Transcript of Summary Judgment Hearing, Apr. 10, 2020, pp. 39:1–41:15**

– The Court: *"This Court does not have jurisdiction to decide those PURPA issues. That is for FERC."*

(¶¶ 7, 13, 39).

---

THOMAS MATTSON and EDWARD J. DOSTAL,

Plaintiffs, Case No. 3:25-cv-03008-RAL

**v.**

BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE,

Defendants.

---

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE, AND MOTION FOR DE NOVO REVIEW OF 2020 STATE COURT ORDER

---

1 **Jurisdiction & Standards**: Federal-question jurisdiction lies under 28 U.S.C. § 1331 (PURPA, RICO) and § 1337(a) (Sherman/Clayton Acts); supplemental jurisdiction exists for any related state-law issues, 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b) (and for the antitrust claims, 15 U.S.C. § 22), and personal jurisdiction over Defendants is satisfied by their continuous operations and the in-forum injuries alleged. On Rule 12(b)(1), the Court accepts well-pleaded facts and draws reasonable inferences in Plaintiffs' favor where jurisdiction turns on intertwined merits. On Rule 12(b)(6), Plaintiffs need only plead plausible claims with enough factual matter to nudge liability "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Jurisdiction is further established under 16 U.S.C. § 824a-3(h)(2)(B) following FERC's declination (187 FERC 61,008) and 2025 findings (190 FERC 61,170, Mar. 20, 2025), supporting de novo review. The filed-rate doctrine is inapplicable to unfiled, nonregulated rates (Public Util. Dist. No. 1 of Grays Harbor Cnty. v. IDACORP Inc., 379 F.3d 641, 648 (9th Cir. 2004)), and Defendants' dismissal arguments, rejected by FERC in 190 FERC 61,170, are foreclosed by ongoing violations and fraudulent concealment. See Complaint pp. 5-10 for detailed jurisdictional arguments. Defendants misstate PURPA's remedial limits. While § 210(h)(2)(B) authorizes injunctive enforcement, Plaintiffs' damages claims arise independently under RICO, the Sherman Act, and fraud. Courts have long recognized that PURPA-based violations can form the predicate unlawful conduct supporting damages under other statutes. See Freehold Cogeneration Assocs. v. Bd. of Regulatory Comm'rs, 44 F.3d 1178, 1185 (3d Cir. 1995)

¶2 **General Denial**: Plaintiffs hereby generally deny all arguments, defenses, and contentions raised by Defendants in their motions to dismiss and strike, asserting that said motions lack merit and fail to undermine the validity of Plaintiffs' claims.

¶3 **Preliminary Statement**: For over fifteen years, Defendants—utility cooperatives—have repeatedly obstructed Plaintiffs, Qualifying Facility (QF)

renewable-energy developers, by denying PURPA-mandated rights (16 U.S.C. § 824a-3). The pattern is consistent: perjury and concealment; refusal to provide interconnection application packages (Joint Affidavit 13; Exs. S, T, HH); misrepresented avoided-cost rates; and rejection of PPAs—destroying twenty-three QF projects and stalling twelve more, all in South Dakota. (Exhibit GG) The resulting denied interconnections/PPAs, increased financing costs, and lost tax-credit monetization caused direct economic harm exceeding $3.34 billion (Ex. MM). Based upon the 2025 'One Big Beautiful Bill' Act ( Statute at Large 139 Stat. 72 - Public Law No. 119-21) damages have a certainty of accruing, the act eliminates the Section 45Y Clean Electricity PTC and Section 48E Investment Tax Credit (ITC) for wind and solar facilities placed in service after December 31, 2027—unless construction begins within one year of enactment (by July 4, 2026) and is completed by the end of 2029/2030. Damages continue to accrue. Receiving financing, ordering the wind turbines, and beginning construction with the required time is doubtful.

¶4 **2016 Avoided-Cost and 2019 Ruling**: On April 8, 2016, Defendants' letter disclosed a 4.29¢/kWh Basin Electric cost avoided-cost rate (Ex. K)—an admission in the transcript (Ex. N, p. 41, ll. 19–22)—while Rosebud, Grand, and Moreau-Grand's avoided-costs exceeded 5¢/kWh, prompting Plaintiffs' 5¢/kWh PPAs. Plaintiffs tendered nineteen financeable PPAs (Exs. L), rejected by Defendants (Ex. M). On the 2019 summary-judgment record, the court found defendants' avoided cost rate equals Basin's as non-regulated PURPA entities. The 2019 ruling determined Rosebud and Grand's was Basin's 4.29¢/kWh avoided rate. (Ex. N, p. 41, ll. 3–5, 11–16), requiring PPA execution, not jurisdictional delays. Had they executed at 5¢/kWh or 4.29¢/kWh, the remaining nineteen QF projects would have advanced to financing and interconnection within federal credit windows; 2020 there were 19 active Qf's, delays lapsed eight QF site-control, terminating eight QFs (Ex. GG, MM) leaving the stalled 12 QF's.

¶5 **LEO and Requested Relief**: Plaintiffs accept the 2019 4.29¢/kWh as the Legally

enforceable obligation LEO electric rate, plus inflation over 20 years, with today's capacity payment. Reserving the right to a higher current rate under LEO 18 C.F.R. § 292.304(d)(2)(i)–(ii), and seek court-ordered execution. A QF has the option to sell pursuant to a contract or at the utility's avoided cost rate, as affirmed in Winding Creek Solar LLC v. Peterman, 932 F.3d 861, 865 (9th Cir. 2019). Plaintiffs Mattson and Dostal seek an injunction, treble damages under RICO and Sherman/Clayton Acts for ongoing violations. (See 3 (standing) and 10 (timeliness/continuing violations) and Complaint pp. 13-18 also contains this argument).

¶6 **Consumer Protection and Support**: The Commerce Clause supports federal oversight (16 U.S.C. § 824a-3(h)(2)(B); Joint Affidavit 24; Ex. Z). The 4.29¢/kWh vs. sub-2¢/kWh disparity violates 18 C.F.R. § 292.304 (Joint Affidavit ¶¶ 8, 16; Ex. N; SDPUC Docket EL14-042). This oversight is also consistent with 16 U.S.C. § 824a-3(h)(2)(B) (see Ex. Z).

¶7 **Factual Background and State Court Dismissal**: On April 10, 2020, the South Dakota Circuit Court granted Defendants summary judgment in Mattson & Dostal v. Basin Elec. Power Coop., No. 20CIV-00123, while expressly disclaiming federal PURPA-implementation jurisdiction under 16 U.S.C. § 824a-3(h), stating, "This Court does not have jurisdiction to decide those PURPA issues. That is for FERC" (Transcript, Apr. 10, 2020, p. 39:1–41:15). Earlier, the court had confined itself to state-law matters, noting it "only has jurisdiction to determine whether there was an incorrect calculation of avoided cost rate" and lacks authority over federal data claims (Transcript, Dec. 30, 2019, p. 20:19–25 [1]). The summary-judgment record was further tainted by defendants' perjury regarding avoided-cost data, addressed as part of a state law bad faith claim (Ex. N, p. 41:3–16; Joint Affidavit ¶ 11).

¶8 **Noncompliance with Oral Orders**: The 2020 state court written order omitted critical terms from the April 10, 2020, transcript (Ex. N, pp. 21–22), including the court's directive of not having federal jurisdiction p. 20:19–25, yet the written order dismissed

those claims, and did not address PURPA data disclosure (p. 45). Based upon belief the order was written by Defendants. The court stated: “The defendants, through Mr. Luce or whoever they designate, will submit to the Court an order consistent with this decision.” (Exhibit N, Hearing Transcript, p. 45, lines 19–2). This omission, coupled with perjury on avoided-cost rates (Ex. N, p. 41:3–16, D), justifies federal intervention.

