UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| THOMAS MATTSON, EDWARD J. DOSTAL,<br><br>Plaintiffs,<br><br>vs.<br><br>ROSEBUD ELECTRIC COOPERATIVE, GRAND ELECTRIC COOPERATIVE, BASIN ELECTRIC POWER COOPERATIVE, MOREAU-GRAND ELECTRIC COOPERATIVE, INC.,<br><br>Defendants. | 3:25-CV-03008-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS |

Plaintiffs Thomas Mattson (Mattson) and Edward J. Dostal (Dostal) filed a pro se Complaint in this case against Rosebud Electric Cooperative (Rosebud), Grand Electric Cooperative (Grand Electric), Basin Electric Power Cooperative (Basin), and Moreau-Grand Electric Cooperative, Inc. (Moreau-Grand). Doc. 1. The Complaint invokes federal question jurisdiction under 28 U.S.C. § 1331 over claims based on the Public Utilities Regulatory Policy Act (PURPA), Racketeer Influenced and Corrupt Organizations Act (RICO), and Sherman Act,

1

and "supplemental jurisdiction" under 28 U.S.C. § 1337 for claims on "commerce regulation."[1] Doc. 1 ¶ 7.[2]

Defendants collectively filed a motion to dismiss. Doc. 15. Plaintiffs oppose the motion and filed a response. Doc. 26. Defendants filed a reply, which pointed out that Plaintiffs relied on numerous fictitious case citations and quotations in their response. Doc. 35. Plaintiffs then filed a notice of corrected citations as well as a sur-reply. Docs. 36, 37. For the reasons explained below, the motion to dismiss is granted.

## I.   Factual Allegations

Plaintiffs helpfully attached many documents to their Complaint, providing context for their various allegations and a history of their litigation of these matters. "[D]ocuments necessarily embraced by the complaint are not matters outside of the pleadings." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). This Court makes no factual findings in ruling on a motion to dismiss but draws the factual allegations from the Complaint and attachments thereto.

Prelude LLC (Prelude), for which Mattson was President/CEO, undertook efforts to develop twelve qualifying facilities (QFs) for generating electricity though wind farms to be located in Tripp County, Perkins County, and Gregory County, South Dakota. See Doc. 1 ¶ 24; Doc. 1-3 at 2–60. Mattson was at least a part if not sole owner of Prelude. See Doc. 1-7 at 59–61

---

[1] 28 U.S.C. § 1337 grants federal district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," with a few exceptions not relevant here. 28 U.S.C. § 1337.

[2] The Complaint does not invoke a specific kind of jurisdiction for its claims for "Fraudulent Concealment" (Count 5) or "Bad Faith and Litigation Misconduct" (Count 11), but this Court will explore that and related issues with these claims in greater detail below.

(indicating Mattson signed the document on behalf of Prelude and that Prelude was registered to Mattson's address). After a federal judge in the litigation in the Eastern District of Wisconsin held that Mattson could not as a non-lawyer represent Prelude, Prelude and Mattson, with Mattson signing for both, executed an Assignment of Claim on September 12, 2024, where Mattson received assignment of Prelude's rights to make claims against these Defendants in exchange for $1. Doc. 1-7 at 60–62. Mattson changed the ownership of these prospective facilities in a 2024 Recertification Filing to himself. Doc. 1-5 at 61–62 (Thomas Mattson, 190 FERC ¶ 61,015, at *1 (2025)).[3] "Mattson explained in the 2024 Recertifications that, as of the date of the filing, the 12 affiliated QFs have not been built, and none of the Facilities hold an interconnection agreement or a fully executed power purchase agreement." Doc. 1-5 at 62. Dostal owns land on which Prelude planned to build a wind farm in Gregory County. Doc. 1 ¶ 25.[4]

Basin "is a regional generation and transmission rural electric cooperative headquartered in Bismarck, North Dakota" that "has all-requirements power supply contracts with 19 cooperatives on both the eastern and western interconnections of the United States, many of whom in turn have all-requirements contracts with distribution rural electric cooperatives." Doc. 1-3 at

---

[3] Defendants challenged Matton's 2024 recertification filing, and requested that the Commission "scrutinize the purported ownership transfer in Mr. Mattson's QFs to confirm that the recertified QFs will in fact be owned and operated by Mr. Mattson in his individual capacity" in order "to confirm that the recertification filings are not merely a tactic being employed by Mr. Mattson to circumvent Joint Utilities' attempt to address compliance with a court order for Prelude LLC's recently-filed litigation requiring Prelude LLC to appear by counsel (whereas individuals may appear *pro se*)." Doc. 1-5 at 66 (Mattson, 190 FERC ¶ 61,015 at *4). The Commission denied the joint utilities' protest as it was not "adequately support[ed] . . . to make a prima facie demonstration that the ownership information provided in the 2024 Recertifications is inaccurate such that the Facilities' QF status should be revoked." Doc. 1-5 at 76–77 (Mattson, 190 FERC ¶ 61,015 at *10).

[4] The Complaint attaches one exhibit titled "2016 Signed PPA," purportedly between Prelude and Grand Electric, but this exhibit is missing pages, including the signature page. See Doc. 1-6 at 21–72.

88. Defendants Grand and Rosebud and non-party Rushmore Electric Power Cooperative (Rushmore) have all-requirements contracts with Basin. Id. Defendant Moreau-Grand has an all-requirements contract with Rushmore. Id. Plaintiffs' planned QFs are all in areas where Basin and its affiliates Grand, Rosebud, and Moreau-Grand supply electricity.

Under the rules implementing PURPA as established by the Federal Energy Regulatory Commission (FERC), "electric utilities have an obligation to purchase qualifying facility capacity and energy at 'avoided cost.'" Id. The "avoided cost" of the all-requirements supplier is defined as "the incremental cost to electric utilities of electric energy or capacity which, but for the purchase from qualifying facilities, such utilities would generate itself or purchase from another source." Id. at 89. As Grand and Rosebud are all-requirements customers of Basin, and Moreau-Grand is an all-requirements customer of non-party (and all-requirement customers of Basin) Rushmore, the avoided cost rates for Grand, Rosebud, and Moreau-Grand are Basin's avoided cost rate. Id.

Beginning in 2009, Prelude attempted to secure a power purchase agreement with Defendants for Prelude's planned wind farm QFs. Doc. 1 ¶ 29. Plaintiffs have attached emails and letters that span years related to these communications and negotiations. See Doc. 1-3. Plaintiffs allege that Defendants "engaged in a coordinated scheme to obstruct" Prelude's QFs. Doc. 1 ¶ 29. Specifically, Plaintiffs allege "Defendants provided false avoided cost rates [], rejected valid power purchase agreements [], denied interconnection and transmission access [], and concealed critical data," which caused the loss of twenty-three QFs.[5] Id. At other points in

---

[5] Absent a power purchase agreement, Prelude would likely be unable to obtain financing to build the wind farms. Part of PURPA's purpose is to promote the development of such QFs and to provide a fair rate of return and a fair price to the utility at the "avoided cost" rate. See FERC v. Mississippi, 456 U.S. 742, 750–51 (1982).

the Complaint, Plaintiffs also allege that Defendants have "enforce[d] anti-wind contract provisions in direct conflict with federal law." Id. ¶ 2. Throughout the Complaint, Plaintiffs allege Defendants' obstruction by various means has continued from 2009 to the present. See id. ¶¶ 29– 30. Plaintiffs allege that they have fully complied with PURPA and FERC regulations. Id. ¶ 36.

In 2014, Prelude filed a complaint against Defendants with the South Dakota Public Utilities Commission alleging PURPA rate violations, but this case was dismissed on July 24, 2014. See id. ¶¶ 11, 19; id. at 45. In 2015, Prelude and Dostal sued Basin, Rosebud, Grand, Moreau-Grand, and non-parties Butte Electric Cooperative and Rushmore in South Dakota state court alleging five claims: two state law claims, (1) tortious interference with contract and (2) defamation, as well as three claims under PURPA, (3) Basin did not correctly calculate its avoided cost rate for purposes of purchasing output, (4) Basin did not provide Prelude with data and information required by PURPA and FERC regulations implementing PURPA, and (5) Basin did not negotiate in good faith with Prelude. Id. ¶ 20; Doc. 1-2 at 60, 95, 98. During this state court case, Prelude was represented by counsel and Dostal proceeded pro se. Doc. 1-2 at 61.

This state court case culminated in a hearing on Defendants' summary judgment motion, which was held on December 30, 2019. Id. at 60–105. Plaintiffs allege that during the hearing, Defendants (through counsel's argument) perjured themselves by "testifying that no avoided cost request was made." Doc. 1 ¶ 39 (citing Doc. 1-2 at 78–79[6]). Plaintiffs neither filed nor served the

---

[6] At the motion hearing, Defendants' counsel argued in a way that Plaintiffs now allege was perjurious:

> The plaintiffs have alleged that the defendants didn't deal with Prelude in good faith during the course of the parties' discussions in the 2009 to 2011 or '12 timeframe, and . . . have pointed to in support of that argument [an] unwillingness to provide data and information that they have claimed is required under the FERC regulations. So the fact that they never really asked for it, I think, undercuts the claim that Basin Electric was not dealing with—Basin Electric and the defendants

required response to Defendants' Statement of Undisputed Material Facts and were deemed to have admitted all facts set forth in Defendants' Statement. Doc. 1-2 at 106–07. Following the hearing, on January 2, 2020, Judge Bobbi J. Rank of the South Dakota Sixth Judicial Circuit Court granted summary judgment and dismissed all of Prelude and Dostal's claims with prejudice. Id. at 106–08.[7]

"In 2023, Plaintiffs requested FERC mediation, which failed." Doc. 1 ¶ 21. On February 6, 2024, Prelude, Mattson, and Dostal filed a petition for enforcement with FERC against Basin, Rosebud, and Grand Electric under Section 210(h)(2)(B) of PURPA alleging "the Cooperatives have violated PURPA by providing false avoided cost information, using all-requirements contracts to circumvent PURPA purchase obligations, rejecting Prelude's power purchase agreements, and not responding to Prelude's interconnection requests." Doc. 1 ¶ 21; Prelude LLC, Thomas Mattson & Edward J. Dostal, 187 FERC ¶ 61,008 (2024) (attached as Exhibit A). On April 4, 2024, FERC declined to initiate an enforcement action against Basin, Rosebud, and Grand Electric. Doc. 1 ¶ 21; Prelude LLC, Thomas Mattson & Edward J. Dostal, 187 FERC ¶ 61,008 (2024). FERC, on July 10, 2024, denied a request to reconsider this decision. Doc. 1-2 at 5–6.