¶9 **Federal Enforcement and Remedies**: FERC’s 2024 declination (187 FERC 61,008) and its 2025 order finding Basin’s interconnection procedures non-compliant (190 FERC 61,170) trigger de novo federal enforcement under 16 U.S.C. § 824a-3(h)(2)(B). Because the state court disclaimed federal jurisdiction and new, post-judgment violations continue through 2025 (Ex. HH), preclusion and abstention do not apply (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245–46 (1944); Lawlor v. Nat’l Screen Serv. Co., 349 U.S. 322, 327–28 (1955)). Nor do plaintiffs seek appellate review of the state judgment; Rooker–Feldman is not implicated (Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Plaintiffs’ claims, including current RICO and antitrust claims, are timely based on ongoing violations (2020–2025) and fraudulent concealment (Rotella v. Wood, 528 U.S. 549, 555–56 (2000)). Plaintiffs seek prospective PURPA compliance (interconnection, avoided-cost transparency, nondiscrimination, LEO) and independent, non-rate remedies, including injunctive relief compelling application processing and data disclosure (Freehold Cogeneration Assocs., L.P. v. Bd. of Regulatory Comm’rs, 44 F.3d 1178, 1184 (3d Cir. 1995); Cullen v. Margiotta, 811 F.2d 698, 732 (2d Cir. 1987)). Oak Tree Energy LLC v. NorthWestern Energy, SDPUC Docket EL11-006 (Feb. 21, 2013), supports correcting such errors, reinforcing the fraud claim and de novo review under § 210(h)(2)(B).

¶10 **Standing and Concrete Injuries**: Plaintiffs, as owners/developers, have Article III standing (Joint Affidavit ¶¶ 2–3, 5–6, 9–10, 14–15, 18, 24, 28, 31–33; Exs. D, GG, MM), with losses in Ex. MM (capacity × output × (benchmark − rate) × term + financing/tax impacts). PURPA relief is equitable implementation; RICO/antitrust seek damages,

avoiding re-rating. Ongoing refusals (2010–2025) cause imminent harm, redressable by injunction (Friends of the Earth v. Laidlaw, 528 U.S. 167, 185 (2000)). As direct targets with non-speculative damages, Plaintiffs are efficient enforcers (Associated Gen. Contractors, 459 U.S. 519, 540–45 (1983)), with actionable economic injuries (Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979); Franchise Tax Bd. v. Alcan, 493 U.S. 331, 336 (1990); Duke Power Co. v. Carolina Env't, 438 U.S. 59, 72 (1978)).

¶11 **Efficient-Enforcer Factors**: Plaintiffs are efficient enforcers under Associated Gen. Contractors, 459 U.S. at 540–45: (1) directness—Defendants' refusals to interconnect and purchase directly destroyed Plaintiffs' projects; (2) non-speculative damages—losses are measurable using capacity, net capacity factors, avoided-cost benchmarks, and PTC monetization windows ("Loss Calculation" tab in Ex. MM); (3) avoidance of duplicate recovery—no risk of double counting because harms fall on project owners/developers, not consumers; and (4) administrability—courts routinely value power-project cash flows under long-term PPAs.

¶12 **Pro Se Construction**: Courts must liberally construe pro se pleadings (Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007)). The Eighth Circuit disfavors dismissals based on technical defects (Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004); Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993)). Plaintiffs' standing is supported by economic losses, as recognized in Medical Marijuana, Inc. v. Horn, No. 23-365 (U.S. Apr. 2, 2025). This leniency applies to all pleadings, including the Complaint and this memorandum (Erickson v. Pardus, 551 U.S. at 94).

¶13 **Response to Defendants' Authorities**: Freehold Cogeneration Assocs., L.P. v. Bd. of Regulatory Comm'rs, 44 F.3d 1178, 1184 (3d Cir. 1995)'may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with the requirements' set forth in PURPA." and Allco Renewable Energy Ltd. v. Massachusetts Elec. Co., 875 F.3d 64, 70 (1st Cir. 2017), affirm PURPA federal enforcement post-FERC declination. Defendants' reliance

on Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n, 36 F.3d 848, 856–57 (9th Cir. 1994), for state jurisdiction fails, as Plaintiffs challenge nonregulated conduct (Exs. D, HH), aligning with federal oversight. Plaintiffs challenge nonregulated conduct—refusals to provide data (2010–2016), discriminatory sub-2¢/kWh offers versus a 4.29¢/kWh benchmark (Ex. N, p. 41:19–22), PPA rejections, and interconnection denials, (Ex,M, S,T) in violation of 18 C.F.R. §§ 292.303–.304—akin to SolarCity v. Salt River Project Agric. Improvement & Power Dist., 2015 WL 6503439, at *7–10 (D. Ariz. Oct. 27, 2015), for non-rate exclusionary conduct. Defendants admit nonregulation (Joint Affidavit 7; Ex. J,) and the SDPUC dismissed jurisdiction in EL14-042, circuit court confirming the federal forum See Ex. N: Transcript (¶¶ 13, 42). Southern California Edison Co. v. FERC, 195 F.3d 17, 23 (D.C. Cir. 1999), is inapposite; Plaintiffs allege systemic violations (2010–2025) and proceed post-declination (187 FERC 61,008; Ellis v. Salt River Project Agric. Improvement & Power Dist., 24 F.4th 1262, 1269 (9th Cir. 2022)). FERC v. Mississippi, 456 U.S. 742, 750 (1982), confirms PURPA's purpose; Loper Bright Enters. v. Raimondo, 144 S. Ct. 2244, 2262–64 (2024), curtails Chevron deference, requiring a fresh look at PURPA's text and intent rather than deferring to agency interpretations, which supports independent judicial review of Defendants' compliance. Discrimination (e.g., SDWP—South Dakota Wind Partners (QF wind farm see Ex. F,)—at 4.3¢/kWh versus sub-2¢/kWh to Plaintiffs see Ex. G, H,) shows systemic violations. 18 C.F.R. § 292.303(a) mandates that utilities must purchase electric energy from QFs, and § 292.303(c) requires that such purchases be on a non-discriminatory basis, 18 C.F.R. § 292.304(b)(2), ...and must not "discriminate against qualifying cogenerators or qualifying small power producers."

¶14 **Filed-Rate Doctrine**: The filed-rate doctrine applies only to rates filed with and approved by FERC or a state commission—absent here. Plaintiffs seek PURPA implementation under § 210(h)(2)(B) post-FERC declination see Ex. A; relief (injunctions; damages for non-rate conduct) avoids "re-rating" (Square D Co. v. Niagara

Frontier Tariff Bureau, Inc., 476 U.S. 409, 422–24 (1986); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1307–08 (2d Cir. 1990)). Reading it to bar § 210(h) enforcement would nullify Congress's de novo pathway. Plaintiffs seek forward-looking compliance and non-rate remedies, not avoided-cost re-rating. No tariff was approved by a regulatory body, filed, barring its application to injunctions or damages. See Ex. J: SDPUC dismissal for lack of jurisdiction. Antitrust claims on non-rate conduct are unpreempted (Oneok, Inc. v. Learjet, Inc., 575 U.S. 373, 386–87 (2015)). Plaintiffs challenge unfiled quotes, interconnection refusals, and nondisclosure under PURPA § 210 and 18 C.F.R. pt. 292, not SDPUC or FERC-filed tariffs. Defendants backdated SDPUC filings from 4.3¢ to below 2¢/kWh (see Ex. O). None of the filed rates at the SDPUC were approved by SDPUC.