Following FERC's Notice of Intent Not to Act, Prelude, Mattson, and Dostal filed a pro se complaint against Defendants in the Eastern District of Wisconsin on August 6, 2024. Doc. ¶ 22;

---

were not dealing with the plaintiffs in good faith. The fact is that the plaintiffs didn't request this information prior to initiating the litigation . . . .

Doc. 1-2 at 78–79.

[7] Plaintiffs allege that Judge Rank dismissed their case for lack of jurisdiction "without addressing the merits," but that allegation is not supported by the state court order attached to the Complaint. See Doc. 1 ¶ 43; Doc. 1-2 at 107 (dismissing PURPA claims with prejudice "as Plaintiffs have failed to adduce any evidence supporting such claims, and that monetary damages are not awardable on claims arising under PURPA").

Doc. 1-2 at 49. When Prelude failed to obtain counsel, the court dismissed it as a party. Doc. 1-2 at 49. As explained above, Prelude then assigned its claims for $1 to Mattson with Mattson signing for Prelude and himself. Doc. 1 ¶ 24; Doc. 1-2 at 60–62. On April 8, 2025, the Eastern District of Wisconsin dismissed the case for lack of personal jurisdiction. Doc. 1 ¶ 22; Doc. 1-2 at 57. Plaintiffs then filed the present case on May 8, 2025. Doc. 1. Based on the litigation history, Plaintiffs allege that Defendants have made inconsistent forum arguments and should be judicially estopped from contesting this Court's jurisdiction or that the statute of limitations has run in the present case. Id. ¶¶ 11, 44.

The Complaint alleges eleven causes of action: (1) Interconnection Denials in Violation of PURPA; (2) False Avoided Costs in Violation of PURPA; (3) Purchase Power Agreement (PPA) Rejection in Violation of PURPA; (4) Pattern of Racketeering Activity in Violation of RICO, which this Court liberally construes as alleging a violation of 18 U.S.C. § 1962(c)[8]; (5) Fraudulent

---

[8] In Count 4, Plaintiffs do not identify a subpart of 18 U.S.C. § 1962 that Defendants allegedly violated but rather refer generally to a pattern of racketeering activity. See Doc. 1 ¶ 53; 18 U.S.C. § 1964(c) (creating a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter"). Within this Count, Plaintiffs cite four cases: Otter Tail Power Co. v. United States, 410 U.S. 366 (1973); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985); and Sidney Hillman Health v. Abbott Labs, Inc., 782 F.3d 922 (7th Cir. 2015). Doc. 1 ¶ 53. Otter Tail Power Co. concerns an alleged violation of the Sherman Act, 15 U.S.C. § 2, not RICO, see 410 U.S. at 368, H.J. Inc. concerns alleged violations of all subparts of 18 U.S.C. § 1962, see 492 U.S. at 233, Sedima concerns alleged violations of § 1962(c), see 473 U.S. at 484, and Sidney Hillman Health concerns alleged violations of § 1962(c) and (d), see Class Action Complaint, Sidney Hillman Health v. Abbott Labs, Inc., No. 13-cv-5865, 2013 WL 8481800 (N.D. Ill. Aug. 16, 2013).

Although the phrase "pattern of racketeering activity" appears in all subparts of 18 U.S.C. § 1962, reading Count 4 with Count 8, which alleges a conspiracy under § 1962(d) to violate § 1962(c), this Court liberally construes this Count as pleading a violation of 18 U.S.C. § 1962(c). See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed pro se is to be liberally construed, [] and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (cleaned up and citations omitted)).

Concealment; (6) Fraudulent Backdating of Avoided Costs in Violation of PURPA; (7) Discriminatory PPA Penalties in Violation of PURPA; (8) Conspiracy in Violation of 18 U.S.C. § 1962(d) (RICO); (9) Discriminatory Rate Offers in Violation of PURPA; (10) Conspiracy to Restrain Qualifying Facilities (QF) Trade in Violation of 15 U.S.C. §§ 1–2 (Sherman Act); and (11) Bad Faith and Litigation Misconduct. Id. ¶¶ 50–60. Plaintiffs seek damages, injunctive relief, and a declaratory judgment. See id. at 38–40. Plaintiffs allege that they have suffered $3.34 billion in losses. Doc. 26 at 53 (citing Ex. MM).

Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and a Motion to Strike Portions of the Complaint under Rule 12(f). Docs. 15, 16. Defendants argue that (1) this Court lacks subject-matter jurisdiction over Plaintiffs' PURPA claims; (2) Plaintiff Dostal lacks standing; (3) Plaintiffs' claims are barred by res judicata; (4) Plaintiffs fail to state a claim under PURPA, RICO, or the Sherman Act, and Plaintiffs fail to state a fraudulent concealment claim; (5) Plaintiffs' claims under RICO and the Sherman Act are barred by the applicable statutes of limitations; (6) Plaintiffs seek remedies unavailable under PURPA; (7) Plaintiffs lack antitrust standing; (8) Plaintiffs' bad faith claim fails as a matter of law; (9) this Court should strike Mattson's claims because he is attempting to circumvent the rule LLCs must be represented by counsel; and (10) this Court should strike portions of the Complaint containing legal argument. Doc. 16. Plaintiffs filed a Response Brief titled, "Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and Motion to Strike, and Motion for De Novo Review of 2020 State Court Order." See Doc. 26. Following Plaintiffs' Response Brief, Defendants included in their Reply a catalog of how "Plaintiffs' response brief contain[ed]

---

Defendants have also interpreted Count 4 as asserting a claim under 18 U.S.C. § 1962(c). Doc. 16 at 20.

fictitious cases, incorrect case citations, and non-existent quotations." Doc. 35 at 9. Plaintiffs responded again to the Reply and filed a "Notice of Corrected Citations." Docs. 36, 37. This Court now grants Defendants' Motion to Dismiss.

## II.   PURPA Claims

Plaintiffs allege six separate violations of PURPA: (Count 1) Interconnection Denials; (Count 2) False Avoided Costs; (Count 3) PPA Rejection; (Count 6) Fraudulent Backdating of Avoided Costs; (Count 7) Discriminatory PPA Penalties; and (Count 9) Discriminatory Rate Offers. Doc. 1 ¶¶ 50–52, 55–56, 58. Counts 1, 2, and 6 name all Defendants, and Counts 3, 7, and 9 name only Defendant Basin. Id. Defendants move to dismiss these counts for lack of jurisdiction, lack of standing for Plaintiff Dostal, being barred by res judicata, failing to state a claim, being barred by the applicable statutes of limitations, and seeking remedies unavailable under PURPA. Doc. 16 at 11–20.

### A. Jurisdiction Over PURPA "As-Applied" Challenges

Defendants first move to dismiss claims brought under PURPA for lack of jurisdiction. See id. at 11–13. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Such a challenge can be either facial or factual in nature. Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept

a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). When determining whether to grant a Rule 12(b)(6) motion for failure to state a claim, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal quotations and citation omitted).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (citation omitted); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction[,] . . . the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation omitted). Therefore, in deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730. The challenge to subject matter jurisdiction in this case has both facial and factual dimensions to it. Plaintiffs' Complaint refers to and attaches documents from the prior litigation

10

and decisions in state and federal courts, so this Court can refer to the prior decisions whether the challenge is facial or factual. See Zean, 858 F.3d at 526.

"[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility to consider sua sponte the Court's subject matter jurisdiction where the Court believes that jurisdiction may be lacking." Id. (cleaned up and citation omitted). This Court first turns to the text and judicial interpretation of PURPA to determine whether it has jurisdiction over Plaintiffs' PURPA claims.

Congress passed PURPA in response to a national energy crisis "to encourage cogeneration and small power production, and to encourage geothermal small power production facilities," and provided for rulemaking authority for federal and state regulatory agencies. See 16 U.S.C. § 824a-3; see also FERC v. Mississippi, 456 U.S. 742, 756–57 (1982) (reviewing the legislative history of PURPA). PURPA "contains essentially three requirements: (1) § 210 has the States enforce standards promulgated by FERC; (2) Titles I and III direct the States to consider specified ratemaking standards; and (3) those Titles impose certain procedures on state commissions." Id. at 759. Under PURPA, electric utilities are required "to buy *all* the power produced by alternative energy generators . . . Qualifying Cogeneration Facilities ('QFs')," and "to pay the same rate they would have if they had obtained that energy from a source other than the QFs," thereby guaranteeing QFs "their choice of this 'avoided cost' rate as calculated either at the time of contracting or the time of delivery." Winding Creek Solar LLC v. Peterman, 932 F.3d 861, 862 (9th Cir. 2019) (citing 18 C.F.R. §§ 292.303(a), 292.304); see also Great Divide Wind Farm 2 LLC v. Becenti Aguilar, 405 F. Supp. 3d 1071, 1089, 1091 (D.N.M. 2019) ("PURPA created a

market for the power generated by QFs by requiring electric utilities to purchase energy generated by QFs and by instructing the FERC to promulgate rules to ensure that the rates for such purchases are just and reasonable and do not discriminate against QFs." (citation omitted)).

PURPA differentiates which court has jurisdiction based on whether a plaintiff brings an "as-implemented" challenge or an "as-applied" challenge against a state utility commission or a nonregulated electric entity. Allco Renewable Energy Ltd. v. Mass. Elec. Co., 875 F.3d 64, 69 (1st Cir. 2017) (citing 16 U.S.C. §§ 824a-3(h)(2)(A)–(B), 824a-3(g)); Great Divide Wind Farm 2 LLC, 405 F. Supp. 3d at 1075–76; id. at 1091 n.9 (citing 16 U.S.C. § 824a-3(f)-(h)). "As-implemented challenges attack rules or practices of general applicability for violating PURPA or the FERC regulations," and these kinds of challenges "involve[] a contention that the state agency" or nonregulated electric entity "has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA." Great Divide Wind Farm 2 LLC, 405 F. Supp. 3d at 1092–93 (collecting cases) (quoting Power Res. Grp., Inc. v. Pub. Util. Comm'n of Texas, 422 F.3d 231, 235 (5th Cir. 2005)). In contrast, "an as-applied claim involves a contention that the . . . implementation plan is unlawful, as it applies to or affects an individual petitioner." Id. at 1095 (quoting Power Res. Grp., Inc., 422 F.3d at 235).