¶15 **Rule 12(b)(1) Opposition**: 16 U.S.C. § 824a-3(h)(2)(B) establishes a federal path: FERC complaint → declinations (187 FERC 61,008; 190 FERC 61,170) → de novo review, unconditioned by state proceedings, per the 2020 circuit court's PURPA declination (No. 20CIV-00123, Ex. N). Plaintiffs seek injunctions for interconnection, data disclosure, and nondiscrimination (18 C.F.R. §§ 292.303(c), 292.306, 292.302(b)), not rate-setting, fitting "implementation/enforcement" (Freehold Cogeneration Assocs., L.P. v. Bd. of Regulatory Comm'rs, 44 F.3d 1184 (3d Cir. 1995); Allco Renewable Energy Ltd. v. Massachusetts Elec. Co., 875 F.3d 64, 70 (1st Cir. 2017); Greensboro Lumber Co. v. Ga. Power Co., 643 F. Supp. 1345, 1374 (N.D. Ga. 1986)). The case is not moot; Defendants' refusals to provide interconnection packages and avoided-cost data for 2010-2015 and today's LEO rate continue into 2025 (Exs. D,S,T, ), excluding Plaintiffs from the transmission grid and causing $3.34 billion in stranded projects (Ex. MM). Effective prospective relief under § 210(h)(2)(B)—e.g., orders compelling disclosure, application processing, and study timelines—demonstrates a live controversy (Friends of the Earth v. Laidlaw, 528 U.S. 167, 189–94 (2000) (voluntary cessation does not moot a case); Winter v. NRDC, 555 U.S. 7, 20 (2008) (irreparable harm)). Utility-caused

interconnection delays warrant intervention (see Ex Oak Tree); S. Cal. Edison Co. v. FERC, 195 F.3d 17, 23 (D.C. Cir. 1999)). Accordingly, Defendants' mootness/stay arguments (Basin Mot., Dkt. 16) should be denied. Abstention is improper: NOPSI v. Council of City of New Orleans, 491 U.S. 350, 372 (1989); Burford fails, Younger is limited (Sprint v. Jacobs, 571 U.S. 69, 78–79 (2013)), and Colorado River disfavors a stay. Ripeness is satisfied, as Defendants' refusals are final and injurious, blocking transmission access, financing, and PTCs (JD Wind 1, LLC v. FERC, 823 F.3d 145, 151 (D.C. Cir. 2016)). Primary jurisdiction is unwarranted, as legal issues and Congress's federal forum preclude delay (Reiter v. Cooper, 507 U.S. 258, 268–69 (1993)). Exhaustion is met by FERC declinations. The 2020 dismissal lacked jurisdiction (Ex. N); East Ky. Power Coop., 2024 WL 3997810, at *3, and CED Red Lake Falls, 2020 WL 780055, at *3, support enforcement. RICO (18 U.S.C. § 1964(c)) and Sherman Act (§§ 1–2) add jurisdiction (Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998)). See Complaint pp. 10–11, 19–26, 38–39.

¶16 **Venue and Immunity**: Venue is proper under 28 U.S.C. § 1391(b), § 1391(c)(2), and 15 U.S.C. § 22, 18 U.S.C. §§ 1965(b), (d), supporting 15 U.S.C. § 26 injunctive relief (Zenith Radio Corp. v. Hazeltine, 395 U.S. 100, 130 (1969)). RICO venue holds under § 1965(b)'s "ends of justice" for nationwide service. Specific jurisdiction applies (Textor v. Bd. of Regents, 711 F.2d 1387, 1392–93 (7th Cir. 1983)); § 1404(a) transfer disserves justice (Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 362–64 (2021)). State-action immunity fails without supervision or state/federal rate approval (Cal. Retail Liquor Dealers v. Midcal, 445 U.S. 97, 105 (1980); FTC v. Phoebe Putney, 568 U.S. 216, 225 (2013)), preempted by PURPA (FERC v. Mississippi, 456 U.S. at 750). No Eleventh-Amendment/tribal immunity applies (Fitchik v. N.J. Transit, 873 F.2d 655, 659 (3d Cir. 1989)); Noerr-Pennington (Prof'l Real Estate Investors, 508 U.S. at 60–61) and Capper-Volstead (7 U.S.C. §§ 291–92) do not shield private conduct. See Complaint pp. 5-10.

¶17 **Trinko Distinction**: Defendants' reliance on Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004), fails. Trinko limits antitrust duties to deal absent an independent legal obligation. Here, PURPA and its implementing regulations, 18 C.F.R. §§ 292.303–.306, impose an affirmative duty to interconnect and purchase from QFs, which Defendants violated. That statutory duty, together with Defendants' monopoly control over distribution interconnection and must-purchase access, takes this case outside Trinko. See Otter Tail Power Co. v. United States, 410 U.S. 366, 377–78 (1973) (utility's refusal to interconnect or sign a ppa violates Sherman Act § 2 (15 U.S.C. § 2). While the Supreme Court has not recognized a freestanding "essential facilities" doctrine post-Trinko, Defendants' refusal to provide indispensable interconnection services remains actionable where a separate legal duty to provide access exists (PURPA) and the conduct is exclusionary under § 2. Aspen Skiing Backstop. Even apart from PURPA's independent duty to deal, Aspen Skiing confirms § 2 liability where a monopolist sacrifices short-term profits to exclude rivals—e.g., withholding standard interconnection forms or transmission access provided to affiliates. 472 U.S. 585, 610–11 (1985). Rosebud, Grand and Moreau Grand wholesale class rate is over six cents. A 6.5% inflation increase. See Ex. A3. Previous rate increases have caused hardship, see Ex. V.

¶18 **Federal Enforcement and Standing**: Federal courts enforce PURPA against nonregulated utilities post-FERC declination, as affirmed by Freehold Cogeneration Assocs., L.P. v. Bd. of Regulatory Comm'rs, 44 F.3d 1184 (3d Cir. 1995), and Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n, 36 F.3d 848, 856 (9th Cir. 1994), triggered by FERC's 2024 declination in 187 FERC 61,008 (Ex. A, KK). This authority is grounded in 16 U.S.C. § 824a-3(h)(2)(B), which provides that "the petitioner may bring an action in the appropriate United States district court" to enforce PURPA requirements if FERC does not act. Defendants' refusals to provide data (Ex D) and interconnections (2023–2025) (Joint Affidavit ¶¶ 3, 5–6, 8–10, 14–15, 18, 24, 28, 31–33;

Exs. D, F, G, H, I, K, L, M, N, O, S, Y, HH) caused a $3.34 billion injury (Ex. MM). Plaintiffs' personal investments—Mattson's Wisconsin reinvestment, QF ownership (see Ex. Z) and Dostal's land/development —establish direct injury; redressability is clear via PURPA injunctions and RICO/antitrust damages (Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)).

**¶19 Intentionally removed.**

**¶20 Timeliness and Preclusion**: 19 Timeliness: The antitrust claims are timely under the four-year statute (15 U.S.C. § 15b), and the RICO claims are timely under the four-year injury-discovery rule. Rotella v. Wood, 528 U.S. 549, 555–56 (2000). Limitations are tolled by fraudulent concealment: Defendants withheld avoided-cost workpapers and interconnection forms despite repeated requests (Exs. D, E, S, T; Joint Affidavit ¶¶ 3, 5, 13), uncovering disparities only after compelled disclosures in 2016–2019 (Exs. K, I; Joint Affidavit 8), and Plaintiffs acted diligently thereafter. Defendants continue to withhold 2010–2015 highest incremental avoided-cost data (Exs. D, H, O, Y; Joint Affidavit ¶¶ 3, 8, 10, 29). Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451–52 (7th Cir. 1990). In addition, each new refusal or misstatement is an overt act restarting the limitations period for the injury it causes—e.g., March 20, 2025 (interconnection-package refusal, Ex. HH; Joint Affidavit 28), April 3, 2025 (misstated prerequisites, Ex. A2), and 2023 denials (Exs. S, T, M; Joint Affidavit ¶¶ 9, 13). Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997); Zenith Radio Corp. v. Hazeltine, 395 U.S. 100, 114–18 (1969). The § 210(h)(2)(B) PURPA claim seeks equitable implementation; ongoing statutory violations render injunctive relief timely, and laches does not apply given the public-interest character of enforcement and Plaintiffs' diligence, including pursuing FERC declination as Congress required (Ex. A; Joint Affidavit ¶ 12).