Under PURPA, as-implemented challenges must be brought in federal courts, and as-applied challenges must be brought in state court. Allco Renewable Energy Ltd., 875 F.3d at 69 (citing 16 U.S.C. §§ 824a-3(h)(2)(A), 824a-3(h)(2)(B), 824a-3(g))). Therefore, this Court has subject-matter jurisdiction over as-implemented challenges but lacks jurisdiction over as-applied challenges, which belong in state courts' exclusive jurisdiction. Great Divide Wind Farm 2 LLC, 405 F. Supp. 3d at 1075–76; E. Ky. Power Coop., Inc. v. Ky. Pub. Serv. Comm'n, No. 3:22-CV-00063, 2024 WL 3997810, at *3 (E.D. Ky. Aug. 29, 2024) (citing Exelon Wind 1, L.L.C. v.

12

Nelson, 766 F.3d 380, 388 (5th Cir. 2014)). Any party wishing to bring an as-implemented challenge must first petition FERC to bring that challenge, but "[s]hould FERC decline that invitation," the party may bring the challenge in federal court. Allco Renewable Energy Ltd., 875 F.3d at 72 (citing 16 U.S.C. § 824a-3(h)(2)(B)). In deciding an as-implemented challenge before it, a federal court "may issue such injunctive or other relief as may be appropriate." 16 U.S.C. § 824a-3(h)(2)(B).

Defendants argue that this Court lacks subject-matter jurisdiction over Plaintiffs' PURPA claims (Counts 1, 2, 3, 6, 7, and 9) because Plaintiffs have brought as-applied challenges, cognizable only in state court. Doc. 16 at 11–13. In response, Plaintiffs argue that the state court "expressly disclaim[ed]" having jurisdiction over PURPA issues related to data claims and that "FERC's 2024 declination (187 FERC 61,008) and its 2025 order finding Basin's interconnection procedures non-compliant (190 FERC 61,170) trigger de novo federal enforcement under 16 U.S.C. § 824a-3(h)(2)(B)." Doc. 26 at 29–30. Plaintiffs thereby argue that these claims are as-implemented challenges within federal jurisdiction. See id. at 31–33; Erickson, 551 U.S. at 94.

When differentiating between as-applied and as-implemented challenges, courts consider whether the requested relief focuses on a specific order affecting the QF (as-applied challenge) rather than the lawfulness of a rule's general application (as-implemented challenge). See, e.g., Exelon Wind 1, L.L.C., 766 F.3d at 390; Great Divide Wind Farm 2 LLC, 405 F. Supp. 3d at 1098; Mass. Inst. of Tech. v. Mass. Dep't of Pub. Utils., 941 F. Supp. 233, 238 (D. Mass. 1996). For example, one type of "as-applied claim challenges 'the calculation of a specific avoided cost[ ] rate.'" CED Red Lake Falls Cmty. Hybrid, LLC v. Minn. Pub. Utilities Comm'n, No. 19-CV-1468, 2020 WL 780055, at *3 (D. Minn. Feb. 18, 2020) (quoting Swecker v. Midland Power Coop, 807 F.3d 883, 886 (8th Cir. 2015)); see also Greensboro Lumber Co. v. Georgia Power Co., 643

F. Supp. 1345, 1374–75 (N.D. Ga. 1986) ("Any subsequent claim that a nonregulated utility has failed to adhere to its own implementation plan in its dealings with a particular qualifying facility must be bought in state court, which has exclusive jurisdiction 'to enforce any requirement' of a nonregulated utility's implementation plan." (citing 16 U.S.C. § 824a–3(g)(2)). FERC specifically provided examples of as-applied challenges in its Policy Statement, including a QF's allegation that "a particular electric utility, subject to the State regulatory authority's jurisdiction, refuses to negotiate," as it "involves the application of a State-established rule and would properly lie before a State judicial forum of competent jurisdiction," or an allegation "that a contract offered to it by the nonregulated utility contains unreasonable interconnection requirements." Windway Techs., Inc. v. Midland Power Coop., No. C00-3089, 2001 WL 1248741, at *7 (N.D. Iowa Mar. 5, 2001) (citation omitted). Generally, plaintiffs bring as-implemented challenges when their claims concern "an order that interprets a PURPA regulation or announces a bright-line rule," but when a nonregulated utility or state commission "does not clearly announce a rule in the order, any challenge to the order is an as-applied challenge." CED Red Lake Falls Cmty. Hybrid, LLC, 2020 WL 780055, at *3 (citing Exelon Wind 1, L.L.C., 766 F.3d at 390–91). With this guidance in mind, this Court considers each PURPA count alleged by Plaintiffs.

Count 1 alleges that Defendants have refused to process and have delayed facilitating interconnection requests for Plaintiffs' QFs. Doc. 1 ¶ 50 (citing Exhibits S and T showing interconnection requests). Plaintiffs allege that denying them access to their guaranteed transmission grid violates of FERC Order Nos. 888, 2222, and 2023. Id. Plaintiffs request that this Court "[o]rder Rosebud, Grand, and Moreau-Grand to produce all South Dakota PUC-required interconnection forms and compel Basin Electric to cease obstructing or delaying interconnection of Plaintiffs' Qualifying Facilities (QFs), in accordance with 18 C.F.R. § 292.303." Id. at 38. This

14

count plainly requests relief that focuses on a specific order affecting Plaintiffs' QFs rather than the lawfulness of a rule's general application. See Exelon Wind 1, L.L.C., 766 F.3d at 390; Great Divide Wind Farm 2 LLC, 405 F. Supp. 3d at 1098; Mass. Inst. of Tech., 941 F. Supp. at 238. The claim in Count 1 about Defendants not having connected Plaintiffs' QFs to the transmission grids is an action that specifically impacts Plaintiffs and not an as-implemented challenge. See CED Red Lake Falls Cmty. Hybrid, LLC, 2020 WL 780055, at *3 (citing Exelon Wind 1, L.L.C., 766 F.3d at 390–91). Previous courts and the FERC policy statement have identified disputes about interconnection as examples of as-applied challenges to be raised in front of a state judicial forum. See Windway Techs., Inc., 2001 WL 1248741, at *7. Therefore, the jurisdictional grant to federal district courts as contained in PURPA does not extend to Count 1, and PURPA does not vest this Court with jurisdiction over the as-applied challenge contained in Count 1.

Count 2 alleges that Defendants misrepresented avoided cost data in 2013 and later perjured themselves in state court proceedings by representing that Plaintiffs had never requested that information. Doc. 1 ¶ 51. Plaintiffs ask this Court to "[e]njoin Defendants from making further misrepresentations regarding PURPA obligations, avoided cost rates, QF eligibility, or project rights in any regulatory or judicial forum." Id. at 40. Plaintiffs argue that Defendants' 2013 quote was contradicted by their 2016 disclosure of a higher avoided cost price. Count 2 constitutes an as-applied challenge given that it concerns "the calculation of a specific avoided cost[ ] rate." CED Red Lake Falls Cmty. Hybrid, LLC, 2020 WL 780055, at *3 (citation omitted). See also Greensboro Lumber Co., 643 F. Supp. at 1374 ("Any subsequent claim that a nonregulated utility has failed to adhere to its own implementation plan in its dealings with a particular qualifying facility must be bought in state court . . . ." (citing 16 U.S.C. § 824a–3(g)(2)). The allegations in Count 2 parallel the FERC policy statement's example of an as-applied

challenge to "a particular electric utility, subject to the State regulatory authority's jurisdiction, [who] refuses to negotiate," as it "involves the application of a State-established rule and would properly lie before a State judicial forum of competent jurisdiction." Windway Techs., Inc., 2001 WL 1248741, at *7 (citation omitted). Defendants' alleged perjury in state court[9] is also an action specifically taken against Plaintiffs, and to the extent PURPA conceivably provides relief for this part of the claim, it would fall within in the as-applied challenge category. Therefore, the jurisdictional grant to federal district courts as contained in PURPA does not extend to Count 2, which contains an as-applied challenge exclusively within state court PURPA jurisdiction.

Count 3 alleges that Basin rejected Plaintiffs' signed PPAs and seeks enforcement of these contracts, adjusted for inflation, as well as "damages for the resulting harm." Doc. 1 ¶ 52; id. at 39. Like Counts 1 and 2, this claim seeks the enforcement of specific contracts between Plaintiffs and Defendants and thus is an as-applied challenge outside of federal PURPA jurisdiction. See Greensboro Lumber Co., 643 F. Supp. at 1374–75.

Count 6 alleges that Defendants backdated avoided cost rates in violation of regulations governing utilities' cost setting and disclosure obligations. Doc. 1 ¶ 55. Plaintiffs further allege Defendants aimed to invalidate prior avoided cost values and prevent the execution of Plaintiffs' PPAs through this fraudulent backdating of avoided cost rates. Id. Count 6 constitutes an as-applied challenge given that it concerns "the calculation of a specific avoided cost[ ] rate" and appears to also seek the enforcement of specific contracts between Plaintiffs and Defendants. CED Red Lake Falls Cmty. Hybrid, LLC, 2020 WL 780055, at *3 (citation omitted); Greensboro Lumber Co., 643 F. Supp. at 1374–75; see also Doc. 1 ¶ 55 (requesting "declaratory and injunctive

---

[9] The alleged perjury consists of statements by Defendants' counsel during a motion hearing, at which Prelude was represented and Dostal was participating pro se. Doc. 1 ¶ 39; Doc. 1-2 at 79. See supra note 6.

relief"). Therefore, the jurisdictional grant to federal district courts as contained in PURPA does not extend to Count 6, an as-applied challenge exclusively within state court PURPA jurisdiction.

Count 7 alleges that Basin violated PURPA "by imposing excessive and discriminatory penalty provisions in its proposed power purchase agreements (PPAs) for Plaintiffs' Qualifying Facilities (QFs)." Doc. 1 ¶ 56. Plaintiffs reference a PPA publicly disclosed in 2023 allegedly with a $167,000 per megawatt penalty provision and a 2014 letter from Basin as illustrations that Basin sought to apply inappropriate penalties "broadly to QF developers." Id. Plaintiffs allege this to be "use [of] contract provisions to evade [Basin's] PURPA obligations" designed to "deter independent QFs—like Plaintiffs' wind projects—from entering the market," contrary to PURPA. Id.