¶20B **Preclusion**: Res judicata and collateral estoppel do not apply because: (1) this action invokes the federal § 210(h)(2)(B) pathway post-declination—a remedy

unavailable in state court, which expressly disclaimed PURPA jurisdiction ("This Court does not have jurisdiction to decide those PURPA issues."). Ex. N (Apr. 10, 2020 Tr.) 41:17–20; see also 39:1–41:15. (2) Material new facts post-date the 2020 judgment, including 2020–2025 refusals and FERC's 2024 declination (187 FERC 61,008) and 2025 order finding non-compliant interconnection procedures (190 FERC 61,170). Ex. HH. (3) The prior record is tainted by perjury/concealment regarding avoided-cost data, defeating preclusion (Transcript Exhibit N pp. 19:15–21:15) (ex Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245–46 (1944). (4) New wrongful acts after judgment are not barred. Lawlor v. Nat'l Screen Serv. Co., 349 U.S. 322, 327–28 (1955); Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1596–98 (2020). Nor does Rooker–Feldman apply; Plaintiffs do not seek appellate review of the state judgment. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

¶21 **Rule 12(b)(6) Opposition**: PURPA jurisdiction is clear under § 210(h)(2)(B) (187 FERC 61,008); factual allegations (e.g., 2010-2015 data refusals, Joint Affidavit 4; Ex. D) satisfy Twombly, 550 U.S. at 570, and Iqbal, 556 U.S. at 678. • PURPA: Duties under 18 C.F.R. §§ 292.303–.306, 292.302(b); declination triggers § 210(h)(2)(B); non-rate relief (¶¶ 7, 33); facts in Joint Affidavit 13; Exs. S, HH. • RICO: Enterprise (¶ 20), pattern (2008–2025), Rule 9(b) predicates (¶ 20), injury/proximate cause (¶ 20; Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 648–50 (2008); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006)). • Sherman § 2: Exclusionary acts (¶ 20), market power/barriers, antitrust injury. • Sherman § 1: Agreement and unreasonable restraint (¶ 21), pleaded per se and, in the alternative, rule-of-reason (Fed. R. Civ. P. 8(d)(2)). No Re-Rating. Plaintiffs do not seek retroactive "re-rating" of any filed tariff; PURPA relief is forward-looking implementation, and monetary relief sounds in non-rate RICO/antitrust conduct. Consistent with Fed. R. Civ. P. 8(d)(2)–(3), Plaintiffs plead in the alternative and inconsistently where necessary (e.g., per se boycott and, alternatively,

rule-of-reason). Claim seeks equitable implementation (interconnection, nondiscrimination, and data transparency). Monetary relief arises under independent federal causes of action (RICO and the Sherman/Clayton Acts).

¶22 **Federal Interconnection Obligations**: Federal Interconnection and Transmission Obligations. Order Nos. 888 (18 C.F.R. § 35.28), 845, 2023, and 2222 reinforce open access, transparency, and timelines, countering obstructions. PURPA's 18 C.F.R. § 292.302(b) mandates avoided-cost data; refusals show exclusion (Otter Tail Power Co. v. United States, 410 U.S. 366, 377–78 (1973)). Claims rest on PURPA (New York v. FERC, 535 U.S. at 11–12). Order No. 2023's transparency and timeline reforms confirm early capacity disclosure is essential, not withholdable."New pro forma LGIP Section 6.1 requires Transmission Providers to publicly post available information pertaining to generator interconnection in the form of a 'heatmap.' Transmission Providers are required to update the heatmap within thirty (30) calendar days after the completion of each cluster study and cluster restudy." Order No. 2023 at P 135 (via SPP compliance filing commentary). Defendants are part of SPP.

¶23 **Order 2222 Implementation**: Order No. 2222 enables distribution energy resource (DER) aggregations to participate in RTO/ISO markets; sets a coordination framework among RTO/ISO, distribution utility, and aggregator; limits distribution-utility review to safety/reliability/operability; and bars undue barriers to DER participation, further supporting Plaintiffs' claims against Defendants' obstructive practices.

¶24 **Order No. 2023 Transparency**: Issued July 28, 2023, in Docket No. RM22-14-000, Order No. 2023 modernizes interconnection with cluster studies, firm deadlines, and transparency to reduce backlogs. Aligned with PURPA's nondiscrimination and interconnection duties (16 U.S.C. § 824a-3; 18 C.F.R. 292.306), "[Transmission Provider] shall also provide, upon request of the Interconnection Customer, the estimated Interconnection Facility and/or Network Upgrade costs and estimated in-service completion time of each identified Contingent Facility when this information is

readily available and not commercially sensitive."— FERC Order No. 845, 163 FERC ¶ 61,043.

¶25 **PURPA Violations**: Violations include 18 C.F.R. §§ 292.303–.304 (purchase/nondiscrimination), § 292.306 (interconnection), and § 292.302(b) (data disclosure): refusals to purchase at avoided cost, to interconnect QFs, to provide contracts, and to furnish data (Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n, 36 F.3d 848, 856–57 (9th Cir. 1994)). Utilities may not condition interconnection on PPA execution (Windham Solar LLC v. Fairfax Elec. Coop., 78 FERC ¶ 61,293, at 62,293 (1997); FLS Energy, Inc., 157 FERC ¶ 61,211, P 26 (2016)).

¶26 **Legal Support for Interconnection**: PURPA § 210(a) (16 U.S.C. § 824a-3(a)) and 18 C.F.R. §§ 292.303–.306, 292.302(b) require purchase, sale, and interconnection (American Paper Inst., Inc. v. AEP, 461 U.S. 402, 421 (1983); FERC v. Mississippi, 456 U.S. 742, 750–52 (1982)). Courts enforce these mandates (Exelon Wind 1, LLC v. Nelson, 766 F.3d 380, 399 (5th Cir. 2014); JD Wind 1, LLC v. FERC, 823 F.3d 145, 151 (D.C. Cir. 2016); Greensboro Lumber Co. v. Ga. Power Co., 643 F. Supp. 1345, 1367–74 (N.D. Ga. 1986)), with FERC forbidding PPA-conditioned interconnection (FLS Energy, Inc., 157 FERC 61,211, P 26 (2016); Windham Solar LLC v. Fairfax Elec. Coop., 78 FERC 61,293, at 62,293 (1997)). Order Nos. 2003 and 2006, 845, and 2023, as well as Otter Tail Power Co. v. United States, 410 U.S. 366, 377–78 (1973), support nondiscriminatory interconnection. QF Status Allegations. Each project meets the small power production criteria in 18 C.F.R. §§ 292.203, 292.204 (renewable fuel; size ≤ 80 MW; ownership and location criteria. Form No. 556 self-certifications have been filed and approved by FERC see Ex. KK, consistent with § 292.207; PURPA rights do not hinge on a prior executed PPA, and utilities may not impose PPA-execution or interconnection-completion as preconditions to a LEO. see Ex Oak Tree; See JD Wind 1, LLC v. FERC, 823 F.3d at 151; Exelon Wind, 766 F.3d at 399; Oak Tree Energy LLC v. NorthWestern Energy, SDPUC Docket No. EL11-006; Order No. 872-A (PP 171–76).

¶27 **FERC Authority**: The Supreme Court confirms FERC's PURPA authority (American Paper Inst., 461 U.S. at 421; FERC v. Mississippi, 456 U.S. at 750–52), implemented via 18 C.F.R. §§ 292.303(a)–(c), 292.306, 292.302(b). FERC prohibits PPA-conditioned interconnection (FLS Energy, Inc., 157 FERC  61,211, P 26; Windham Solar, 78 FERC  61,293, at 62,293) and undue LEO preconditions (Order No. 872-A, 173 FERC  61,158, PP 171–76 (2020/2021); Hydrodynamics, Inc., 146 FERC  61,193, PP 32–35 (2014)). The SDPUC's Oak Tree Energy LLC v. NorthWestern Energy, SDPUC Docket EL11-006 (Feb. 21, 2013), compelled negotiation and interconnection.