These allegations in Count 7 appear to present an as-applied challenge, in that they allege Basin refused to negotiate properly and presented a contract containing unreasonable requirements. Windway Techs., Inc., 2001 WL 1248741, at *7. Count 7 seeks broad injunctive relief from Basin's practices, but it is not directed at "an order that interprets a PURPA regulation or announces a bright-line rule." CED Red Lake Falls Cmty. Hybrid, LLC, 2020 WL 780055, at *3 (citation omitted). Rather, Count 7 essentially raises an issue with "a contract offered to it by the nonregulated utility [as] contain[ing] unreasonable interconnection requirements," which is an as-applied challenge seeking redress for Plaintiffs' particular contract. See Windway Techs., Inc., 2001 WL 1248741, at *7.

Count 9 alleges that Basin offered Plaintiffs discriminatory rates as compared to South Dakota Wind Partners, which "prevented Plaintiffs from entering power purchase agreements, rendering their QFs financially infeasible." Doc. 1 ¶ 58. Plaintiffs seek damages for lost opportunities or lost wind farms, and an order "requiring Basin to sign the 2016 ppa [sic] at Basin's

17

2019 purchased generation rate . . . or based upon the LEO today's rate whichever is higher." Id. As with the previous claims, this claim revolves around the specific negotiations between Plaintiffs and Defendants. Therefore, it is an as-applied challenge, and this Court is without jurisdiction. See Windway Techs., Inc., 2001 WL 1248741, at *7; Greensboro Lumber Co., 643 F. Supp. at 1374–75.

As this Court lacks jurisdiction over the as-applied PURPA claims in Counts 1, 2, 3, 6, 7, and 9, these claims must be dismissed without prejudice. Hart, 630 F.3d at 1091.

### B. Res Judicata

Defendants also move to dismiss Plaintiffs' PURPA claims under Fed. R. Civ. P. 12(b)(6) by arguing that the principle of res judicata bars these claims. Doc. 16 at 16. The doctrine of res judicata includes both claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008); see also Am. Fam. Ins. Grp. v. Robnik, 787 N.W.2d 768, 774 (S.D. 2010). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit[,]'" while "[i]ssue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892 (quoting New Hampshire v. Maine, 532 U.S. 742, 748–49 (2001)). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. (cleaned up) (quoting Montana v. United States, 440 U.S. 147, 153–54 (1979)). This Court finds that even if it had jurisdiction under PURPA over Counts 1, 2, 3, 6, 7, and 9, its review of these counts would be barred by res judicata.

18

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). This Court thus looks to South Dakota law to define the preclusive effect of the prior final judgment against Plaintiffs in Prelude, L.L.C., and Edward J. Dostal v. Basin Electric Power Cooperative, Rosebud Electric Cooperative, Inc., Butte Electric Cooperative, Inc., Grand Electric Cooperative, Inc., Moreau-Grand Electric Cooperative, Inc., and Rushmore Electric Power Cooperative, Inc., No. 61-CV-15-000050 (6th Judicial Cir. 2020). See Hanig v. City of Winner, 527 F.3d 674, 676 (8th Cir. 2008) (stating that federal courts "must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . . [T]he issue we must decide turns on the South Dakota law of issue and claim preclusion." (internal citation omitted)).

While South Dakota law recognizes the difference between claim and issue preclusion, see Merchs. State Bank v. Light, 458 N.W.2d 792, 793–94 (S.D. 1990), it has applied the same four elements in both claim and issue preclusion cases:

> (1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication.

Dakota, Minn. & E. R.R. Corp. v. Acuity, 720 N.W.2d 655, 661 (S.D. 2006). When applying the elements of res judicata, "a court should construe the doctrine liberally, unrestricted by technicalities. However, because the doctrine bars any subsequent litigation, it should not be used to defeat the ends of justice." People ex rel. L.S., 721 N.W.2d 83, 90 (S.D. 2006).

"Res judicata applies only if the second action is brought on the same 'cause of action' as the first." Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994) (citation omitted). "A cause of

action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce."

Merchs. State Bank, 458 N.W.2d at 794.  South Dakota has often stated that the test to determine

whether a cause of action is the same is "whether the wrong sought to be redressed is the same in

both actions."  Hicks, 31 F.3d at 746; Nelson v. Hawkeye Sec. Ins. Co., 369 N.W.2d 379, 381

(S.D. 1985); Hanig, 527 F.3d at 676.  "To make this determination, South Dakota law requires we

look to the underlying facts which give rise to each cause of action."  Hicks, 31 F.3d at 746; see

also Frigaard v. Seffens, 599 N.W.2d 646, 648–49 (S.D. 1999) (stating "[t]he same transaction is

again at issue involving precisely the same subject matter and parties" (emphasis added)); Bank of

Hoven v. Rausch, 449 N.W.2d 263, 266–67 (S.D. 1989) (holding res judicata applied since the

second claim "arose out of the transaction or occurrence that was the subject matter of the [other

party's] claim" (emphasis added)).  The Eighth Circuit has noted that South Dakota res judicata

law uses language and analysis consistent with the "nucleus of operative fact" approach.  Ruple v.

City of Vermillion, 714 F.2d 860, 861–62 (8th Cir. 1983) ("It is now said, in general, that if a case

arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a

former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of

res judicata . . . .  The Supreme Court of South Dakota has recently made clear that it adheres to

the practical definition of 'cause of action' just discussed.").

        As to the first factor, the issues presented in the case before Judge Rank in the Sixth Judicial

Circuit appear to be identical to those presented to this Court in Counts 1, 2, 3, 6, 7,[10] and 9.

Plaintiffs previously brought three claims under PURPA in the state case: (1) that "Basin Electric

---

[10] Count 7 is a bit different than what was plead in state court and seeks relief not only as to
Plaintiffs but also other QFs who may face penalty provisions in Basin's PPAs.  This does not
render Count 7 outside of res judicata as the claim shares a common nucleus of fact with the state-
court litigation.

did not correctly calculate its avoided cost rate for purposes of purchasing output, a Prelude qualifying wind farm"; (2) that "Basin did not provide Prelude with data and information required by PURPA and FERC regulations implementing PURPA"; and (3) that "Basin did not negotiate in good faith with Prelude." Doc. 1-2 at 98 (transcript of summary judgment hearing). Basin is the all-requirements power supply contractor to the other defendants named in the state court action, some of which are named in this case as well. Plaintiffs argue that material new facts post-date the 2020 decision, including 2020–25 refusals and later FERC decisions. Doc. 26 at 36–37. But the PURPA "as-applied" challenges—Counts 1, 2, 3, 6, 7, and 9—arise out of the same nucleus of facts where "the wrong sought to be redressed is the same" as in the prior state court litigation. In the prior state case, "the wrong sought to be redressed" concerned Plaintiffs' dealings with the named defendant utility companies over Plaintiffs' proposed QFs and whether those utility companies' actions violated PURPA as applied to Plaintiffs. Plaintiffs' Prayer for Relief seeks the same remedies sought in the state court proceedings on these counts, and Plaintiffs' Response to the Motion to Dismiss tellingly is in part titled, "Motion for De Novo Review of 2020 State Court Order." Docs. 1, 26. The first element of res judicata is met for the PURPA claims concerning events that predate the state court's 2020 judgment as they arise out of the same nucleus of facts as the underlying state case.[11]

The second element of res judicata under South Dakota law is satisfied because the prior litigation resulted in a final judgment from a court of competent jurisdiction, which, as analyzed

---

[11] Plaintiffs argue that allegations of new material facts should not allow for the application of the res judicata doctrine to their PURPA claims. But even if Plaintiffs' as-applied PURPA claims based on the post-2020 allegations are not barred by res judicata, this Court is still without jurisdiction over those claims as discussed above.

above, had exclusive jurisdiction over the Plaintiffs' as-applied PURPA claims. Plaintiffs argue that the state court did not have jurisdiction. See Doc. 26 at 29, 36–37. As explained above, the state court did have jurisdiction over the as-applied claims Plaintiffs raised in their earlier case. Prelude and Dostal initiated the case invoking state court jurisdiction, and the state court did not dismiss based on an absence of jurisdiction. See Doc. 1-2 at 107. On January 2, 2020, Judge Rank issued a written order and judgment granting Defendants' motion for summary judgment on Plaintiffs' claims brought under PURPA and dismissing those claims with prejudice. Id. The second element of res judicata is met for the PURPA claims concerning events that predate the state court's 2020 judgment.

The third element of res judicata—that the parties are the same or in privity—is also met here. In determining who constitutes a party to an action for "the purpose of determining the conclusiveness of prior judgments, the courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment that may be rendered." JAS Enters., Inc. v. BBS Enters., Inc., 835 N.W.2d 117, 125 (S.D. 2013) (cleaned up and citation omitted). Here, there is some variation as to which parties in this present case were parties to the prior cases litigating the PURPA issues, but each Defendant claiming res judicata litigated in the previous matters where preclusive effect can be applied to claims by Mattson, the owner of Prelude, and Dostal. See Prelude, No. 61-CV-15-000050 (claims including those of Prelude and Dostal against Basin, Rosebud, Butte, Grand Electric, and Moreau-Grand). Mattson alleges that his rights to pursue the claims in the present suit were assigned to him by Prelude, a plaintiff in the state-court case. Doc. 1 ¶ 24. He has no rights against these Defendants beyond those that Prelude, the litigant

in the state court case, possessed. Therefore, the third element of res judicata is met for the PURPA claims concerning events that predate the state court's 2020 judgment.

The fourth and final element for res judicata under South Dakota law is that the party against whom res judicata is being asserted had a full and fair opportunity to litigate the issues in the prior adjudication. Claim preclusion in South Dakota applies not only to "relitigation of issues previously heard and resolved; it also bars prosecution of claims that could have been raised in the earlier proceeding, even though not actually raised." Am. Fam. Ins. Grp., 787 N.W.2d at 775 (citation omitted). "When a party to litigation fails to develop all of the issues and evidence available in a case, the party is not justified in later trying the omitted issues or facts in a second action based on the same claim," id. (citation omitted), even if evidence is not discoverable during the litigation, Est. of Johnson ex rel. Johnson v. Weber, 898 N.W.2d 718, 733 (S.D. 2017) (collecting and listing cases).