¶28 **Financing Impact**: The defendants' refusal to provide true and accurate highest incremental avoided-cost data from 2010–2015, rather stating that their Leland Olds coal plant was the highest (see Ex. H), failure to sign PPAs despite the Circuit Court's 2016 order requiring avoided-cost disclosure which was provided see Ex. K, and confirmed by the circuit court as the avoided cost, (Joint Affidavit at 16, see Ex N; Transcript p. 41:19–22) denial of interconnection applications have rendered plaintiffs' projects unbankable. This blocked transmission access, delayed study milestones, and prevented necessary agreements, deterring lenders and tax-equity investors (Joint Affidavit  31; Ex. MM). Basin's 2023 imposition of punitive PPA penalties ($167,000/MW) further obstructed financing by deterring tax-equity investors and preventing credit monetization (Compl. Count Seven p. 32; Ex. X). Defendants' repeated refusals to provide avoided-cost data and interconnection applications in 2010–2015, 2023, and 2025 compounded these financing barriers, leaving Plaintiffs' projects unbankable.

¶29 **Modern FERC Rules**: Recent FERC orders, including Order No. 2023 (184 FERC  61,054) and Order 845, require timely interconnection studies and public transparency, directly rebutting Defendants' attempt to justify their $167,000/MW penalty. Order No. 872 (173 FERC  61,158) further mandates transparent avoided-cost

disclosure, confirming that such punitive PPA terms operate as unlawful barriers to QF development (JD Wind 1, LLC v. FERC, 823 F.3d 145, 151 (D.C. Cir. 2016)).

¶30 **Financing and Tax Credits**: Plaintiffs are active developers and owners—not passive speculators. Mattson developed and sold a wind farm near Green Bay, Wisconsin, reinvesting proceeds into South Dakota QFs, hiring staff and representatives, hosting community meetings with property owners, securing option agreements, engaging Defendants, filing with the SDPUC and courts, completing FAA, wind studies, and endangered species studies (see Ex. Booklet). Dostal owns land in Gregory County, investing time and capital to develop his QF. Their model leverages selling federal tax credits to secure financing as a down payment or uses tax-equity flip structures (Rev. Proc. 2007-65, "Minnesota flip" safe harbor, requiring 1% retained interest and developer risk), confirming direct ownership and financial exposure. Defendants' refusals to interconnect and provide accurate avoided-cost rates eliminated tax-credit monetization, stranding Plaintiffs' investments—personal, not derivative harms. (See Exs. GG, MM).

¶31 **Article III Standing**: Defendants' violations caused the loss of 23 QFs (633 MW) and $3.34 billion in damages (Ex. MM), constituting injury-in-fact. Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). Plaintiffs' concrete losses—projects, financing, and tax credits (Exs. GG, MM)—meet Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992), with harms traceable to Defendants and redressable by court order. See Duke Power Co. v. Carolina Env't Study Group, Inc., 438 U.S. 59, 72 (1978).

¶32 **Causation**: The causal link between Defendants' refusals and Plaintiffs' losses is direct: denied interconnections and inaccurate avoided-cost data blocked financing and tax-credit monetization (Exs. H, I, GG, MM). This satisfies Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129–30 (2014), and Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006).

¶33 **Bad Faith and Curtailment**: Defendants' unlawful conduct is not hypothetical, as

evidenced by FERC findings. FERC has already found Basin in repeated violation of federal law. In Basin Electric Power Cooperative, Initial Decision, FERC Docket No. ER18-990 (June 11, 2024), an Administrative Law Judge held that Basin unlawfully inflated its wholesale rates by including non-utility affiliate expenses, ordering refunds exceeding $471 million. Likewise, in 190 FERC 61,170 (2025), FERC found Basin's interconnection procedures non-compliant with PURPA and Order No. 2023 see Ex. HH. These rulings establish a continuing pattern of illegal behavior and deliberate obstruction of federal mandates. They demonstrate not isolated mistakes, but systemic misconduct reaching Basin's board and governance structure—further confirming that injunctive relief and structural remedies.

¶34 **Bad Faith, Control, and Curtailment Pretext**: Defendants exploited control to frustrate rights (Market Street Assocs. v. Frey, 941 F.2d 588, 595 (7th Cir. 1991); Restatement (Second) of Torts § 870; Otter Tail Power Co. v. United States, 410 U.S. 366, 377–78 (1973); Cantor v. Detroit Edison Co., 428 U.S. 579, 597–98 (1976)). Capacity-allocation risks were created by denying interconnection applications, potentially costing millions in upgrades. Plaintiffs have no idea what capacity is available, or its effect on potential transmission required upgrades regardless of required curtailment by Defendants. Claimed curtailments are pretextual; SPP protocols (e.g., TLR Level 5) do not excuse prior exclusion. (See Ex. A1) "Each electric utility shall purchase, in accordance with § 292.304, unless exempted by § 292.309 and § 292.310, any energy and capacity which is made available from a qualifying facility." FERC Order No. 69

¶35 **Fraud/Concealment Materiality**: Rule 12(f) striking is a drastic, disfavored remedy reserved for truly irrelevant matter (Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962); Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000)). The concealment and fraud allegations are material, supporting RICO predicates, tolling for RICO and antitrust claims, and damages calculations (Exs. A–KK), and cannot be

dismissed under Rule 12(b)(6) (BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007); 5C Wright & Miller § 1382). Plaintiffs do not assert a standalone tort of 'fraudulent concealment'; these allegations are pleaded to establish tolling and RICO predicates, with consent to dismiss any misidentified concealment tort count without prejudice while preserving those uses.

¶36 **Dostal's Standing:** Edward J. Dostal invested time and money on QF projects on his land and suffered losses (Ex. MM) from 2009–2025 denials (Ex. D, S,T,MM; Am. Compl. p. 3). Delays triggered a Gregory County 3-mile setback making the wind farm impossible, without additional litigation against the county which may fail, an injury traceable to Defendant's obstruction, bad faith, and illegal behavior, denied interconnection and signed PPA—redressable by injunction/damages (Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129–30 (2014); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). He derives income from the wind farm and development work. Dostal's concrete injury, causation, and redressability. Dostal owns the Gregory County project site (QF14-112-006); a § 210(h) injunction would redress this injury.

¶37 **RICO and Antitrust Claims**: Plaintiffs plead a RICO pattern (18 U.S.C. § 1961(5)) with mail/wire predicates (false avoided-cost statements; concealment; misrepresentations) alleged with particularity (Joshi v. St. Joseph Mercy Hosp., 441 F.3d 552, 556 (6th Cir. 2006); Fed. R. Civ. P. 9(b)). An association-in-fact enterprise (Basin, Rosebud, Maraue Grand and Grand) operated via shared counsel and governance to exclude QFs (2013–2025), meeting Boyle v. United States, 556 U.S. 938, 946 (2009). Predicates include: (a) email runarounds (Ex D) (b) 2014 letter stating "near 2¢/kWh" (Ex. H); (c) 2017 letter denying PPA (Ex.M); (d) not providing highest incremental avoided cost from 2010–2015; (e) denying interconnection applications (Ex. S, T); (f) continued refusal to confer or provide discovery during the Wisconsin District Court hearing and before this honorable court, where defendants also filed a motion to stay

discovery on August 22, 2025; and (G) causing lost projects, financing, and tax credits (see Ex GG,MM). Defendants mischaracterize Plaintiffs' RICO theory as resting on perjury alone, but the Complaint identifies mail and wire fraud through false avoided-cost statements and concealment transmitted via communications (Exs. D, E, H, I, M, O, S, T), which are valid RICO predicates. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 648–50 (2008); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006). Distinctness holds; Rule 9(b) is met with who/what/when/where/how. RICO is timely under the four-year injury-discovery rule (Rotella v. Wood, 528 U.S. 549, 555–56 (2000); Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Defendants control 100% of interconnection/purchase access, creating monopoly/monopsony power with entry barriers; foreclosure causes antitrust injury (Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); Otter Tail Power Co. v. United States, 410 U.S. 366, 377–78 (1973)). Copperweld Corp. v. Independence Tube Corp. fails; American Needle, Inc. v. NFL, 560 U.S. 183, 195–200 (2010), and Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764 (1984), support § 1 action. § 2 reflects exclusionary conduct; § 1 is a per se boycott or rule-of-reason restraint (Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212–13 (1959); Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 294–98 (1985)), with agreement inferred (Interstate Circuit, Inc. v. United States, 306 U.S. 208, 226–27 (1939)). NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 135 (1998), limits per se, but horizontal exclusion fits. Otter Tail supports liability. Plaintiffs are excluded competitors; Blue Shield of Va. v. McCready, 457 U.S. 465, 479–80 (1982), allows standing. See Complaint pp. 26–37 for markets, Copperweld, and acts.