Plaintiffs had a prior opportunity to present claims now contained in Counts 1, 2, 3, 6, 7, and 9, and they did present versions of these claims in the state court litigation. Compare Doc. 1-2 at 98 with Doc. 1 ¶¶ 50–52, 55, 56, 58. Prelude and Dostal filed the state court case in 2015 and litigated it to its conclusion in 2020. Even if this Court were to construe the present claims as distinct from the claims previously raised before the state court, given that these as-applied challenges arise out of the same nucleus of facts, they could have been raised in the earlier proceeding and therefore are barred by res judicata. Plaintiffs argue that the prior record is tainted by perjury and concealment, which should "defeat[] preclusion," particularly due to what Defendants' counsel said during the state-court motion hearing. Doc. 26 at 36–37. Plaintiffs attached the state court transcript to their Complaint, which belies contentions of perjury and concealment and contains discussion of what Defendants produced. See Doc. 1-2 at 77–79; see

also supra note 6. Prelude's counsel and Dostal participated in this hearing and had the opportunity to raise with the state court any concern that Defendants' counsel may be committing perjury or misleading Judge Rank. See id. Neither Prelude's counsel nor Dostal did so. [12] The fourth element of res judicata is met for the majority of the PURPA claims concerning events that predate the state court's 2020 judgment. The doctrine of res judicata bars the relief Plaintiffs seek from the Court for Counts 1, 2, 3, 6, 7, and 9.

### C. Failure to State a PURPA Claim and PURPA Remedies

Finally, Defendants argue that Plaintiffs have failed to plead a claim under PURPA and improperly seek damages under PURPA because PURPA does not have a provision for monetary damages. Doc. 16 at 19 (citing Allco Renewable Energy Ltd. v. Mass. Elec. Co., 208 F. Supp. 3d 390, 397 (D. Mass. 2016)). Defendants argue that PURPA does not provide for a private right of action. Doc. 16 at 19 (citing Allco Renewable Energy Ltd., 875 F.3d at 66). In Allco, the First Circuit concluded that Congress did not intend to provide a private right of action in section 210 of PURPA "apart from the enforcement mechanisms it expressly contemplates." See 875 F.3d at 69–70. PURPA allows QFs to petition FERC to initiate enforcement actions "against a State regulatory authority or nonregulated electric utility," and if FERC declines to initiate the requested enforcement action, "the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements." 16 U.S.C. § 824a-3(h)(2)(B).

This Court considered whether a portion of Count 7 might be an as-implemented challenge in alleging that Basin, a nonregulated electric utility, has not complied with the requirements of

---

[12] Even taking Plaintiffs' allegations as true that this judgment was tainted by Defendants' perjury, this Court is still without jurisdiction over Plaintiffs' as-applied challenges.

PURPA by including excessive and discriminatory penalty provisions generally in the proposed PPAs. Doc. 1 ¶ 56. Nonelectric utility companies are allowed to have penalty provisions within their contracts. See 18 C.F.R. § 292.304(e)(2)(ii)(C) (listing factors affecting rates for purchases such as "[t]he availability of capacity or energy from a qualifying facility during the system daily and seasonal peak periods, including: . . . [t]he terms of any contract or other legally enforceable obligation, including the duration of the obligation, termination notice requirement and sanctions for non-compliance."); Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Utils. Comm'n, 36 F.3d 848, 856–57 (9th Cir. 1994) (citing Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of PURPA, 45 Fed. Reg. 12214, 12226 (1980)[13]). To the extent that Plaintiffs are challenging such penalty provisions in a PPA proposed to them or negotiated with them, such a claim is an as-applied challenge exclusively within state court jurisdiction. If Plaintiffs are more generally challenging Basin using a provision in contracts with non-plaintiff QFs, such a claim more arguably might be an as-implemented challenge. See Solar v. City of Farmington, 2 F.4th 1285, 1289–90 (10th Cir. 2021) ("PURPA requires that utilities implement FERC rules, and it empowers federal courts to review whether the utilities' implementation was successful on its face."). But Plaintiffs lack standing to raise such a claim for non-parties. See Allco Fin. Ltd. v. Klee, 805 F.3d 89, 93–98 (2d Cir. 2015), as amended (Dec. 1, 2015) (discussing standing with respective to remedies requested involving contracts between the

---

[13] This passage of the Federal Register discussing utilities' implementation of contractual guarantees specifically contemplated the use of penalty provisions. See Small Power Production and Cogeneration Facilities, 45 Fed. Reg. at 12226 ("Accordingly, the value of the service from the qualifying facility to the electric utility may be affected by the degree to which the qualifying facility ensures by contract or other legally enforceable obligation that it will continue to provide power. Included in this determination, among other factors, are the term of the commitment, the requirement for notice prior to termination of the commitment, *and any penalty provisions for breach of the obligation*." (emphasis added)).

Commissioner and non-parties and concluding that "[b]ecause merely voiding its competitors' contracts would not redress Allco's injury, Allco also lacks standing to seek such equitable relief"); Winding Creek Solar LLC v. Peevey, No. 13-CV-04934, 2014 WL 2735015, at \*4–5 (N.D. Cal. June 11, 2014) (discussing the requirements of constitutional standing and statutory standing under PURPA).

Because this Court lacks jurisdiction over Counts 1, 2, 3, 6, 7, and 9 and further finds that these counts are barred by the doctrine of res judicata, Plaintiffs' PURPA claims as alleged in Counts 1, 2, 3, 6, 7, and 9 are dismissed without prejudice. Hart, 630 F.3d at 1091.

### III.    RICO Claims

Plaintiffs have brought two claims under RICO, Counts 4 and 8. Doc. 1 ¶¶ 53, 57. Plaintiffs allege predicate acts including fraudulent concealment of avoided cost rates from 2009 to 2015, discriminatory rate fraud, and perjury in 2019 for Count 4, and Plaintiffs allege an agreement and joint coordination beginning in 2009 among Defendants to suppress Plaintiffs' QFs by advocating for false avoided cost rates, denying valid interconnection applications, and denying the existence of such requests under oath for Count 8. Id. In their motion to dismiss, Defendants argue that Plaintiffs' RICO counts (1) are barred by the applicable statute of limitations, (2) fail to state a claim, and (3) are barred by the doctrine of res judicata. Doc. 16 at 16–19, 20–24. Plaintiffs respond that the claims are timely, or alternatively, that the claims are equitably tolled, that they have plead "a RICO pattern . . . with mail/wire fraud predicates (false avoided-cost statements; concealment; misrepresentations) alleged with particularity," and that they are not barred by res judicata. Doc. 26 at 36–37, 43–45. This Court finds that the dismissal of these two counts is appropriate on multiple grounds.

## A. Statute of Limitations for Counts 4 and 8

Defendants seek dismissal of Plaintiffs' RICO claims as untimely. Doc. 16 at 20–21. While "[j]udicial economy supports dismissing a complaint for failure to satisfy the statute of limitations," Waldner v. N. Am. Truck & Trailer, 277 F.R.D. 401, 408 (D.S.D. 2011), it is "not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008). Therefore, the plaintiff's own allegations must clearly indicate that the claims are untimely. See 5B Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1357 (4d ed.), Westlaw (September 2025 Update). "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018) (cleaned up and citation omitted).

"Section 1962 of the RICO Act makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012) (cleaned up and citation omitted). RICO provides a private cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter," and allows a person to "sue therefor in any appropriate United States district court and [] recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). See also Dahlgren v. First Nat'l Bank of Holdrege, 533 F.3d 681, 689 (8th Cir. 2008).

"Civil RICO actions are governed by a four-year statute of limitations." Ass'n of Commonwealth Claimants v. Moylan, 71 F.3d 1398, 1402 (8th Cir. 1995); see also Rotella v.

Wood, 528 U.S. 549, 553 (2000). "Although the Supreme Court has not definitively resolved when the statute of limitations begins to run on civil RICO claims, it has said that the clock starts at one of two moments: either when the plaintiff's injury occurs or when the plaintiff should reasonably be able to discover its injury." In re EpiPen Direct Purchaser Litig., No. 20-CV-0827 ECT/TNL, 2021 WL 147166, at *5 (D. Minn. Jan. 15, 2021) (citing Rotella, 528 U.S. at 554–55 & n.2). The Eighth Circuit and in turn this Court have adopted the latter option known as the "injury discovery rule" to determine when an action begins to accrue for civil RICO claims. See Waldner, 277 F.R.D. at 407; Healy v. Fox, 572 F. Supp. 3d 730, 748 (D.S.D. 2021).

The injury discovery rule has both a subjective and objective component. Waldner, 277 F.R.D. at 407. "The court must ask whether the plaintiff actually knew of her injury, and also, using a reasonable person standard, whether she should have known." Id. (cleaned up and citations omitted); see also Hope v. Klabal, 457 F.3d 784, 790 (8th Cir. 2006) ("RICO claims are all subject to the 'discovery rule,' which dictates that the limitations period begins to run when the facts constituting fraud were discovered or, by reasonable diligence, should have been discovered." (cleaned up and citations omitted)). Therefore, "[t]he court must determine the injury underlying [the] RICO claim because that is the moment when the statute of limitations clock start[s]." Anderson v. Wells Fargo Bank, N.A., 266 F. Supp. 3d 1175, 1192 (D.S.D. 2017).

"The injury discovery rule also provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the initial injury happened more than four years before." Kraft v. Off. of Comptroller of Currency, No. 4:20-CV-04111, 2021 WL 3186153, at *3 (D.S.D. July 28, 2021) (cleaned up and citation omitted); Geivett v. AMC Mgmt., LLC, No. 24-3093, 2025 WL 3085998, at *2 (8th Cir. Nov. 5, 2025) (per curiam) ("This court recognizes a 'separate accrual' rule: New RICO claims accrue each time the plaintiff suffers an

28

independent injury on account of the defendant's wrongful conduct."). "However, non-independent injuries will not cause a new cause of action to accrue." Kraft, 2021 WL 3186153, at *3. "Indeed, a new predicate act does not necessarily create a new injury[.]" Id. The "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella, 528 U.S. at 555. "In other words, when a plaintiff exercising reasonable diligence can discover its injury, the limitations period begins to run even if there is 'confusion as to what the actual source of the injury was.'" In re EpiPen Direct Purchaser Litig., 2021 WL 147166, at *5 (quoting Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer, 764 F.3d 1268, 1278–79 (10th Cir. 2014)).

Defendants argue that the allegations revolve around avoided cost rates from 2009 to 2015, discriminatory rates in 2011 and 2013, and false statements to the state court in 2019. See Doc. 16 at 20–21. Defendants highlight specifically that Plaintiffs knew of these injuries because they "filed a complaint against Defendants over the alleged rate violations in 2015." Id. at 21. As noted above, Plaintiffs assert the claims are timely. Doc. 26 at 44.