¶38 **Order 872 and Transparency**: Order No. 872 requires transparent, public avoided-cost methodologies; Defendants' SDPUC unfiled rates other than 2011 for Grand at 4.3¢/kWh, and the backdated filings in 2019 (Ex. O) all below 2¢/kWh, data

refusals, and favoritism fail this standard (Joint Affidavit 8; Exs. D, F, I); (Public Serv. Co. of Okla. v. State ex rel. Okla. Corp. Comm'n, 115 P.3d 861, 871 (Okla. 2005)).

¶39 **Judicial Estoppel; Tolling**: Judicial estoppel does not apply here. The New Hampshire v. Maine factors require (i) a party's later position to be clearly inconsistent with an earlier one, and (ii) that a court accepted the earlier position as the basis for a judgment. 532 U.S. 742, 750–51 (2001). Defendants—not Plaintiffs—satisfied both conditions: they argued in state court that only FERC and federal courts could enforce PURPA, and the state court accepted that argument when it disclaimed PURPA § 210(h) jurisdiction (Ex. N, Apr. 10, 2020 Tr. 39:1–41:15). Defendants now reverse course, claiming no federal jurisdiction, which is precisely the type of inconsistent position judicial estoppel bars. By contrast, Plaintiffs' arguments have been consistent, and Rule 8 expressly permits them to plead in the alternative, even inconsistently, Fed. R. Civ. P. 8(d)(2)–(3).

¶39A **Equitable Tolling**: Equitable tolling independently preserves Plaintiffs' claims. Defendants concealed avoided-cost data until 2016 court required discovery See Ex K, and 2019 further discovery found in Ex I, while never providing 2010 to 2015 discovery preventing discovery of the full scope of violations. Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946); Rotella v. Wood, 528 U.S. 549, 555–56 (2000); Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997). Ongoing refusals and misstatements from 2020–2025 (Joint Affidavit ¶¶ 4, 11; Exs. D, N 19:15–21:15, S,T) constitute new acts, restarting limitations. See Complaint pp. 19–26. Having prevailed in state court by insisting that PURPA claims belonged in a federal forum, Defendants cannot now estop Plaintiffs from pursuing that very forum under § 210(h)(2)(B).

¶40 **2020 Dismissal and Medical Marijuana**: The 2020 dismissal (No. 20CIV-00123) was tainted by perjury/fraud (Joint Affidavit ¶¶ 11, 18; Ex. N 19:15–21:15), negating res judicata (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)). The 2020 state court order omitted critical terms from the April 10, 2020, transcript (Ex. N,

pp. 21–22), including the court's directive to address PURPA data disclosure (Joint Affidavit 18). This omission, coupled with perjury on avoided-cost rates (Ex. N, p. 41:3–16), and order malfeasance see ¶8, justifies federal intervention. Recent Supreme Court guidance recognizes recovery for business/property losses under civil RICO; in all events, 18 U.S.C. § 1964(c) and 15 U.S.C. § 15 supply treble-damages remedies. Medical Marijuana, Inc. v. Horn, No. 23-365 (U.S. Apr. 2, 2025).

¶41 **Rule 12(f) Opposition**: Rule 12(f) motions to strike are a drastic remedy, disfavored in the Eighth Circuit, and should be granted only when the challenged allegations are "redundant, immaterial, impertinent, or scandalous." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 F.3d 790, 795 (8th Cir. 2006); Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000); Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962). The concealment and fraud allegations here are material: they support RICO predicates, equitable tolling, antitrust intent, and damages calculations (Exs. A–KK). They cannot be dismissed under Rule 12(b)(6) through the back door of Rule 12(f). BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007); 5C Wright & Miller § 1382. Plaintiffs do not assert a standalone tort of "fraudulent concealment"; the allegations are pleaded for tolling, RICO, and equitable relief. To the extent Defendants argue concealment is improperly labeled as a separate count, Plaintiffs consent to dismissal of any misidentified tort claim without prejudice, while preserving its use as a tolling and predicate doctrine. While Defendants argue the Complaint improperly contains "legal argument," courts hold such content is not grounds for striking unless wholly irrelevant. See BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) ("Motions to strike under Rule 12(f) are disfavored and infrequently granted; allegations will not be stricken unless they have no possible relation to the controversy."); Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) ("Even where allegations are redundant or contain surplusage, a motion to strike should be denied if the material could be relevant to the controversy.");

Johnson v. City of Shelby, 574 U.S. 10, 11–12 (2014) (per curiam) ("Federal pleading rules do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (Rule 8(a)'s simplified notice pleading standard relies on liberal discovery and summary judgment, not technical pleading requirements, to define disputed facts and issues); In re Estate of O'Keefe, 583 N.W.2d 138, 141 (S.D. 1998) (pleadings liberally construed to do substantial justice); United States v. Educ. Mgmt. Corp., 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (refusing to strike allegations containing legal argument where they provided context); Miller v. Pfizer, Inc., 1999 WL 1054700, at 3 (D. Kan. Nov. 15, 1999) (legal conclusions and argument not stricken where they clarify claims); Wright & Miller, Fed. Prac. & Proc. § 1382 (3d ed.) ("matters of law or argument are not ordinarily stricken unless they have no possible relation to the controversy. The Complaint is not a "shotgun pleading": it identifies each Defendant, the governing statutes, the time-bounded acts, and the exhibits pin-cited throughout, satisfying Rule 8 (Ciralsky v. CIA, 355 F.3d 661, 669 (D.C. Cir. 2004)). Defendants cite the Rule 12(f) standard's reference to "scandalous" matter, but they do not actually move to strike Plaintiffs' fraud or concealment allegations, which remain directly relevant to RICO predicates, tolling, and damages. Even if Defendants had sought to strike fraud or concealment allegations, courts hold such allegations are not "scandalous" when directly relevant to claims pled. See FDIC v. Niblo, 821 F. Supp. 441, 449 (N.D. Tex. 1993).

¶42 **Assignment Validity and Standing**: Defendants' motion to strike Mattson's assigned claims fails. The September 12, 2024, Assignment of Claim (Ex. Assignment of Claim): "The Assignor hereby sells and transfers to the Assignee... any and all claims... against Basin, Rosebud, Grand Electric...") is valid. Executed during Prelude LLC's financial exhaustion ("Prelude LLC ran out of money and can no longer prosecute this case," Ex. Assignment of Claim), it complies with SDCL § 44-11-1 and Gilbert v.