### 1. Count 4

For Count 4, the main injuries that Plaintiffs allege are the three highlighted by Defendants: avoided cost rates from 2009 to 2015, discriminatory rates in 2011 and 2013, and false statements to the state court in 2019. Doc. 1 ¶ 53. Plaintiffs also allege that since 2020, when the state court issued the decision, Defendants have "persisted" in this behavior. Id. They include in Count 4 the argument that "[t]he 2025 violations trigger the separate accrual rule for new injuries" but do not allege that recent violations are distinct from previous injuries. Id. Rather, "the facts constituting fraud were discovered or, by reasonable diligence, should have been discovered" by the initiation of Plaintiffs' state court case in 2015, which concerned the avoided cost rates, or by the very latest, by the alleged 2019 perjury, during which both Prelude's counsel and Dostal were present. See

Hope, 457 F.3d at 790. Even if the limitations clock were to start from the December 30, 2019 hearing date where Plaintiffs allege perjury occurred, the four-year statute of limitations would have run on Count 4 on December 30, 2023, before Plaintiffs filed the present Complaint or even the earlier version of this suit in the Eastern District of Wisconsin. See Doc. 1-2 at 60 (listing date of hearing).

Plaintiffs have described Defendants' behaviors as "persisting" following that alleged 2019 perjury, making it clear that any more recent behaviors are not independent injuries triggering a separate accrual rule. Kraft, 2021 WL 3186153, at *3 ("Indeed, a new predicate act does not necessarily create a new injury[.]"). Equitable tolling is not appropriate or warranted in this case where Plaintiffs knew or should have known of the underlying injuries for the past ten years since the filing of their state court suit. See Rotella, 528 U.S. at 560–61 (noting "where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty"). Therefore, as the statute of limitations has run, Count 4 is dismissed with prejudice.

### 2. Count 8

The RICO claim in Count 8 fails for the same reasons. The alleged predicate acts of advocating false avoided cost rates, denying data requests, and denying valid interconnection applications were all at least known by Plaintiffs at the time of the filing of their 2015 state court suit. See Doc. 1 ¶ 57; Hope, 457 F.3d at 790. Plaintiffs again rely on the alleged act of perjury in December of 2019 as an independent injury, which, as noted above, appears to relate directly to the data disputes and therefore does not constitute an independent injury. Id. But like Count 4, even if the alleged perjury did count as an independent injury, Plaintiffs would still have only until December 30, 2023 to file Count 8.

In describing Defendants' other acts, Plaintiffs allege that "[t]heir unified opposition continued through 2025, as demonstrated by joint refusal to update avoided cost data [] and their coordinated positions before FERC and federal courts." Doc. 1 ¶ 57. Similar to the "persisting" behavior alleged in Count 4, this alleged "continued" behavior and "refusal to update" in Count 8 do not constitute independent injuries triggering a separate accrual rule. See Kraft, 2021 WL 3186153, at *3. As with Count 4, equitable tolling is not appropriate or warranted where Plaintiffs presumably knew of the underlying injuries for the last ten years. See Rotella, 528 U.S. at 560–61. Therefore, as the statute of limitations has run, Count 8 is dismissed with prejudice.

### B. Failure to State a RICO Claim

Defendants also argue that Plaintiffs have failed to state a claim under RICO in Count 4 and Count 8. Doc. 16 at 20–22. On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc., 696 F.3d at 768–69. To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid

of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

### 1. Count 4

"RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions." Dahlgren, 533 F.3d at 689 (quoting 18 U.S.C. § 1964(c)). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011). "To state a claim under § 1962(c), a plaintiff must establish: (1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." Rolfes v. MBNA Am. Bank N.A., 416 F. Supp. 2d 745, 751 (D.S.D. 2005) (quoting In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig., 340 F.3d 749, 767 (8th Cir. 2003)). Defendants argue that Plaintiffs have not pleaded any of these elements as to any Defendant. Doc. 16 at 22. This Court will address each of the elements in turn.

"[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). Construed liberally, the Complaint alleges that Defendants acted with the common or shared purpose of being "unified by the intent to suppress Plaintiffs' QFs" over the course of seventeen years. Doc. 1 ¶ 53. Emails and letters attached as Plaintiffs' exhibits reflect contractual relationships among Basin, Rosebud, Grand-Electric, and Moreau-Grand (through Rushmore) and

32

an effort by Plaintiffs to obtain a PPA for their planned QFs. Doc. 1-3 at 5, 8, 13, 16, 19, 23, 31, 88–89; Doc. 1-7 at 74–75. Plaintiffs allege that Defendants have been involved in this conduct continuously from 2008 to 2025. Id. Plaintiffs have pleaded sufficient facts to establish the existence of an enterprise. See Boyle, 556 U.S. at 946.

The second element for a RICO claim is "the requisite degree of participation in the conduct of the affairs of the enterprise to impose liability under RICO" as required by the conduct in association with enterprise element of a § 1962(c) claim. See Nolte v. Pearson, 994 F.2d 1311, 1317 (8th Cir. 1993). A party "is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993); see also id. at 184 (listing example of one who exerts control by bribery). "In order to participate, directly or indirectly, in the conduct of [an] enterprise's affairs, one must have some part in directing those affairs." Id. at 179 (cleaned up). In Count 4 itself, Plaintiffs plead "coordinated obstruction" among the Defendants. Doc. 1 ¶ 53. Attached emails and letters show that Defendant Basin set the avoided cost rate for all named Defendants. See, e.g., Doc. 1-3 at 88. Construed liberally and read along with all of the attachments, the Complaint has pleaded sufficient facts to satisfy the second element of a § 1962(c) claim.

But Plaintiffs have failed to adequately plead the third element of a RICO claim—at least two predicate acts of racketeering. See Rolfes, 416 F. Supp. 2d at 751. Predicate acts of racketeering activity are defined in 18 U.S.C. § 1961(1), which extensively, and exhaustively, lists acts that expose a defendant to civil (or criminal) RICO liability. See 18 U.S.C. § 1961(1); see also Edwards v. Edwards, No. 4:23-CV-4106, 2023 WL 7305026, at *11 (D.S.D. Nov. 6, 2023) ("The statute provides an exhaustive list of 'predicate acts' that qualify under the statute, 18 U.S.C.

§ 1961(1), and Plaintiff does not plead any of these enumerated activities."). In Count 4, Plaintiffs assert the following three "predicate acts":

> (1) fraudulent concealment of avoided cost rates from 2009-2015 (offering 2¢/kWh vs. higher natural gas costs, Exhibits D, H, I, O), (2) discriminatory rate fraud (paying South Dakota Wind Partners 4.3¢/kWh while offering Plaintiffs 2¢/kWh, Exhibits D, F), and (3) perjury in 2019 denying Plaintiffs' numerous emails and 2013 data requests (Exhibits D, G, N Page 18, Line 23 to Page 19, Line 2).

Doc. 1 ¶ 53; see also Doc. 1-3 at 1–89; Doc. 1-7 at 74–75 (attaching emails and letters between Plaintiffs and Defendants). Plaintiffs argue in their response that the alleged acts of false avoided cost statements, concealment, and misrepresentations qualify as mail fraud and wire fraud because they are "transmitted via communications." Doc. 26 at 43–44.

Mail fraud and wire fraud are two types of racketeering activity listed within § 1961(1). See 18 U.S.C. § 1961(1)(B) (citing 18 U.S.C. §§ 1341, 1343). "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 406 (8th Cir. 1999). Rule 9(b) of the Federal Rules of Civil Procedure requires parties alleging fraud to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and "applies to allegations of mail and wire fraud," Abels v. Farmers Commodities Corp., 259 F.3d 910, 921 (8th Cir. 2001). See also Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428–29 (8th Cir. 2009) (same). Such circumstances include "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." H & Q Props., Inc. v. Doll, 793 F.3d 852, 856 (8th Cir. 2015) (cleaned up and citations omitted). Rule 9(b) is to be interpreted "in harmony with the principles of notice pleading." Star City Sch. Dist. v. ACI Bldg. Sys., LLC, 844 F.3d 1011, 1016 (8th Cir.

34

2017) (citation omitted). "This higher degree of notice is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (cleaned up and citations omitted). Facts "peculiarly within the opposing party's knowledge" may be pleaded on information and belief, but conclusory allegations of fraud or deception are insufficient to satisfy the rule. Id. at 783–84.

Count 4 fails to allege qualifying predicate acts under RICO. The Complaint as a whole does not use the words "wire fraud" or "mail fraud," but rather describes various collective actions by Defendants occurring over seventeen years as fraudulent. See Doc. 1. None of the predicate acts expressly named in Count 4 are found in the list of qualifying predicate acts at 18 U.S.C. § 1961(1). See id. ¶¶ 53, 57. No alleged predicate act is plead with the specificity required under Rule 9(b). Count 4 does not contain "(1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." Wisdom, 167 F.3d at 406 (citation omitted). Instead, Plaintiffs assert that Defendants' actions were undertaken for market control and were intended to suppress the success of Plaintiffs' QF through "fraud, perjury, and jurisdictional manipulation." Doc. 1 ¶ 53. This count does not "state with particularity the circumstances constituting fraud," and instead cites thirteen exhibits, asserts Defendants did not respond to data requests, and claims Plaintiffs were offered one rate while another company was offered a more favorable rate. See id.; Fed. R. Civ. P. 9(b). Even construed liberally, the Complaint's allegations and exhibits do not sufficiently allege what about the rate offers or the responses to the data requests were specifically fraudulent. See Star City Sch. Dist., 844 F.3d at 1016; Drobnak, 561 F.3d at 783. Plaintiffs' characterization of the activities in their response as "transmitted via communications" is not sufficient to qualify these activities as RICO predicate acts. See H & Q Props., Inc., 793 F.3d at 857 ("Consequently,

even assuming the Doll Companies used 'mail or wires' to deposit checks or transfer funds, H & Q's allegations fall woefully short of establishing mail or wire fraud."). Finally, although Plaintiffs have alleged Defendants perjured themselves in the December 2019 motion hearing in furtherance of their RICO scheme, fraudulent litigation activities alone cannot constitute a RICO predicate act. Edwards, 2023 WL 7305026, at *11 (collecting cases). Therefore, Count 4 fails to allege at least two predicate acts of racketeering activity, and by extension, a pattern of racketeering activity. Rolfes, 416 F. Supp. 2d at 751.

Accordingly, even if Count 4 had been brought within the statute of limitations, this Court would have to dismiss Count 4 for failure to state a claim.