United Nat'l Bank, 436 N.W.2d 23, 25 (S.D. 1989), which recognize that choses in action arising out of violations of property rights are assignable. Amalgamated Transit Union v. Superior Court, 46 Cal.4th 993, 1003 (2009), further confirms this principle. Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 285 (2008), confirms assignee lawsuits are justiciable, including pro se standing when court-approved, thus countering Sea Island Co. v. IRI Group, LLC, 2007 WL 2997660 (W.D.N.C. 2007). The Eastern District of Wisconsin endorsed this, dismissing Prelude for lack of counsel but permitting amendment: "you could allege that you've received an assignment of Prelude's rights" (Ex. WI Transcript, pp. 5–6, 16), reflecting judicial intent that Sprint's broad rights extend to Mattson's pro se prose**cution. Mattson's direct stake financial investment, developed, and lost from QFs (Complaint ¶¶ 6, 24; WI amendment complaint p.** 3)—establishes standing (Lone Star Indus., Inc. v. Redwine, 757 F.2d 708, 711 (8th Cir. 1985)).

¶43 **FERC Recognition and Judicial Guidance**: FERC's 2024 declination and 2025 findings (see Ex. A, KK, HH, FERC Order 2, 187 FERC 61,008; 190 FERC 61,170) recognize the rights assigned to Mattson and establish federal enforcement. Likewise, during the October 1, 2024, Eastern District of Wisconsin conference, the court advised Mattson to proceed on the assignment basis, reinforcing its legitimacy. This alignment between FERC enforcement, state precedent, and federal court guidance defeats Defendants' argument that the assignment is invalid or immaterial.

¶44 **PPA Adjustment and Enforcement**: Defendants' 2017 PPA refusals and their failure to recognize the 4.29¢/kWh avoided-cost benchmark (Exs. K, M,) underscore the materiality of the assignment. Exelon Wind 1, LLC v. Nelson, 766 F.3d 380, 389–90 (5th Cir. 2014), and JD Wind 1, LLC v. FERC, 823 F.3d 145, 151 (D.C. Cir. 2016), establish that QFs have a right to enforce avoided-cost obligations under PURPA without added preconditions. FERC Order No. 69 (45 Fed. Reg. 12,214 (1980)) mandates avoided-cost purchases, while Orders No. 872 and 872-A (173 FERC 61,158 (2020))

require transparency, and FLS Energy, Inc., 157 FERC 61,211, and Windham Solar LLC v. Fairfax Elec. Coop., 78 FERC 61,293, forbid utilities from conditioning interconnection or PPAs on extraneous penalties. The assignment ensures Mattson can directly enforce these obligations, confirming its materiality and defeating defendants' Rule 12(f) motion to strike.

¶45 **Mootness Rebuttal**: Defendants' strike motion also fails because the assigned claims present a live controversy. The Wisconsin court's October 15, 2024, guidance to amend preserved the action. Ongoing 2025 refusals to provide interconnection packages and avoided-cost data (Joint Affidavit 13; Ex. S, T) confirm that the dispute remains active. Winter v. NRDC, 555 U.S. 7, 20 (2008), requires injunctive relief to prevent irreparable harm in ongoing controversies. The LEO doctrine was established to stop Utilities from prospering from delays, and illegal behavior. The assignment keeps these claims alive and properly before this Court.

¶46 **PPA Terms Cannot Override PURPA**: PPA terms cannot override PURPA's federal mandates. Defendants' standard Power Purchase Agreements (PPAs) embed punitive 'nondelivery'/liquidated-damages terms, including a $167,000/MW construct (Ex. X), wielded as de facto preconditions to interconnection and must-purchase access (see Ex. HH). Plaintiffs believe SDWP QF (see Ex SDWP) ppa does not contain said requirements and proves prejudice in violation of 16 U.S.C. § 824a-3 and 18 C.F.R. § 292.304. Discovery will provide proof. These provisions deter Qualifying Facility (QF) entry, block transmission access, and frustrate financing critical to project viability, particularly for small, independent producers whom PURPA aims to encourage, see Ex Oak Tree (16 U.S.C. § 796(17); H.R. Rep. No. 95-1750, at 87-89 (1978)). PURPA imposes affirmative, nondiscriminatory duties to purchase and interconnect; utilities may not condition these federal rights on PPAs with punitive liabilities that contravene PURPA's pro-competitive foundation (16 U.S.C. § 824a-3(a)), as confirmed in JD Wind 1, LLC v. FERC, 823 F.3d 145, 151 (D.C. Cir. 2016), and Exelon Wind 1, LLC v. Nelson,

766 F.3d 380, 399 (5th Cir. 2014).

¶47 **Remedy**: Plaintiffs seek (i) equitable implementation under § 210(h)(2)(B) for interconnection, nondiscrimination, and avoided-cost transparency, and (ii) declaratory/injunctive relief barring enforcement of any PPA clause functioning as a PURPA-violative precondition or discriminatory penalty, including the $167,000/MW construct. These clauses fail under Restatement (Second) of Contracts § 356, as they are not a reasonable forecast of loss at formation, rendering them unenforceable penalties inconsistent with PURPA's intent to foster QF development (16 U.S.C. § 824a-3(a)). Financing realities demonstrate that such terms deter lenders, who require PPA certainty without punitive clauses (Joint Affidavit 31; Ex. X); the SDPUC confirmed a signed PPA is required to procure financing, "The Commission finds that the appropriate contract term for the Project was 20 years to enable the Project to obtain financing in accordance with the objectives of PURPA: (Ex. Oak Tree). Federal preemption under PURPA overrides state-approved or utility-imposed penalties, as FERC v. Mississippi, 456 U.S. 742, 750–52 (1982), confirms Congress's authority to regulate QF access, rendering Defendants' terms unenforceable. Additionally, any monetary relief arises solely under RICO/antitrust for non-rate exclusionary conduct, preserving PURPA claims for equitable enforcement unaffected by remedial or jurisdictional limits.

**¶48 Left Blank**

¶49 **Defendants' Delays**: Defendants' repeated delays in providing interconnection packages and avoided-cost data from 2010 to 2025 (Exs. D, E, HH, M, S, T) have caused the termination of 23 QFs (See Ex. GG) and stranded 12 Qf's (see Ex. W) caused losses of $3.34 billion (Ex. MM), reinforcing RICO and antitrust claims. These intentional and systemic delays justify expedited relief under 18 U.S.C. § 1964(c) and 15 U.S.C. § 15. Their pattern of delay is evident from arguing circuit court jurisdiction before the SDPUC in 2014, then arguing for FERC jurisdiction before the circuit court

and now for circuit court. Proving a strategy to evade accountability.

¶50 **Preservation and Discovery**: Plaintiffs request a Rule 37(e) order to preserve ESI—interconnection data, interconnection applications, avoided-cost workpapers for 2010-2015, study models (PSSE/PSLF), emails, and affiliate data from 2008–present—with holds on custodians. Expedited discovery under Rule 26(d)(1) is critical due to the 12 remaining QF and the loss of federal production tax credits: Statute at Large, 139 Stat. 72 (Public Law No. 119-21) (Ex. MM), targeting (i) interconnection applications; (ii) transmission data (iii) LGIP/LGIA drafts; (iv) avoided-cost information; and (v) affiliate communications. This supports the filed Rule 26(f) motion, countering mootness claims (Basin Motion, Dkt. 16) by proving ongoing PURPA violations affecting financing.

¶51 **Leave to Amend**: If any matter is stricken or dismissed, Plaintiffs seek leave to amend (Foman v. Davis, 371 U.S. 178, 182 (1962); Joint Affidavit ¶ 38; Ex. Y).

¶52 **Relief Roadmap & Rule 65(c)**: Plaintiffs meet Winter v. NRDC, 555 U.S. 7 (2008), criteria as of August 29, 2025,: likely success (¶¶ 6–15, 20–21), irreparable harm from lost QFs/tax credits (0), and public/equity interests favoring PURPA compliance. Under § 210(h)(2)(B), Defendants must: (1) within 15 days, provide interconception application , provide Order 845 requirement: Heat maps or equivalent network maps showing available capacity on transmission lines, and information about congestion and constraints. Provide Avoided-cost data (18 C.F.R. § 292.302(b), follow Order No. 2023, 176 FERC 61,024); (2) process applications within 30 days with good-faith PPAs; (3) complete studies in 60 days; (4) certify compliance in 45 days; (5) face contempt; and (6) accept a Rule 53 special master (Complaint pp. 38-39). Plaintiffs seek injunctions, treble damages, and fees. No Rule 65(c) bond is needed, as Plaintiffs' $3.34 billion loss (Ex. MM) outweighs Defendants' burden. Contrary to remedy limits (Basin Motion, Dkt. 16, p. 17), equitable relief is a authorized for 2025 violations.