### 2. Count 8

18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Beck v. Prupis, 529 U.S. 494, 497 (2000). In other words, an "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO, . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)." Id. at 505. As Plaintiffs have failed to plead an injury caused by an overt act that is an act of racketeering or otherwise wrongful under RICO in Count 4, they have failed to state a claim for conspiracy under § 1962(d) in Count 8. See United States v. Darden, 70 F.3d 1507, 1518 (8th Cir. 1995); Rosemann v. Sigillito, No. 10-CV-1165, 2011 WL 13248373, at *19 (E.D. Mo. Oct. 31, 2011). Therefore, even if Count 8 had been brought within the statute of limitations, this Court would have to dismiss Count 8 for failure to state a claim.

### C. Res Judicata

Defendants argue that all claims, including the two RICO claims, are barred by the doctrine of res judicata. Doc. 16 at 16–19. The doctrine of res judicata bars federal claims that a plaintiff

could have presented in state court case that depend upon a single series of transactions and occurrences. Ruple, 714 F.2d at 862 ("Absent special circumstances, all of the theories that a [plaintiff] can bring . . . should be raised and decided in the same lawsuit."). State courts have jurisdiction over civil RICO claims. See Tafflin v. Levitt, 493 U.S. 455, 460 (1990) ("Because we find none of these factors present with respect to civil claims arising under RICO, we hold that state courts retain their presumptive authority to adjudicate such claims."). Relying on the analysis above, see supra Section II.B, and given that the conduct alleged to make up the RICO scheme was known to Plaintiffs at the time of the previous state case and depend upon the same series of transactions and occurrences, this Court finds that these claims are barred by the doctrine of res judicata. Ruple, 714 F.2d at 862.

For the foregoing reasons, Plaintiffs' RICO claims, Counts 4 and 8, are dismissed with prejudice.

### IV.    Sherman Act

Plaintiffs have pleaded one count under the Sherman Act, Count 10. Doc. 1 ¶ 59. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations," and Section 2 details the penalties for "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. §§ 1–2. Congress provided for a private right of action for those injured by antitrust violations. See id. § 15(a). Construed liberally, Count 10 seeks to bring Sherman Act claims for antitrust violations under both Section 1 and Section 2. See Doc. 1 ¶ 59 (citing 15 U.S.C. §§ 1–2).

In Count 10, Plaintiffs allege that Basin engaged in a conspiracy to restrain trade in the market for qualifying facilities through discriminatory rates and exclusionary practices (1) by offering Plaintiffs 2 cents per kWh while offering South Dakota Wind Partners LLC 4.3 cents per kWH in 2011, and (2) by offering Plaintiffs 2.16 cents per kWh in 2014. Id. In their motion to dismiss, Defendants argue that (1) Plaintiffs' Sherman Act count is barred by the applicable statute of limitations; (2) Plaintiffs lack antitrust standing; and (3) the count fails to state a claim under Section 1 or Section 2. Doc. 16 at 20–22, 26–28. Plaintiffs argue that the Sherman Act claims are properly pleaded and that their claims are preserved by equitable tolling. Doc. 26 at 43–45, 53. This Court finds that the dismissal of Count 10 is appropriate on multiple grounds.

## A. Statute of Limitations

As discussed above, "[a] court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." Illig v. Union Electric Co., 652 F.3d 971, 976 (8th Cir. 2011) (citation omitted). Claims "under the Sherman Act must be filed within four years after the cause of action accrued," and "[g]enerally, the period commences on the date the cause of action accrues, that being, the date on which the wrongdoer commits an act that injures the business of another." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (cleaned up and citations omitted); see also Little Rock Cardiology Clinic PA v. Baptist Health, 591 F.3d 591, 595, 602 (8th Cir. 2009) (affirming where district court dismissed claims alleging violations of Section 2 with prejudice for failing to allege an overt act within the four-year limitations period). Here, Plaintiffs have specifically identified the dates of two alleged injures in Count 10: Basin's 2011 offer of 2 cents per kWh and Basin's 2014 offer of 2.16 cents per kWh. Doc. 1 ¶ 59. Both causes of actions accruing in 2011 and 2014 respectively are now barred by the applicable statute of limitations for claims asserted under

Section 1 or Section 2.  See 15 U.S.C. § 15b.  Therefore, Count 10 must be dismissed with prejudice for being barred by the applicable statute of limitations.

## B.  Failure to State a Sherman Act Claim

Defendants also argue that Count 10 must be dismissed for failure to state a claim.  Doc. 16 at 27–28.  This Court has previously set forth the standard that applies to motions to dismiss for failure to state a claim.  When reviewing district courts' dismissals of antitrust claims for failure to state claim, the Supreme Court of the United States and federal courts of appeal have highlighted "the unusually high cost of discovery in antitrust cases."  Insulate SB, Inc. v. Advanced Finishing Sys., Inc., 797 F.3d 538, 543 (8th Cir. 2015) (citation omitted).  Plaintiffs allege claims under both Sections 1 and 2 of the Sherman Act.  This Court will take each claim in turn.

### 1.  Count 10 as Alleging a Claim Under 15 U.S.C. § 1

"Because § 1 of the Sherman Act does not prohibit all unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express."  Twombly, 550 U.S. at 553 (cleaned up and citations omitted).  To allege a violation of 15 U.S.C. § 1 "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," id. at 556, as Section 1 only "reaches unreasonable restraints of trade effected by a contract, combination . . . or conspiracy between *separate* entities[,] . . . [not] conduct that is wholly unilateral."  Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 768 (1984) (cleaned up and citation omitted).  "In order to withstand a motion to dismiss, a plaintiff must go further than merely alleging a conspiracy existed, for a bare bones accusation of conspiracy without any supporting facts is insufficient to state an antitrust claim."  Sherr v. HealthEast Care Sys., 262 F. Supp. 3d 869, 883 (D. Minn. 2017) (cleaned up and citation omitted).

39

"Pleading only 'parallel conduct' or other conduct 'merely consistent with [an] agreement' is not sufficient to show a conspiracy." Insulate SB, Inc., 797 F.3d at 544 (quoting Twombly, 550 U.S. at 557).

In other words, "[t]o satisfy the concerted action requirement, the plaintiff must demonstrate that the defendants shared a unity of purpose or a common design and understanding, or a meeting of the minds." Id. at 543 (cleaned up and citation omitted). For example, a plaintiff can show "two or more persons entered into either an express or implied agreement." Id. at 544 (citation omitted). But "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," Twombly, 550 U.S. at 557, and instead, the plaintiff must plead "factual allegations to explain why, how, or for what purpose [the defendants] . . . would need to conspire together to exclude [the plaintiff] from the market." Sherr, 262 F. Supp. 3d at 883.

In Count 10, Plaintiffs have only alleged "wholly unilateral conduct" by one entity, Basin. See Doc. 1 ¶ 59; Copperweld Corp., 467 U.S. at 768. This deficiency alone is enough to find that Plaintiffs have failed to state a claim under Section 1 of the Sherman Act. This count does not allege that any agreement was made between any of the Defendants, or any details of such an agreement, and Plaintiffs' "bare bones accusation of conspiracy without any supporting facts is insufficient to state an antitrust claim." See Sherr, 262 F. Supp. 3d at 883; Doc. 1 ¶ 59 ("Defendant Basin Electric Power Cooperative violated the Sherman Act, 15 U.S.C. §§ 1–2[] by engaging in a conspiracy to restrain trade in the market for Qualifying Facilities (QFs) through discriminatory rates and exclusionary practices."). Therefore, even if Count 10 was not barred by the statute of limitations, Count 10 would have to be dismissed for failure to state a claim under Section 1.

## 2. Count 10 as Alleging a Claim Under 15 U.S.C. § 2

Plaintiffs argue in their response that they have also pleaded Count 10 under Section 2 of the Sherman Act. See Doc. 26 at 44 ("Defendants control 100% of interconnection/purchase assets, creating monopoly/monopsony power with entry barriers; foreclosure causes antitrust injury . . . § 2 reflects exclusionary conduct.") (citing Doc. 1 at 26–37). Count 10 itself however only alleges that Basin engaged in a conspiracy to restrain trade in the market for QFs in violation of Section 2. See Doc. 1 ¶ 59. Unlike Section 1, which concerns restraint of trade, Section 2 addresses monopolizing or attempting to monopolize a trade. Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1060 (8th Cir. 2000). "To establish a Section 2 violation, plaintiffs must show that 1) the defendant possessed monopoly power in the relevant market and 2) the defendant willfully acquired or maintained this monopoly power by anticompetitive conduct as opposed to gaining that power as a result 'of a superior product, business acumen, or historical accident.'" Id. (quoting United States v. Grinnell Corp., 384 U.S. 563, 570–71 (1966)). "Monopoly power" is "the power to control prices or exclude competition." United States v. E.I. du Point de Nemours & Co., 351 U.S. 377, 391 (1956).

Plaintiffs do not allege that Basin "possessed monopoly power in the relevant market" or that Basin "willfully acquired or maintained this monopoly power by anticompetitive conduct" in Count 10, or anywhere else in the Complaint. See Doc. 1 ¶ 59. Plaintiffs' mere citation to 15 U.S.C. § 2 does not cure their failure to allege that Basin monopolized or attempted to monopolize the market for qualifying facilities. Therefore, even if Count 10 was not barred by the statute of limitations, Count 10 would need to be dismissed for failure to state a claim under Section 2.

## V.    Fraudulent Concealment and Bad Faith

Plaintiffs have alleged two other claims for fraudulent concealment and bad faith and litigation misconduct, Count 5 and Count 11 respectively. See Doc. 1 ¶¶ 54, 60–61. This Court will address each count in turn.

Defendants argue that Count 5 should be dismissed as it is not a standalone cause of action, and "[t]o the extent Plaintiffs intended to assert a fraudulent misrepresentation claim under South Dakota law," Plaintiffs have failed to state a claim. Doc. 16 at 24. Count 5 alleges that Defendants' fraudulent concealment of avoided cost data from 2008 to 2015 and perjury in 2019 necessitate tolling the statute of limitations "through at least 2025." Doc. 1 ¶ 54. Construing the Complaint liberally, Count 5 is requesting that the statute of limitations for claims alleged in the Complaint be tolled under the doctrine of fraudulent concealment.