¶53 **Injunction Specificity**: The injunction, effective August 29, 2025, is specific under

PURPA (16 U.S.C. § 824a-3) and Order No. 2023: Defendants must (a) provide full interconnection packages within 15 days; (b) deliver a pre-application capacity report (LGIP Section 3.4.1, 176 FERC 61,024); (c) process applications within 30 days; and (d) certify compliance within 45 days, enforceable per JD Wind 1, LLC v. FERC, 823 F.3d 145, 151 (D.C. Cir. 2016). Provide transmission data as required under Order 845, Discovery of data and workpapers ( Otter Tail Power Co. v. United States, 410 U.S. 366, 377–78 (1973)) supports enforcement. Contrary to remedy limit claims (Basin Motion, Dkt. 16, p. 17), this equitable relief addresses ongoing and 2025 violations (Complaint pp. 38-39).

¶54 **Damages Calculation**: Damages exceed $3.34 billion, calculated from 23 QFs' capacity × expected output × (benchmark avoided-cost − discriminatory rate) × term, plus the 12 stalled QF damages, and tax-credit losses (Exhibit MM; Complaint pp. 26-37). As of August 29, 2025, these losses stem from Defendants' ongoing refusals to interconnect, sign the ppa, and disclose avoided-cost data. Contrary to remedy limitation claims (Basin Motion, Dkt. 16, p. 17), this harm justifies equitable relief, supporting the requested injunction (Complaint pp. 38-39).

¶55 **Ongoing Violations**: Defendants' refusals to interconnect and provide avoided-cost data from 2010–2025, ongoing as of August 29, 2025, constitute continuous PURPA violations justifying relief (Complaint p. 18).

¶56 **No Abstention**: Abstention is improper (NOPSI v. Council of City of New Orleans, 491 U.S. 350, 372 (1989)).

¶57 **Ripeness**: Claims are ripe due to final, injurious denials (Complaint pp. 19-26).

¶58 **Exhaustion**: Exhaustion is met via SDDPUC ruling a lack of jurisdiction, circuit court ruling a lack of jurisdiction, and FERC declinations (187 FERC 61,008; 190 FERC 61,170) (Complaint pp. 19-26). Plaintiffs seek injunctions, treble damages, and lost opportunity damages for ongoing harm.

¶59 **Primary Jurisdiction**: Primary jurisdiction favors a federal forum, with legal issues

precluding delay (Reiter v. Cooper, 507 U.S. 258, 268–69 (1993)).

¶60 **RICO Jurisdiction**: RICO (18 U.S.C. § 1964(c)) adds jurisdiction (Complaint pp. 26-37).

¶61 **Antitrust Jurisdiction**: Antitrust (15 U.S.C. §§ 1-2) claims are supported (Complaint pp. 26-37). Defendants' delays (2010–2025, Exs. D, H, M, S,T), defendants adapting jurisdiction arguments depending on who the next regulatory or judicial body is, reinforce these claims, warranting expedited relief.

¶62 **Conclusion**: Plaintiffs' claims are well-founded, supported by law and fact, warranting relief. See Complaint pp. 3-39 for comprehensive support. Defendants' 15-year obstruction, ongoing as of August 29, 2025, has lost 23 QFs, threatens the remaining 12 QFs, and resulted in $3.34 billion in losses (Ex. MM), demanding federal action. The 2020 order has non-preclusive effect; plaintiffs seek its voidance for fraud and overreach, as evidenced by Ex N; Transcript, pp. 19:15–21:15, ¶8, and Exhibits D, S,T. Plaintiffs move for de novo review under 16 U.S.C. § 824a-3(h)(2)(B) and Loper Bright, 144 S. Ct. 2244 (2024), with Rule 26 discovery to assess tolling and damages, seeking trebled damages, injunctions, and fees under 18 U.S.C. § 1964(c). Contrary to res judicata (Defendants' Motion to Dismiss, Dkt. 16, pp. 14-17), this action addresses ongoing harm. "Additionally, the Statute at Large, 139 Stat. 72 (Public Law No. 119-21), imposes strict construction deadlines that magnify Plaintiffs' exposure to ever-increasing damages so long as Defendants' obstruction continues.

¶63 **Rule 54(c) Relief**: Under Fed. R. Civ. P. 54(c), the Court may award any relief to which Plaintiffs are entitled, even if not specifically demanded in the pleadings.

¶64 **WHEREFORE**: Plaintiffs respectfully request that this Court deny Defendants' motions to dismiss and strike, grant de novo review of the 2020 state court order, and award the relief sought, including injunctions, treble damages, as justice requires.

Respectfully submitted,

I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and EDWARD J. DOSTAL PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE, AND MOTION FOR DE NOVO REVIEW OF 2020 STATE COURT ORDER filed against BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE is true and correct. Executed on 8/29/2025

*/s/ Thomas Mattson*______________________

Thomas Mattson
146 Alpine Dr. Green Bay, WI 54302
9203934131
prelude1234@gmail.com

I declare (or certify, verify, or state) under penalty of perjury that Thomas Mattson and EDWARD J. DOSTAL PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE, AND MOTION FOR DE NOVO REVIEW OF 2020 STATE COURT ORDER filed against BASIN ELECTRIC POWER COOPERATIVE, ROSEBUD ELECTRIC COOPERATIVE, INC., GRAND ELECTRIC COOPERATIVE, INC., and MOREAU-GRAND ELECTRIC COOPERATIVE is true and correct. Executed on 8/29/2025

*/s/ Edward J. Dosta*

Edward J. Dostal
29862 338th Ave
Gregory, SD 57533
6058304638

¶65 **Footnote 1 (judicial notice)**: The Court may take judicial notice of FERC orders and state court transcripts under Fed. R. Evid. 201(b)(2) as matters of public record. Additional transcript quotes include: (1) "This Court does not have jurisdiction to decide those PURPA issues. That is for FERC" (Apr. 10, 2020 Tr., p. 39:1–41:15); (2) "And that based upon that, there is no evidentiary or legal support for their assertions of entitlement under PURPA to rates other than Basin's avoided cost rate" (Apr. 10, 2020 Tr., p. 41:3–5), reinforcing jurisdiction and rate claims.

I hereby certify that on August 29, 2025, I caused a true and correct copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and Motion to Strike, and Motion for De Novo Review of 2020 State Court Order to be served upon the following by email and to this court by U.S. Mail.

Christina M. Berish
cberish@thompsoncoburn.com
P: 312 580 2329
Thompson Coburn LLP
55 East Monroe Street 37th Floor
Chicago, IL 60603
www.thompsoncoburn.com
Jeff Collins
jcollins@lynnjackson.com
Lynn, Jackson, Shultz & Lebrun, P.C.
110 N. Minnesota Avenue, P.O. Box 2700
Sioux Falls, SD 57101-2700

*/s/ Thomas Mattson*
Thomas Mattson
146 Alpine Dr. Green Bay, WI 54302
9203934131
prelude1234@gmail.com

146 Alpine Dr.
Green Bay, WI
54302

CPU

U.S. POSTAGE IMI
$14.85
PRML RDC 03
Orig: 54303
Dest: 57501
08/29/25
2000051833
S2324M505894
02 8W

P.O. Box 7147
U.S. Post Office and Crt House
225 South Pierre St.
Pierre, SD.
57501

EXPECTED DELIVERY DAY: 09/04/25
USPS TRACKING® #
9505 5265 2331 5241 3434 15