The doctrine of "fraudulent concealment" has been referred to by some courts as "'equitably toll[ing]' the running of a limitations period" and by others as "a form of 'equitable estoppel.'" Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997) (citing Grimmett v. Brown, 75 F.3d 506, 514 (9th Cir. 1996); Wolin v. Smith Barney Inc., 83 F.3d 847, 852 (7th Cir. 1996)). "To invoke fraudulent concealment, Plaintiffs must allege facts showing: (1) Defendants' concealment of Plaintiffs' cause of action, (2) failure by Plaintiffs to discover the existence of their cause of action, and (3) due diligence by Plaintiffs in attempting to discover the claim." In re Pork Antitrust Litig., 495 F. Supp. 3d 753, 772 (D. Minn. 2020) (cleaned up and citation omitted). Any invocation of the doctrine of fraudulent concealment must also meet Rule 9(b)'s heightened pleading standard. Id. For both antitrust and civil RICO claims, "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" Klehr, 521 U.S. at 194–96 (concluding that fraudulent

42

concealment in the civil RICO context does require due diligence on the part of the plaintiff and discussing the requirement in the "related antitrust context").

For many of the same reasons discussed above in previous sections, Plaintiffs have failed to adequately allege Defendants' concealment of Plaintiffs' causes of action. Plaintiffs have pleaded allegations surrounding and attached documents from the 2015 state litigation over the avoided cost data. See Docs. 1, 1-2. Much of the conduct Plaintiffs allege to be Defendants' concealment of the avoided cost data was known by Plaintiffs ten years ago when they sued many of these Defendants in state court. See Doc. 1-2 at 101. Indeed, portions of Plaintiffs' RICO and antitrust claims alleged fraudulent concealment of "avoided cost data from 2008 to 2015," which, according to Count 5, came ten years before the filing of the present Complaint. See Doc. 1 ¶¶ 53, 54, 57, 59. Even taking as true Plaintiffs' allegation that Defendants perjured themselves during the hearing on December 30, 2019, Plaintiffs' RICO and antitrust claims would still be untimely. See supra Sections III.A, IV.A. As Plaintiffs have failed to adequately allege Defendants' fraudulent concealment of Plaintiffs' causes of action, Count 5 is dismissed and Plaintiffs are not entitled to tolling of the applicable statutes of limitations under the doctrine of fraudulent concealment.

Defendants also argue that Count 11 must be dismissed as it is not a standalone cause of action. Doc. 26 at 29. Count 11 reviews Plaintiffs' grievances with Defendants over alleged misconduct throughout previous litigation and "seek[s] sanctions, damages for litigation-related harm, and an injunction to prevent future procedural abuse." Doc. 1 ¶¶ 60–61 (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Chambers v. NASCO, Inc., 501 U.S. 32, 46–47 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980); Winding Creek Solar LLC v. Peterman, 932 F.3d 861 (9th Cir. 2019)). Count 11 seeks sanctions from Defendants for their

actions in previous litigation and specifically references Federal Rule of Civil Procedure 11, this

Court's inherent power, and 28 U.S.C. § 1927. See Chambers, 501 U.S. at 42–43; Fed. R. Civ. P.

11(c); 28 U.S.C. § 1927.

All three sources of authority to sanction a party are limited in some capacity. A party

seeking Rule 11 sanctions must file a request for sanctions "in the action and in the court where

the sanctionable pleading was filed." OarFin Distrib., Inc. v. Nora, No. 11-CV-863, 2012 WL

13028132, at *2 (D. Minn. July 16, 2012). A Rule 11 motion for sanctions "must be made

separately from any other motion," and therefore is not appropriate to include within a complaint.

See Fed. R. Civ. P. 11(c)(2). "Similarly, numerous courts have held that a party's litigation

conduct before another court cannot form the basis for an award of sanctions under 28 U.S.C.

§ 1927." OarFin Distrib., Inc., 2012 WL 13028132, at *2. And finally, "[b]ecause of their very

potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at

44. As Plaintiffs have only pleaded allegations of litigation misconduct undertaken by Defendants

in other cases within Count 11, this Court dismisses this cause of action.

## VI.    Plaintiff Dostal's Standing to Sue

Defendants argue that Plaintiff Dostal's claims should be dismissed for lack of standing.

Doc. 16 at 11–13. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases'

and 'Controversies.'" Murthy v. Missouri, 603 U.S. 43, 56 (2024). Courts implement this limit

through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp.

v. Cuno, 547 U.S. 332, 352–53 (2006). Broadly speaking, the standing inquiry concerns whether

the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818

(1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are (1) an

injury in fact, (2) that the injury likely was caused by the defendant, and (3) a likelihood that a

favorable decision will redress the injury. FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024); Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381 (citation omitted). A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. (citation omitted). The "second and third standing requirements— causation and redressability—are often 'flip sides of the same coin.'" Id. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." Id. at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." Id. at 383. For causation, "the plaintiff must show a predictable chain of events" connecting defendant's action to the asserted injury. Id. at 385. Where the defendant's action caused injury, redressability—the third element of standing— typically exists through injunctive action or an award of damages. Id. at 381. "For an injury to be redressable, judicial action must be likely to remedy the harm and cannot be merely speculative." Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000).

Whether Dostal—a land owner where at least one QF was to be built—has standing is questionable but at this point academic. For the reasons explained earlier in this Opinion and Order, none of the claims survive the motion to dismiss.

45

### VII.    Pro Se Litigation on Behalf of LLC

Within their motion to dismiss, Defendants move to strike the pleadings under Federal Rule of Civil Procedure 12(f). Doc. 16 at 29. Defendants argue for striking Mattson's claims because Mattson purportedly assigned himself these claims from his company, Prelude, to circumvent the rule that LLCs must be represented by counsel. Id. at 30. Mattson has responded that a motion to strike is a drastic remedy not warranted here and that Prelude's assignment of claims to Mattson is valid. Doc. 26 at 46–48. Prelude's assignment of these claims is alleged in the Complaint and attached as an exhibit. Doc. 1 ¶ 24; Doc. 1-7 at 59–61 (attaching assignment of claims dated September 12, 2024); Doc. 26 at 47.

In the previous federal action filed in the Eastern District of Wisconsin, the court dismissed Prelude as a party after it failed to obtain counsel, which appears to have motivated Mattson to have Prelude assign its claims to himself for $1. See Doc. 1-2 at 49–50. Although the court in the Eastern District of Wisconsin noted this assignment in its opinion and order dismissing the case, it did not address whether this assignment was proper as the case was ultimately dismissed for lack of personal jurisdiction. See id. at 48–58.

In federal court, corporations and LLCs must be represented by counsel and may not proceed pro se. Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201–02 (1993); Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996); Supreme Pro Clean LLC v. Lowry, No. CIV. 16-5117, 2017 WL 3209450, at *2 (D.S.D. Feb. 14, 2017) ("The rule requiring corporations to be represented by an attorney applies to limited liability companies. . . ." (citation omitted)). "While 28 U.S.C. § 1654 protects parties rights to plead and conduct their own cases, that right has never been interpreted to allow an individual to appear for a corporation pro se." Carr Enters., Inc. v. United States, 698 F.2d 952, 953 (8th Cir. 1983). A

non-lawyer who seeks to represent the interests of a corporation or an LLC "constitutes the unauthorized practice of law and results in a nullity." Supreme Pro Clean LLC, 2017 WL 3209450, at *2 (citation omitted). An assignment does not alter this rule: "Federal courts have refused to countenance circumvention of the requirement that a corporation be represented by counsel through the corporation's assignment of a claim to a non-lawyer." GEVHC, LLC v. Redburn, No. CIV. 07-3875, 2008 WL 3896107, at *1 (D. Minn. Aug. 20, 2008) (citing Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997); Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385–86 (11th Cir. 1985); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 23 (2d Cir. 1983)).

Prelude's alleged assignment of its claims to Mattson at least in this instance does not circumvent "the requirement that a corporation be represented by counsel through the corporation's assignment of a claim to a non-lawyer." Id. Mattson cannot bring Prelude's claims pro se and is not purporting to do so. The motion to strike is denied, but for reasons explained above, the case must be dismissed.

### VIII. Fictitious Case Citations in Plaintiffs' Response

Within their reply, Defendants highlight that "Plaintiffs' response brief contains fictitious cases, incorrect case citations, and non-existent quotations," and proceed to document inconsistencies between Plaintiffs' citations and Defendants' subsequent legal research. Doc. 35 at 9–12. Defendants note that "[f]ederal courts have inherent authority to impose sanctions for bad faith litigation conduct and abuses of the judicial process, including assessments of attorney's fees" but do not specifically request that this Court impose sanctions. See id. at 5–6 (collecting case law on sanctions for filing fictitious case citations or quotations). Shortly after the Defendants' reply, Plaintiffs filed a "Notice of Corrected Citations." Doc. 36. Plaintiffs additionally filed a sur-reply to address issues raised in the response, and they noted "that

47

quotations from case law and statutory authorities herein are either direct verbatim excerpts or faithful paraphrases of the controlling principles as stated in those sources." Doc. 37 at 14.

In reviewing Plaintiffs' Response, Doc. 26, this Court noted the formatting of the brief, which seemed to suggest the use of generative AI, as well as the inclusion of incorrect case citations and quotations as documented by the Defendants in their reply and later corrected by Plaintiffs in their Notice. Plaintiffs corrected their filing, and this Court is disinclined to sanction these pro se Plaintiffs for improper citations, though they should review and abide by Federal Rule of Civil Procedure 11(b) for future filings.

### IX.   Leave to Amend

Within their response, Plaintiffs request leave to amend "[i]f any matter is stricken or dismissed." Doc. 26 at 51. Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading . . . with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. Under Rule 15(a), "[t]he court should freely give leave [to amend the complaint] when justice so requires," Fed. R. Civ. P. 15, and "[a] decision whether to allow a party to amend [a] complaint is left to the sound discretion of the district court," Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). See also Plymouth Cty. v. Merscorp, Inc., 774 F.3d 1155, 1160 (8th Cir. 2015) (motions for leave to amend "should be freely given in order to promote justice"). Denial of a motion to amend "is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted). "An amendment is futile if it 'could not withstand a motion to dismiss under Rule 12(b)(6).'" Id. (citation omitted).

Plaintiffs have not formally moved for leave to amend the Complaint or filed a proposed amended complaint for this Court to review. District of South Dakota Civil Local Rule 15.1 requires that "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR 15.1. Plaintiffs did not do so. At this point, with the case being dismissed, Plaintiffs' remedies are to appeal or start a new lawsuit, though many of the obstacles outlined in this decision would make it difficult to maintain suit at this late time in federal court against these Defendants.

### X.    Conclusion

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Dismiss, Doc. 15, is granted to the extent stated herein. It is further

ORDERED that Counts 1, 2, 3, 5, 6, 7, 9, and 11 are dismissed without prejudice, and Counts 4, 8, and 10 are dismissed with prejudice.

DATED this 17th day of November, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE